**THE WAGNER LAW GROUP, P.C.**
STEPHEN P. WILKES (SBN 268637)
315 Montgomery Street, Suite 900
San Francisco, CA 94104
Phone: 415-625-0002
Fax: 415-358-8300
Email: swilkes@wagnerlawgroup.com

*[Remaining Counsel on the Following Page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ARBORWELL, LLC, a California limited liability company; CI QUERCUS CORPORATION, INC., a Delaware corporation, and SAVATREE, LLC, a Delaware limited liability company,<br><br>              Plaintiffs,<br><br>vs.<br><br>ALERUS FINANCIAL, N.A.; ANDREW G. LAVELLE, an individual; NEIL WOOLNER, an individual; MATT DICKINSON, an individual; KRIS YAMAGUCHI, an individual; DOUG HAGGE, an individual; ARBOR MD TREE CARE INC., a California corporation; ALVIN F. SORTWELL and ANNE B. SORTWELL as Co-Trustees of the A&A SORTWELL FAMILY TRUST; and DOES 1 through 10, inclusive,<br><br>              Defendants,<br><br>       and<br><br>ARBORWELL, INC. EMPLOYEE STOCK OWNERSHIP PLAN,<br><br>              Nominal Defendant. | Case No: 4:23-cv-02770-HSG<br><br>**SORTWELL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**[Declaration of Thomas E. Clark, Jr. and Request for Judicial Notice Filed Concurrently Herewith]**<br><br>Hearing Date: December 14, 2023<br>Time: 2:00 p.m.<br>Place: Courtroom 2, Oakland Courthouse<br>Judge: Hon. Haywood S. Gilliam, Jr. |

THOMAS E. CLARK, JR. (admitted *pro hac vice*)
125 High Street, Oliver Street Tower, 5th Floor
Boston, MA 02110
Phone: 314-236-0065
Fax: 314-236-5743
Email: tclark@wagnerlawgroup.com

LEE T. POLK (admitted *pro hac vice*)
150 S. Wacker Drive, Suite 2400
Chicago, IL 60603
Phone: 312-925-6070
Fax: 847-557-1312
Email: lpolk@wagnerlawgroup.com

***Attorneys For Defendants***
Alvin F. Sortwell and Anne B. Sortwell as Co-Trustees of the A&A Sortwell Family Trust

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 14, 2023, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, 94612, before the Honorable Haywood S. Gilliam, Jr., defendants Alvin F. Sortwell and Anne B. Sortwell as Co-Trustees of the A.A. Sortwell Family Trust will and hereby do move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for dismissal of the First Amended Complaint filed by Plaintiffs Arborwell, LLC, CI Quercus Corporation, Inc., and SavATree, LLC.

The motion is made on the grounds that the plaintiffs lack Article III standing and statutory standing under the Employee Retirement Income Security Act of 1974 ("ERISA"). The motion is also made on the grounds the Plaintiffs have (1) failed to meet the Rule 8(a) pleading standards by filing a shotgun style pleading, (2) failed to allege that the Sortwells are fiduciaries under ERISA, (3) failed to allege the Sortwells have knowingly participated in any prohibited transaction, and (4) any claims related to the 2017 transaction involving the Plan are time barred.

The motion is made pursuant to the order entered on September 7, 2023 (Dkt. 53) allowing an October 11, 2023 response date and is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the declaration of Thomas E. Clark, Jr. with exhibits thereto and the request for judicial notice filed concurrently herewith, all records and pleadings on file with the Court, all further evidence and oral argument that may be presented at the hearing on this motion, and all other matters as the Court deems proper.

Dated: October 11, 2023                    THE WAGNER LAW GROUP, P.C.


                                           /s/ Stephen P. Wilkes
                                           Stephen P. Wilkes

Attorneys for Defendants Alvin F. Sortwell and Anne B. Sortwell as Co-Trustees of the A.A. Sortwell Family Trust

1

## <u>TABLE OF CONTENTS</u>

2

NOTICE OF MOTION AND MOTION ................................................................................. i

3

TABLE OF CONTENTS..................................................................................................... ii

4

TABLE OF AUTHORITIES ............................................................................................. iv

5

I.     INTRODUCTION ...................................................................................................1

6

II.    STATEMENT OF ISSUES PRESENTED...............................................................2

7

III.   BACKGROUND AND FACTUAL ALLEGATIONS .............................................3

8

       A.     ESOPs Generally ........................................................................................3

9

       B.     Leveraged ESOPs .......................................................................................3

10

       C.     Termination of ESOPs ................................................................................4

11

       D.     The Sortwells ..............................................................................................5

12

       E.     The Arborwell ESOP ..................................................................................5

13

       F.     The 2020 Sale .............................................................................................6

14

       G.    Plaintiffs' Claims Against the Sortwells .....................................................8

15

IV.   LEGAL STANDARD............................................................................................8

16

V.    ARGUMENT ........................................................................................................11

17

       A.     Plaintiffs Lack Statutory and Article III Standing .................................11

18

             1.     Neither Plaintiff Has Statutory Standing to Bring Claims Against the
Sortwells on Behalf of the Plan ....................................................11

19

20

             2.     Neither Plaintiff Has Statutory Standing to Bring Claims Against the
Sortwells on Behalf of the SavATree 401(k) Plan......................12

21

22

             3.     Plaintiffs Do Not Have Standing Under ERISA to Bring Claims on
Their Own Behalf as Corporate Entities......................................14

23

24

             4.     Plaintiffs Lack Article III Standing Under ERISA .....................15

25

       B.     The FAC Fails to Allege Any Proper Claims under ERISA ...............17

26

             1.     Plaintiffs' FAC Amounts to an Improper Shotgun Pleading.....................18

27

             2.     The FAC Fails to Properly Allege that the Sortwells were Fiduciaries
to the ESOP...................................................................................19

28

ii

3.   The Sortwells Did Not Knowingly Participate in Any Breach or Prohibited Transaction .................................................................................22

4.   Any Claims Related to the 2017 Transaction are Time-Barred.................24

VI.   CONCLUSION.................................................................................................25

**SORTWELL DEFENDANTS' MOTION TO DISMISS - CASE NO. 4:23-CV-02770-HSG**

**TABLE OF AUTHORITIES**

<u>**CASES**</u>

*A&I Transp. Inc. v. KG Admin. Servs., Inc.*, No. 19-1992, 2021 WL 2792327 (C.D. Cal. Mar. 26, 2021) ................................................................................................................................. 23

*Acosta v. Brain*, 910 F.3d 502 (9th Cir. 2018) ................................................................... 20

*Anderson v. Intel Corp.*, No. 19-4618, 2021 WL 229235 (N.D. Cal. Jan. 21, 2021) ...................... 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................. 9

*Baird v. BlackRock Institutional Tr. Co., N.A.*, 403 F. Supp. 3d 765 (N.D. Cal. 2019) ................... 10

*Beck v. Pace Int'l Union*, 551 U.S. 96 (2007) ..................................................................... 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................... 9, 19

*Benefits Comm. of Saint-Gobain Corp. v. Key Tr. Co.*, 313 F.3d 919 (6th Cir. 2002) ..................... 17

*Blackmar v. Lichtenstein*, 603 F.2d 1306 (8th Cir. 1979) ....................................................... 11

*Bryant v. Tulare Cty.*, No. 16-1542, 2016 WL 6996476 (E.D. Cal. Nov. 29, 2016) ........................ 18

*Carter v. San Pasqual Fiduciary Tr. Co.*, No. 15-1507, 2016 WL 6803768 (C.D. Cal. Apr. 18, 2016) ................................................................................................................. 19, 20

*Caudle v. Life Ins. Co. of N. Am.*, 33 F. Supp. 3d 1288 (N.D. Ala. 2014) .................................. 18

*Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12 (2d Cir. 1991) ......................... 11

*Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223 (9th Cir. 2000) ........................... 16

*Confer v. Custom Eng'g Co.*, 952 F.2d 34 (3d Cir. 1991) ...................................................... 20

*Corbin v. Blankenburg*, 39 F.3d 650 (6th Cir. 1994) ........................................................... 11

*Culinary Studios, Inc. v. Newsom*, 517 F. Supp. 3d 1042 (E.D. Cal. 2021) .................................. 10

*Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995) ................................................... 4

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) ............................................... 9

*Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643 (9th Cir. 2019) ................................... 20

*Donovan v. Cunningham*, 716 F.2d 1455 (5th Cir. 1983) ....................................................... 4

*Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014) ................................................. 3, 9

*Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088 (E.D. Cal. 2014)) ...................................... 10, 18

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1 (1983) 11

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123 (9th Cir. 2006) ......................................................................................................................... 8

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238 (2000) .............................. 22

*Hawaii Masons' Pension Tr. Fund v. Glob. Stone Hawaii, Inc.*, 292 F. Supp. 3d 1063 (D. Haw. 2017) ................................................................................................................. 21

*Henry v. Champlain Enterprises, Inc.*, 445 F.3d 610 (2d Cir. 2006) ......................................... 3

*Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999) .................................................. 4, 16

*Hughes v. Northwestern Univ.*, 142 S. Ct. 737 (2022) .......................................................... 9

*IATSE Local 33 Section 401(K) Plan Bd. of Trs. v. Bullock*, No. 08-3949, 2008 WL 4838490 (C.D. Cal. Nov. 5, 2008)............................................................................................................. 18

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 02-8853, 2005 WL 563166 (S.D.N.Y. Mar. 10, 2005) ................................................................................................................. 20

*In re JDS Uniphase Corp. ERISA Litig.*, No. 03-4743, 2005 WL 1662131 (N.D. Cal. July 14, 2005) .................................................................................................................................... 20

*In re McKesson HBOC, Inc. ERISA Litig.*, No. 00-20030, 2002 WL 31431588 (N.D. Cal. Sep. 30, 2002)................................................................................................................................ 13, 14

*Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768 (2020) ....................................... 24

*Kalan v. Farmers & Merchs. Tr. Co. of Chambersburg*, No. 15-1435, 2016 WL 3087360 (E.D. Pa., June 2, 2016)................................................................................................................. 23

*Keach v. U.S. Trust Co.*, 419 F.3d 626 (7th Cir. 2005) ........................................................ 3

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ................................................................. 9

*LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248 (2008) ............................................... 14

*Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580 (9th Cir. 2008) ............................................. 9

*Lee v. Argent Tr. Co.*, No. 19-156, 2019 WL 3729721 (E.D.N.C. Aug. 7, 2019).............................. 4

*Lee v. Prudential Ins. Co. of America*, 673 F. Supp. 998 (N.D. Cal. 1987) ........................ 13

*Lockheed Corp. v. Spink*, 517 U.S. 882 (1996)..................................................................... 4

*Lorenz v. Safeway, Inc.*, No. 16-4903, 2017 WL 952883 (N.D. Cal. Mar. 13, 2017) ...................... 10

*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) .................................................. 14

*McCarthy v. United States*, 850 F.2d 558 (9th Cir. 1988) .................................................... 9

*Nitro Constr. Servs., Inc. v. D'Aquila*, No. 18-1510, 2019 WL 1521982 (S.D.W. Va. Apr. 8, 2019) .................................................................................................................................... 15

*Pegram v. Herdrich*, 530 U.S. 211 (2000)................................................................ 17, 19, 20

*Perez v. Mueller*, No. 13-1302, 2014 WL 2050606 (E.D. Wis. May 19, 2014)................................ 3

*Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*, 944 F.2d 509 (9th Cir. 1991) ................... 24

*Pilkington PLC v. Perelman*, 72 F.3d 1396 (9th Cir. 1995) .................................... 12, 13, 14

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004)........................................... 8

*Scalia v. Fla. Bankers Health Consortium Inc.*, No. 20-1283, 2021 WL 7629394 (M.D. Fla. Jan. 12, 2021) ................................................................................................................................ 21

*Schucker v. Rockwood*, 846 F.2d 1202 (2012)...................................................................... 12

*Schucker v. Rockwood*, 846 F.2d 1202 (9th Cir. 2012) ....................................................... 10

*Sheffield v. Orius Corp.*, 211 F.R.D. 411 (D. Or. 2002) ..................................................... 10

*Sollberger v. Wachovia Secs., LLC*, No. 09-766, 2010 WL 2674456 (C.D. Cal. June 30, 2010) ..... 18

SORTWELL DEFENDANTS' MOTION TO DISMISS - CASE NO. 4:23-CV-02770-HSG

*Sonoco Products Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366 (4th Cir. 2003) ...................... 15

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ................................................................................ 15

*Sulyma v. Intel Corp. Inv. Policy Comm.*, 909 F.3d 1069 (9th Cir. 2018) ..................................... 24

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308 (2007) ................................................. 9

*Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020) ......................................................................... 15

*Thomas v. Bostwick*, No. 13-2544, 2014 WL 6386806 (N.D. Cal. Nov. 14, 2014) ...................... 24

*Toumajian v. Frailey*, 135 F.3d 648 (9th Cir. 1998) ..................................................................... 15

*Trujillo v. ABA*, 706 F. App'x 868 (7th Cir. 2017) ........................................................................ 11

*Turner v. City & Cty. of San Francisco*, 788 F.3d 1206 (9th Cir. 2015) ........................................ 9

*Vargas v. JP Morgan Chase Bank, NA.*, No. 14-859, 2014 WL 3435628 (C.D. Cal. July 11, 2014) 19

*Vaughn v. Bay Env't Mgmt., Inc.*, 567 F.3d 1021 (9th Cir. 2009) .................................................. 8

*Viad Corp. v. MoneyGram Int'l, Inc.*, No. 10-2605, 2011 U.S. Dist. LEXIS 123569 (D. Ariz. Mar. 31, 2011) ...................................................................................................................................... 15

*Victoria v. City of San Diego*, 326 F. Supp. 3d 1003 (S.D. Cal. 2018) ......................................... 10

*Waller v. Blue Cross of California*, 32 F.3d 1337 (9th Cir. 1994) ................................................. 4

*Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173 (9th Cir. 2021) ..................................................... 9

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ................................................................................. 8

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517 (9th Cir. 2023) ............................. 16

*Wright v. Ore. Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004) ............................................. 17

*Ziegler v. Conn. Gen. Life Ins. Co.*, 916 F.2d 548 (9th Cir. 1990) ................................................ 24

**STATUTES**

26 U.S.C. § 411(d)(3) .................................................................................................................... 4

26 U.S.C. § 415 ............................................................................................................................ 16

29 U.S.C. § 1002(21)(A) ..................................................................................................... passim

29 U.S.C. § 1102(a)(2) ................................................................................................................ 20

29 U.S.C. § 1104(a)(1) ............................................................................................................ 8, 22

29 U.S.C. § 1106(a) ...................................................................................................................... 8

29 U.S.C. § 1106(a)(1) ................................................................................................................ 22

29 U.S.C. § 1106(a)(1)(A) ........................................................................................................... 18

29 U.S.C. § 1106(a)(1)(D) ........................................................................................................... 18

29 U.S.C. § 1106(b) ................................................................................................................. 8, 22

29 U.S.C. § 1106(b)(1) ................................................................................................................ 18

29 U.S.C. § 1106(b)(2) ................................................................................................................ 18

29 U.S.C. § 1106(b)(3) ................................................................................................................ 18

SORTWELL DEFENDANTS' MOTION TO DISMISS - CASE NO. 4:23-CV-02770-HSG

29 U.S.C. § 1107(d)(6) ........................................................................................... 5

29 U.S.C. § 1113 .................................................................................................... 3

29 U.S.C. § 1113(2) ............................................................................................... 24

29 U.S.C. § 1132(a) ................................................................................... 11, 14, 25

29 U.S.C. § 1132(a)(2) ................................................................................... 11, 12

29 U.S.C. § 1132(a)(3) .................................................................... 11, 12, 23, 24

29 U.S.C. § 1132(e)(2) ......................................................................................... 11

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 1280, 327, 93rd Cong., 2nd Sess. (1974) ........................... 13

**RULES**

Fed. R. Civ. P. 12(b)(1) ..................................................................................... 2, 8

Fed. R. Civ. P. 12(b)(6) ................................................................................ 2, 8, 9

Fed. R. Civ. P. 8(a) ................................................................................... 2, 18, 19

**REGULATIONS**

26 C.F.R. § 1.414(l)-1(b)(2) ............................................................................... 13

26 C.F.R. § 54.4975-7 ...................................................................................... 3, 17

29 C.F.R. § 2510.3-101(a)(2) ......................................................................... 17, 23

29 C.F.R. § 2550.408b-3 ....................................................................................... 3

SORTWELL DEFENDANTS' MOTION TO DISMISS - CASE NO. 4:23-CV-02770-HSG

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The three claims filed against Alvin F. Sortwell ("Mr. Sortwell") and Anne B. Sortwell ("Mrs. Sortwell"), as Co-Trustees of the A&A Sortwell Family Trust (collectively the "Sortwells" or the "Sortwell Defendants") have no legal or factual merit. The Sortwells have unfortunately, and wrongly, been pulled into an existing dispute between Plaintiffs Arborwell, LLC ("Arborwell"), CI Quercus Corporation, Inc. ("CI Quercus"), and SavATree LLC ("SavATree")[1] and Defendants Andrew G. Lavelle ("LaVelle"), Neil Woolner ("Woolner"), Matt Dickinson, Kris Yamaguchi, Doug Hagge, and Arbor MD Tree Care Inc. which has nothing to do with the Sortwells. The Sortwells can only surmise this has been done to gain some type of tactical advantage by the Plaintiffs over the other Defendants. Instead, however, Plaintiffs' actions – suing the Sortwells without legal or factual basis to do so – should result in the dismissal with prejudice of the claims against the Sortwells and the award of their attorney's fees in defending the frivolous claims against them in the First Amended Complaint (Dkt. 45, the "FAC").

As outlined below, the reasons for dismissal are numerous and highlight the lack of legal or factual predicates to Plaintiffs' claims against the Sortwells. Most fatal to Plaintiffs' claims is that they have no statutory or Article III standing to bring claims against the Sortwells under the Employee Retirement Income Security Act of 1974 ("ERISA") on behalf of the Arborwell, Inc. Employee Stock Ownership Plan (the "Plan"), the SavATree 401(k) Plan, or themselves. But more fundamentally, any claim, by any plaintiff, would fail as the participants in the Plan benefitted handsomely from the 2020 sale transaction ("2020 Sale") that resulted in the termination of the Plan and a pay out that **doubled the share price** of the Arborwell, Inc. stock held by the Plan. Stated simply, the Plan's participants collectively walked away with over $10 million in tax deferred retirement wealth in the three years that the Plan existed, all of which was contributed on their behalf.

---

[1] For the remainder of this Memorandum, reference to "Plaintiffs" shall mean only Arborwell and SavATree, the only parties moving against the Sortwells in Claims One through Three. Previously, CI Quercus was a party to these claims in the original Complaint, but presumably in response to the Sortwells' previously filed Motion to Dismiss (Dkt. 37), they were removed for clearly having no standing of any kind to bring claims against the Sortwells.

Beyond that, and assuming Plaintiffs could somehow demonstrate standing, there are at least four discrete reasons Plaintiffs' claims against the Sortwells should be dismissed for failure to properly allege claims under ERISA: (1) the FAC fails to meet the Rule 8(a) pleading standards; (2) the Sortwells were not fiduciaries to the Plan for purposes of the 2020 Sale; (3) the Sortwells did not knowingly participate in any prohibited transactions; and (4) any claims related to the 2017 establishment of the Plan ("2017 Transaction") are barred under ERISA's three year statute of limitations.

For these reasons, and others discussed below, the Sortwells respectfully request the Court dismiss Claims One through Three against them with prejudice.

## II.   STATEMENT OF ISSUES PRESENTED

- Whether Claims One through Three should be dismissed under Rule 12(b)(6) because Plaintiffs have no statutory standing to bring claims under ERISA on behalf of the Plan.

- Whether Claims One through Three should be dismissed under Rule 12(b)(6) because Plaintiffs have no statutory standing to bring claims under ERISA on behalf of the SavATree 401(k) Plan.

- Whether Claims One through Three should be dismissed under Rule 12(b)(6) because neither Arborwell nor SavATree have statutory standing under ERISA to bring claims on their own behalf as corporate entities.

- Whether Claims One through Three should be dismissed under Rule 12(b)(1) because Plaintiffs do not have Article III standing.

- Whether Claims One through Three should be dismissed because Plaintiffs' FAC is an impermissible shotgun pleading in violation of Rule 8(a).

- Whether Claims One through Three should be dismissed under Rule 12(b)(6) because Plaintiffs fail to properly allege the Sortwells are fiduciaries under ERISA and breached any fiduciary duties to the Plan.

SORTWELL DEFENDANTS' MOTION TO DISMISS - CASE NO. 4:23-CV-02770-HSG

- Whether Claims Two through Three should be dismissed under Rule 12(b)(6) because Plaintiffs fail to properly allege the Sortwells knowingly participated in any prohibited transaction.

- Whether Claims One through Three should be dismissed under Rule 12(b)(6) because the three year statute of limitations in 29 U.S.C. § 1113 prohibits any claims related to the 2017 establishment of the Plan.

## III.   BACKGROUND AND FACTUAL ALLEGATIONS

### A.   ESOPs Generally

Employee stock ownership plans, or ESOPs, are a type of benefit plan authorized by ERISA whose primary investment is the stock of the plan participants' employer. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 416 (2014). As happened here, ESOPs typically acquire their employer stock from the company's existing shareholders, who are usually the founders of the business. *See* Dkt. 45 at ¶ 3. Frequently, in connection with an ESOP's decision to acquire or sell the employer stock, an independent trustee is engaged to negotiate on behalf of the ESOP and the trustee then engages its own legal and financial advisors to assist it. *See, e.g. Keach v. U.S. Trust Co.*, 419 F.3d 626, 630 (7th Cir. 2005); *Henry v. Champlain Enterprises, Inc.*, 445 F.3d 610, 614 (2d Cir. 2006) (describing parties generally involved in an ESOP transaction).

### B.   Leveraged ESOPs

There is nothing special or unique about a transaction establishing an ESOP to involve loans to assist in funding the purchase of the stock by the ESOP. These are called leveraged ESOPs and such funding is addressed generally in 29 C.F.R. § 2550.408b-3 and 26 C.F.R. § 54.4975-7. While there are many ways to structure ESOP stock purchase transactions, one common arrangement involves a two-step redemption and purchase: in the first step, the employer/plan sponsor redeems the stockholders' stock for cash, notes, or some combination of each; and, in the second step, the employer/plan sponsor enters into a note with the ESOP which enables the ESOP to acquire the stock. *See, e.g., Perez v. Mueller*, No. 13-1302, 2014 WL 2050606, at *2 (E.D. Wis. May 19, 2014). As happened here, the first step often involves the employer/plan sponsor financing the purchase of the stock from the founders through the issuance of a note. *Id.* The note between the employer/plan

sponsor and any outside party (including a founder) is often referred to as external debt, whereas the note between the ESOP and the employer/plan sponsor is referred to as internal debt. The ESOP's purchase of company stock is not funded by contributions from the participant employees, meaning that the employees do not use their own money to purchase the stock. Instead, the ESOP's stock purchase is funded with a loan from the employer/plan sponsor. This type of structure is highly typical and has occurred in deals for decades. As the Fifth Circuit in 1983 commented in the well-known case *Donovan v. Cunningham*:

> A trust will be established to hold the assets of the ESOP…The employer may then make tax-deductible contributions to the plan in the form of its own stock or cash. If cash is contributed, the ESOP then purchases stock in the sponsoring company, either from the company itself or from existing shareholders. Unlike other ERISA-covered plans, an ESOP may also borrow in order to invest in the employer's stock. In that event, the employer's cash contributions to the ESOP would be used to retire the debt.

*Donovan v. Cunningham*, 716 F.2d 1455, 1459 (5th Cir. 1983); *see also Lee v. Argent Tr. Co.*, No. 19-156, 2019 WL 3729721, at *3–4 (E.D.N.C. Aug. 7, 2019) (likening a leveraged ESOP transaction to buying a house financed with a mortgage).

## C. Termination of ESOPs

Termination of any employee benefit plan, including an ESOP, is a settlor decision made by the ESOP's sponsor in its capacity as employer. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996)[2] citing *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (employers are free under ERISA "for any reason at any time" to modify or terminate a plan). The decision to terminate is not a fiduciary decision. *Id.* If participants are not fully vested at the time of termination, the IRC requires full vesting of any unvested portion of their ESOP plan account. 26 U.S.C. § 411(d)(3).

---

[2] *See also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443–44 (1999); *Waller v. Blue Cross of California*, 32 F.3d 1337, 1342 (9th Cir. 1994).

4

### D.      The Sortwells

The Sortwells are the co-trustees of the A&A Sortwell Family Trust ("Sortwell Family Trust"). Dkt. 45 at ¶¶ 1, 24. Mr. Sortwell is alleged to have been the founder of Arborwell, Inc. and the Chairman of its Board of Directors. *Id*. Mrs. Sortwell is alleged to have been a member of the Board of Directors as well. *Id*.

### E.      The Arborwell ESOP

The Plan was a pension plan designed to invest primarily in the stock of its sponsor Arborwell, Inc. pursuant to 29 U.S.C. § 1107(d)(6). Dkt. 45 at ¶ 3. The Plan was established in 2017. *Id*. At its inception, the Plan held 1,111,100 shares of Arborwell, Inc. stock. *See* Declaration of Thomas E. Clark, Jr. ("Clark Decl."), attaching as Exhibit A, a true and correct copy of the Plan's 2017 Form 5500 filed with the Department of Labor, at Sortwell000017. The Plan purchased these shares using the proceeds of a loan between the Plan and Arborwell, Inc. for $17,270,450 demonstrating an approximate per share price of $15.54. *Id.; see also id*. at Sortwell000023 ("Note payable to Arborwell…"); Dkt. 45-1 at 55[3] ("ESOP Loan Agreement' means that certain Consolidated ESOP Note and Consolidated ESOP Loan and Pledge Agreement, by and among Seller [the Plan] and the Company [Arborwell, Inc.], dated as of November 1, 2017.")

Arborwell, Inc., as the sponsor of the Plan, entered into certain transactions to fund the establishment of the Plan, including a subordinated note and warrants with the Sortwell Family Trust. *See* Dkt. 45 at ¶ 3 (the "Sortwells…received subordinated notes for their stock."), ¶ 6 ("Arborwell, Inc.'s senior bank debt was substantially unpaid and its subordinated debt was wholly unpaid."), ¶ 50(b) ("their warrants in the Company [which was defined as Arborwell, Inc. in ¶ 1]"); *see also id*. at ¶¶ 33-34. Each year thereafter, in accordance with the legal requirements of ERISA and the Internal Revenue Code ("IRC"), Arborwell, Inc. made contributions to the Plan in order to allocate stock to its participants. *See* Dkt. 45 at ¶¶ 5–6; Clark Decl., Ex. A at Sortwell000016. Thus, each year the amount of allocated stock increased while the amount of unallocated stock decreased.

---

[3] All references to Dkt. page numbers are to the page numbers provided in the ECF header.

5

### F.     The 2020 Sale

In June 2020, CI Quercus made an offer to acquire the Arborwell, Inc. stock held by the ESOP for a total enterprise value of $35,000,000. *See* Dkt. 45 at ¶ 45. In August 2020, a **nonbinding** letter of intent was signed outlining the general terms of a sale of the Arborwell, Inc. stock. *Id*. at ¶ 46.

On September 10, 2020, Alerus Financial, N.A. ("Alerus") was hired as the independent trustee to "for the purpose of reviewing, analyzing, and making a determination as to whether the ESOP should approve, consent to, and/or otherwise engage in certain proposed transactions that may include: (i) a sale of the Company's common stock to a third party…" *See* Dkt. 45-12 at 2. Alerus, in its role as independent trustee, agreed to "act independently to perform all actions and execute all documents necessary or required to negotiate transaction terms and conditions that are in the 'best interests of Plan participants' and consistent with the requirements of the Plan document and applicable law." *Id*. Further, Alerus acknowledged that it was "a fiduciary as that term is defined in Section 3(21)(A) of [ERISA, 29 U.S.C. § 1002(21)(A)]…" *Id*. at 3. Additionally, as part of the 2020 Sale, Alerus was authorized to, and did, hire an independent financial advisor, Strategic Equity Group, and independent legal counsel, Foster Garvey. *Id*.; *see also* Dkt. 45-1 at 74–75 (showing payments made to Strategic Equity Group [SEG] and Foster Garvey as part of the 2020 Sale).

As part of the 2020 Sale, Plaintiff Arborwell made the following representations and warranties in the Stock Purchase Agreement ("SPA"):

> (a)     Trustee has been duly and lawfully appointed by the Company and has the requisite power and authority to administer Seller, to execute, deliver and perform its trustee obligations under the ESOP Plan, and to execute and deliver this Agreement in its capacity as Trustee of Seller, to consummate the Contemplated Transactions and to carry out fully its obligations hereunder.
>
> …
>
> (d) Trustee has retained legal counsel knowledgeable in matters regarding ERISA fiduciary responsibilities to advise Trustee regarding this Agreement and the Contemplated Transactions. Trustee has also retained an independent financial advisor knowledgeable in matters regarding the ESOP to advise Trustee regarding the financial fairness of the Contemplated Transactions. The Trustee has properly discharged its fiduciary duties and has performed and complied with the operation of the ESOP in all material respects.

(e) Trustee has concluded that, as of the date hereof, (i) the Contemplated Transactions are prudent and in the best interests of the ESOP Plan participants and their beneficiaries, and that the consideration to be received by Seller is in the best interest of and fair to the Seller and is not less than "adequate consideration" as defined in Section 3(18)(B) of ERISA, and Trustee has obtained an opinion to such effect from its financial advisor (a copy of which has been provided to Buyer for informational purposes), dated the date hereof (the "ESOP Fairness Opinion") and (ii) the Contemplated Transactions are consistent with ERISA and the Section 4975 of the Code, including the fiduciary rules under ERISA, and do not contemplate a non-exempt prohibited transaction under ERISA or the Code.

*See* Dkt. 45-1 at 33–34.

The only party that signed the SPA on behalf of the Plan was Alerus as independent trustee. *See* Dkt. 45-1 at 68. LaVelle signed on behalf of Arborwell, Inc. *Id*. at 69. The Sortwells only signed the SPA as warrant holders on behalf of the Sortwell Family Trust, **and not in their individual or any alleged corporate or fiduciary capacities**. *Id*. at 70.

The 2020 Sale closed on December 9, 2020, approximately four months after the letter of intent was signed and approximately three months after Alerus was hired as the independent trustee. *See* Dkt. 45 at ¶ 48. CI Quercus paid $34 million. *Id*. at ¶ 50. At the time of the transaction, the Plan had only allocated 281,188 shares of Arborwell, Inc. stock to the participants, with 829,912 unallocated shares remaining as collateral for the Plan's note with Arborwell, Inc. which had an outstanding balance of $13,033,019. *See* Clark Decl., attaching as Exhibit B the Plan's 2020 Form 5500 filed with the Department of Labor, at Sortwell000047. The unallocated shares were exchanged for the forgiveness of the note to Arborwell, Inc. *Id*. The Plan received $10,267,810 for the 281,188 allocated shares or approximately $36.52 per share. *See* Dkt. 45 at ¶ 50; Dkt. 45-1 at 74; Clark Decl., Ex. B at Sortwell000047.

The subordinated note and warrants held by the Sortwell Family Trust were paid by CI Quercus through its subsidiary SavATree as part of the 2020 Sale, not the Plan. *See* Dkt. 45-1 at 74 ((a) SavATree as Sender paid $145,024.47 to the Sortwell Family Trust for "Warrant Payment to

**SORTWELL DEFENDANTS' MOTION TO DISMISS - CASE NO. 4:23-CV-02770-HSG**

1    Sortwell (Net of Reinvestment)" and (b) SavATree as Sender paid $10,380,977.72 to the Sortwell

2    Family Trust for "Repayment of Indebtedness – Sortwell Note"); *see also* Dkt. 45 at ¶ 20.

3            The Plan was subsequently terminated no later than May 31, 2022 by Arborwell as plan

4    sponsor. *See* Clark Decl., attaching as Exhibit C the Plan's 2022 Form 5500 filed with the Department

5    of Labor, at Sortwell000055 (noting the Form 5500 was only for the time period January 1, 2022 to

6    May 31, 2022 and that it was "the final return/report"), Sortwell000061  (noting in Section 5a that a

7    resolution to terminate had been adopted), Sortwell000071 (noting that on December 9, 2020 "the

8    Plan sought formal termination from the Internal Revenue Service " and "[t]he interest of each

9    participant in the Plan was distributed to either the participant or beneficiary per the plan document

10   by May 31, 2022").

11           **G.      Plaintiffs' Claims Against the Sortwells**

12           Plaintiffs bring three claims against the Sortwells in the FAC. *See generally* Dkt. 45 at ¶¶ 159–

13   188. Claim One alleges breaches of 29 U.S.C. § 1104(a)(1). *Id*. at ¶¶ 159–168. Claim Two alleges

14   transactions prohibited by 29 U.S.C. § 1106(a). *Id*. at ¶¶ 169–177. Claim Three alleges transactions

15   prohibited by 29 U.S.C. § 1106(b). *Id*. at ¶¶ 178–188.

16   **IV.    <u>LEGAL STANDARD</u>**

17           At the threshold, a plaintiff must establish that they have statutory and Article III standing to

18   seek relief in federal court. *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465

19   F.3d 1123, 1124–26 (9th Cir. 2006). If the plaintiff does not carry his burden of establishing Article

20   III standing with respect to a claim, that claim should be dismissed pursuant to Fed. R. Civ. P.

21   12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). If the plaintiff cannot demonstrate

22   statutory standing, the Ninth Circuit has held this is akin to a failure to state a claim and it should be

23   dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Vaughn v. Bay Env't Mgmt., Inc.*, 567 F.3d 1021, 1024

24   (9th Cir. 2009).

25           A Rule 12(b)(1) jurisdictional challenge may be facial or factual. *White*, 227 F.3d at 1242. "In

26   a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on

27   their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th

28   Cir. 2004). In a "factual attack," by contrast, "the challenger disputes the truth of allegations that, by

8

1   themselves, would otherwise invoke federal jurisdiction." *Id*. When "considering a motion to dismiss

2   pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review

3   any evidence . . . to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v.*

4   *United States*, 850 F.2d 558, 560 (9th Cir. 1988).

5       In the ERISA context, a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6)

6   is an "important mechanism for weeding out meritless claims." *Dudenhoeffer*, 573 U.S. at 425. "To

7   survive a Rule 12(b)(6) motion to dismiss, a 'plaintiff must allege enough facts to state a claim to

8   relief that is plausible on its face.'" *Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th

9   Cir. 2015) quoting *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008); *Bell Atl. Corp.*

10  *v. Twombly*, 550 U.S. 544, 570 (2007). The court need not accept conclusory allegations,

11  unreasonable inferences, or legal conclusions set out in the form of factual allegations. *Ashcroft v.*

12  *Iqbal*, 556 U.S. 662, 681 (2009); *see also Twombly*, 550 U.S. at 555 ("plaintiff's obligation to provide

13  the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

14  recitation of the elements of a cause of action will not do" (citation omitted)). Allegations that "do

15  little more than recite the elements" of the plaintiff's claim are insufficient to avoid dismissal.

16  *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021). Plausibility requires "more than

17  a sheer possibility that a defendant has acted unlawfully." *Turner*, 788 F.3d at 1210 (quoting *Iqbal*,

18  556 U.S. at 678). Thus, as the Supreme Court recently emphasized in analyzing whether ERISA

19  plaintiffs stated a plausible fiduciary breach claim, "courts must give due regard to the range of

20  reasonable judgments a fiduciary may make based on her experience and expertise" while applying

21  "the pleading standard discussed in" *Twombly* and *Iqbal*. *Hughes v. Northwestern Univ.*, 142 S. Ct.

22  737, 742 (2022).

23      When resolving "a Rule 12(b)(6) motion to dismiss," the Court "must consider the complaint

24  in its entirety, as well as . . . documents incorporated . . . by reference, and matters of which a court

25  may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007). The

26  Court is not "required to accept as true allegations that contradict exhibits attached to the Complaint."

27  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted); *see also*

28  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (recognizing that the incorporation by reference

9

1    doctrine extends to situations "in which the plaintiff's claim depends on the contents of a document,

2    the defendant attaches the document to its motion to dismiss, and the parties do not dispute the

3    authenticity of the document, even though the plaintiff does not explicitly allege the contents of that

4    document in the complaint").

5          Here, documents relating to the Plan may be considered in connection with the Sortwells'

6    arguments under Rule 12(b)(6) because they are incorporated into, and centrally related to, Plaintiffs'

7    allegations about the Plan's investment in Arborwell, Inc. stock and the Plan's termination. *See*

8    *Lorenz v. Safeway, Inc.*, No. 16-4903, 2017 WL 952883, at *3 (N.D. Cal. Mar. 13, 2017) (taking

9    judicial notice of plan document, summary plan descriptions, and Form 5500 filings submitted to the

10   Department of Labor noting that "[c]ourts routinely take judicial notice of ERISA plan documents

11   like those"); *see also Baird v. BlackRock Institutional Tr. Co., N.A.*, 403 F. Supp. 3d 765, 774 (N.D.

12   Cal. 2019) (Gilliam, J.).

13         Additionally, "[a] plaintiff who sues multiple defendants must allege the basis of his claim

14   against each defendant to satisfy Federal Rule of Civil Procedure 8." *Culinary Studios, Inc. v.*

15   *Newsom*, 517 F. Supp. 3d 1042, 1074 (E.D. Cal. 2021). "[C]omplaints that lump defendants together

16   without adequately distinguishing claims and alleged wrongs among the defendants are improper."

17   *Id*. at 1074–75. Indeed, "[b]road allegations against numerous defendants are not specific enough to

18   provide the defendants with notice of the plaintiffs' allegations." *Sheffield v. Orius Corp.*, 211 F.R.D.

19   411, 415 (D. Or. 2002); *see also Victoria v. City of San Diego*, 326 F. Supp. 3d 1003, 1019 (S.D. Cal.

20   2018) ("[G]roup pleading does not provide Defendants fair notice of the claims against them.").

21   Rather, "'[s]pecifc identification of the parties to the activities alleged by the plaintiffs is required…to

22   enable [a] defendant to plead intelligently.'" *Culinary Studios*, 517 F. Supp. 3d at 1074 (quoting

23   *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014)). Improper lumping of

24   defendants together justifies dismissal under Rule 12(b)(6). *Id*. at 1075.

25         Leave to amend is properly denied where an issue cannot be cured by amendment. *Schucker*

26   *v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 2012).

27

28

# V.    ARGUMENT

## A.    Plaintiffs Lack Statutory and Article III Standing

### 1.    Neither Plaintiff Has Statutory Standing to Bring Claims Against the Sortwells on Behalf of the Plan

ERISA enumerates a limited list of parties that have statutory standing to bring claims under ERISA. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27 (1983). ERISA Section 502(a)(2) provides that only the Secretary of Labor, a fiduciary, a participant, or a beneficiary may bring a claim. *See* 29 U.S.C. § 1132(a)(2). ERISA Section 502(a)(3) provides that only a fiduciary, a participant, or a beneficiary may bring a claim. *See* 29 U.S.C. § 1132(a)(3).

Plaintiff Arborwell alleges it has statutory standing under ERISA because it is "is the same entity as Arborwell, Inc.—the named fiduciary of the ESOP, its sponsor and its administrator, which selected and monitored the Trustee and the ESOP Administrative Committee[.]" *See* Dkt. 45 at ¶ 15.[4] However, it has been black letter law since the earliest days of ERISA jurisprudence that former fiduciaries do not have statutory standing to bring claims under 29 U.S.C. § 1132(a) on behalf of a plan to which they no longer have duties. *Trujillo v. ABA*, 706 F. App'x 868, 870 (7th Cir. 2017); *Corbin v. Blankenburg*, 39 F.3d 650, 652–53 (6th Cir. 1994); *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 14–15 (2d Cir. 1991); *Blackmar v. Lichtenstein*, 603 F.2d 1306, 1310 (8th Cir. 1979). A former fiduciary is not included in this list because they "no longer [have] an interest in protecting a plan to which it is now a complete stranger." *Chemung Canal Tr. Co.*, 939 F.2d at 15.[5]

---

[4] Plaintiff Arborwell claims it has statutory standing pursuant to 29 U.S.C. § 1132(e)(2) however this provision discusses venue, not standing. *See* Dkt. 45 at ¶ 14. The Sortwells assume that Plaintiffs meant 29 U.S.C. § 1132(a)(2).

[5] This is especially true here where the motivation for filing this lawsuit *to benefit the Plan* in any way is suspect at best. CI Quercus and SavATree were and remain adverse parties to the Plan with regard to the 2020 Sale. It is highly questionable how Arborwell can act on behalf of these adverse parties at the same time in bringing this suit, especially where allegations are included that suggest that CI Quercus and SavATree would like to have the 2020 Sale nullified which, without dispute, would be damaging to the Plan and its former participants. *See, e.g.*, Dkt. 45 at ¶ 56 ("the 2020 Sale was premature").

11

1    Here, the Plan was terminated no later than May 31, 2022 and thus has no current fiduciaries

2    at all. *See* Clark Decl., Ex. C at Sortwell000055 (noting the Form 5500 was only for the time period

3    January 1, 2022 to May 31, 2022 and that it was "the final return/report"), Sortwell000061 (noting in

4    Section 5a that a resolution to terminate had been adopted), Sortwell000071 (noting that on December

5    9, 2020 "the Plan sought formal termination from the Internal Revenue Service" and "[t]he interest

6    of each participant in the Plan was distributed to either the participant or beneficiary per the plan

7    document by May 31, 2022"). Consequently, Arborwell is a former fiduciary to the Plan and therefore

8    has no standing to act on behalf of a plan that has been terminated and no longer exists.

9    There are no allegations at all in the FAC that SavATree ever acted as one of the enumerated

10   parties in 29 U.S.C. § 1132(a) with respect to the Plan before its termination. Thus, any claims against

11   the Sortwells brought by SavATree on behalf of the Plan must be dismissed as to Counts One through

12   Three, each of which is brought pursuant only to 29 U.S.C. §§ 1132(a)(2) and (a)(3). *See* Dkt. 45 at

13   ¶¶ 163, 168, 177, 188.

14   Claims One through Three must therefore be dismissed with prejudice as there is no

15   amendment that would address this defect in the FAC. *Schucker*, 846 F.2d at 1203–04.

16           **2.      Neither Plaintiff Has Statutory Standing to Bring Claims Against**

17                     **the Sortwells on Behalf of the SavATree 401(k) Plan**

18   SavATree, as well as Arborwell as its subsidiary, allege that they have statutory standing

19   under ERISA to bring Claims One through Three against the Sortwells on behalf of the SavATree

20   401(k) Plan:

21           Plaintiff SavATree is also the named fiduciary of the successor ERISA plan to the
             ESOP, which assumed the assets of the ESOP participants who continued to be
22           employed by Arborwell following its acquisition and who chose to roll over their
             interests in the ESOP to the [SavATree 401k Plan]. Accordingly, as the named
23           fiduciary of the successor 401k Plan, SavATree and its subsidiary Arborwell have
             standing under 29 U.S.C. §§ 1132(a) to sue fiduciaries of the predecessor ESOP plan.
24           *Pilkington PLC v. Perelman*, 72 F.3d 1396, 1401 (9th Cir. 1995).

25

26

27

28

**SORTWELL DEFENDANTS' MOTION TO DISMISS - CASE NO. 4:23-CV-02770-HSG**

*See* Dkt. 45 at ¶ 16.[6]

However, a fiduciary who acts on behalf of a particular plan has no standing under ERISA to sue for alleged breaches to a different, unrelated plan. *See Pilkington PLC v. Perelman*, 72 F.3d 1396, 1399 (9th Cir. 1995). It has long been the law in this District that participants, beneficiaries, and/or fiduciaries of one ERISA plan do not have standing to allege breach of fiduciary duty claims with respect to another ERISA plan because "Congress intended breach of fiduciary duty claims against only the plan under which participants suffered from the breach." *Lee v. Prudential Ins. Co. of America,* 673 F. Supp. 998, 1004 (N.D. Cal. 1987) citing H.R. Conf. Rep. No. 1280, 327, 93rd Cong., 2nd Sess. (1974)). In the Ninth Circuit there is a limited exception to this well-established rule where two conditions are met: (1) a predecessor plan merges into a successor plan[7] thereby creating one single plan and (2) the claim alleges plan-wide damages to the successor plan. *Pilkington*, 72 F.3d at 1399 ("Upon purchase of the Visioncare companies, plaintiffs inherited any injuries that had been sustained by Revlon's post-spin-off plan. In fact, the Visioncare plan effectively *is* the new Revlon plan in another mantle, created by Revlon's sales of its subsidiary Visioncare companies to Pilkington."); *see also In re McKesson HBOC, Inc. ERISA Litig.*, No. 00-20030, 2002 WL 31431588, at *13 (N.D. Cal. Sep. 30, 2002).

Here, neither condition is met. First, the Plan did not legally merge[8] into the SavATree 401(k) Plan and Plaintiffs do not allege that a merger occurred. Instead, Plaintiffs claim that the SavATree 401(k) Plan merely accepted the roll-over requests of certain Arborwell employees to participate in

---

[6] There are no allegations in the FAC that the Sortwells ever acted as fiduciaries in any way at all to the SavATree 401(k) Plan.

[7] Plaintiffs' conclusory statement that the SavATree 401(k) plan is the "successor plan" to the ESOP (Dkt. 45 at ¶ 16) but do not explain how this can be the case as a matter of law when it is alleged that the only transaction that occurred with respect to the two plans is that some former Arborwell employees elected to roll their ESOP retirement accounts into the SavATree 401(k) plan.

[8] According to IRS Regulations, a merger or "consolidation" only occurs in the following circumstances: "the combining of two or more plans into a single plan. A merger or consolidation will not occur merely because one or more corporations undergo a reorganization (whether or not taxable). Furthermore, a merger or consolidation will not occur if two plans are not combined into a single plan, such as by using one trust which limits the availability of assets of one plan to provide benefits to participants and beneficiaries of only that plan." 26 C.F.R. § 1.414(l)-1(b)(2). These circumstances unequivocally are not alleged here.

13

the SavATree 401(k) Plan. Dkt. 45 ¶ 16. While it may be true that certain employees of Arborwell now work for SavATree and that they rolled over money, this does not meet the condition set out in *Pilkington* where the Ninth Circuit found "the [predecessor] plan effectively is the new [successor] plan in another mantle[.]" 72 F.3d at 1399. Aside from being wrong legally, Plaintiffs theory of the law also makes little sense. For example, if Plaintiffs' interpretation of *Pilkington* is correct, if even one former employee of Arborwell elected to leave the company and for example, go work for Wal-Mart and elected to roll over their account balance over to the Wal-Mart 401(k) plan, Wal-Mart's 401(k) plan fiduciaries would have standing to bring a claim against the Sortwells. Such a result would be absurd and unsupported by the holding in *Pilkington*.

Second, under *Pilkington* and *In re McKesson*, standing would only exist if the alleged harm was to the SavATree 401(k) Plan on the whole, not to the individual accounts of the former Arborwell employees that is alleged to have occurred only **prior** to them rolling over their assets, not while they are participants in the SavATree 401(k) Plan. *See Pilkington*, 72 F.3d at 1399;  *In re McKesson HBOC ERISA Lit.,* 2002 WL 31431588, at *13. Because there is no allegation that any harm occurred while the SavATree 401(k) Plan allegedly held former Arborwell employee's assets, neither SavATree nor Arborwell have standing to bring any claims against the Sortwells on behalf of the SavATree 401(k) Plan.

Neither Plaintiff therefore has standing to pursue claims against the Sortwells on behalf of the SavATree 401(k) Plan and Claims One through Three must therefore be dismissed with prejudice as there is no amendment that would address this defect in the FAC.

      **3.**      **Plaintiffs Do Not Have Standing Under ERISA to Bring Claims on Their Own Behalf as Corporate Entities**

Claims under 29 U.S.C. § 1132(a) are brought only in a representative capacity on behalf of a plan. *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 256 (2008); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). However, here, sprinkled throughout the FAC, are allegations that Plaintiffs may bring claims under ERISA for their own benefit, as opposed to the Plan's. *See* Dkt. 45 at ¶ 1 ("In direct violation of ERISA and with Defendant Alerus's knowledge and participation, Defendants Sortwells, LaVelle and Woolner used the ESOP's sale of Arborwell, Inc. stock to unjustly

1  enrich themselves at the expense of the ESOP, the ESOP's employee participants, **and the Buyer CI**

2  **Quercus**.") (emphasis added); ¶ 53 ("In violation of their ERISA fiduciary duties and the ERISA

3  prohibited transaction rules, the Sortwells, LaVelle and Woolner orchestrated the 2020 Sale to obtain

4  accelerated and additional personal benefits and personally enrich themselves at the expense of

5  Arborwell, Inc., the ESOP, the ESOP participants, and **the Buyer, Plaintiff CI Quercus**.").

6      "[W]here a [party's] claims in a lawsuit relate solely to its own injuries and not to its fiduciary

7  responsibilities to the plan or to the plan's participants and beneficiaries, it is not acting as an ERISA

8  fiduciary under 29 U.S.C. § 1002(21)(A)." *Viad Corp. v. MoneyGram Int'l, Inc.*, No. 10-2605, 2011

9  U.S. Dist. LEXIS 123569, at *7 n.22 (D. Ariz. Mar. 31, 2011)[9] citing *Sonoco Products Co. v.*

10 *Physicians Health Plan, Inc.*, 338 F.3d 366, 373 (4th Cir. 2003); *see also Toumajian v. Frailey*, 135

11 F.3d 648, 655–56 (9th Cir. 1998) (holding that ERISA did not provide an avenue for claims to be

12 brought if not on behalf of the plan but instead only to benefit the employer). Consequently, any claim

13 that can be read to be brought under ERISA to benefit solely the Plaintiffs in their corporate capacities,

14 and not the Plan, must be dismissed with prejudice. *Nitro Constr. Servs., Inc. v. D'Aquila*, No. 18-

15 1510, 2019 WL 1521982, at *3–4 (S.D.W. Va. Apr. 8, 2019).

16           **4.     Plaintiffs Lack Article III Standing Under ERISA**

17      A plaintiff must have Article III standing to bring an ERISA action. *Thole v. U.S. Bank N.A.*,

18 140 S. Ct. 1615, 1620 (2020) (holding that an available cause of action under ERISA does not affect

19 the Court's Article III standing analysis); *see also Anderson v. Intel Corp.*, No. 19-4618, 2021 WL

20 229235, at *14 (N.D. Cal. Jan. 21, 2021) (citation omitted) (granting motion to dismiss where

21 plaintiffs failed to allege an injury-in-fact traceable to defendants' conduct, and therefore plaintiffs

22 lacked Article III standing). Claims for both monetary and other equitable relief require an "injury in

23 fact" that "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S.

24 330, 339 (2016) (internal quotation marks and citation omitted).

25      The Ninth Circuit recently held the following with regard to Article III standing and ERISA

26 claims:

27

28 ⁹ While the Sortwells recognize this Court's preference for Westlaw database citations for unpublished decisions, no parallel Westlaw citation for this case could be located.

15

Plaintiffs bear the burden of establishing each of the three irreducible elements of Article III standing…They must sufficiently allege (i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief…At the pleading stage, plaintiffs must clearly…allege facts demonstrating each element.

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023) (quotations and citations omitted).

Plaintiffs lack Article III standing to brings claims against the Sortwells because, at minimum, the Plan (and as alleged the SavATree 401(k) Plan because it allegedly received certain rollovers) did not (1) suffer any injury at all and (2) the 2020 Sale was not caused by the Sortwells.

First, as alleged by the Plaintiffs, the Plan received $10,267,810 as part of the 2020 Sale. *See* Dkt. 45 at ¶ 52. This amount was for stock that had been allocated to the Plan's participants from 2017 to 2020. *See* Dkt. 45-1 at 74; Clark Decl., Ex. B at Sortwell000047. However, the amount of benefits paid to a plan is a settlor decision by the employer, not subject to ERISA's fiduciary duties, and therefore there can be no loss to the Plan regarding the amount of stock that was allocated between 2017 and 2020.[10] *Hughes Aircraft Co.*, 525 U.S. at 432 ("ERISA's fiduciary duty requirement simply is not implicated where [the company], acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated."); *see also Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000) ("Until the employer pays the employer contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation; this is true even where the employer is also a fiduciary of the plan."). Consequently, the FAC fails to allege any loss to the Plan as the amount of allocated stock held by the Plan is not subject

---

[10] Importantly, there are also annual limitations on how much money can be allocated to any one participant that prevents a tax deferred plan from becoming an abusive tax shelter. *See generally* 26 U.S.C. § 415 (limiting annual employer contributions to avoid a plan becoming an abusive tax shelter).

16

1    to ERISA's fiduciary duties and the allocated stock the Plan did hold doubled in price between 2017

2    and 2020.

3          Additionally, there is no legal theory or proper factual allegation that supports Plaintiffs'

4    argument that the Sortwell Family Trust benefitted at the expense of the Plan. At the time of the 2020

5    Sale, no one acting on behalf of the Plan had the right to refuse to pay the amounts owed to the

6    Sortwell Family Trust **by Arborwell, Inc.** (not the Plan). *See* 26 C.F.R. § 54.4975-7(b)(8); *see also*

7    *Benefits Comm. of Saint-Gobain Corp. v. Key Tr. Co.*, 313 F.3d 919, 932 (6th Cir. 2002) ("The only

8    way to describe the reneging on the loan payment would be a 'windfall' to the participants. The

9    purpose of these ERISA safeguards was not to obtain windfalls for the participants but ensure that

10   the rights promised by a company were fulfilled. In this case, those rights - as well as a large surplus

11   on top of that - have inured to the participants."). The money received by the Sortwell Family Trust

12   did not involve plan assets and thus does not implicate ERISA or ERISA's fiduciary duties. 29 C.F.R.

13   § 2510.3-101(a)(2). The money instead came directly from CI Quercus through its subsidiary

14   SavATree. *See* Dkt. 45-1 at 74 ((a) SavATree, LLC as Sender paid $145,024.47 to the Sortwell Family

15   Trust for "Warrant Payment to Sortwell (Net of Reinvestment)" and (b) SavATree, LLC as Sender

16   paid $10,380,977.72 to the Sortwell Family Trust for "Repayment of Indebtedness – Sortwell Note").

17         Further, as detailed below in Section B.2, the Sortwells did not control or cause the Plan to

18   agree to the 2020 Sale. Instead, Alerus did as the Plan's independent trustee. S*ee* Dkt. 45-12 at 2–3;

19   *see also* Dkt. 45-1 at 33–34, 68, 70, 74–75. Thus, the FAC fails to properly allege that the Sortwells

20   caused any injury at all to the Plan. Counts One through Three must therefore be dismissed with

21   prejudice for lack of Article III standing.

22        **B.**     **The FAC Fails to Allege Any Proper Claims under ERISA**

23         To plausibly state such a claim under ERISA, Plaintiffs must allege facts demonstrating the

24   Sortwells: (1) acted as fiduciaries with respect to the actions they challenge; (2) breached a duty owed

25   to Plan participants; and (3) caused harm or losses to the Plan. *See Pegram v. Herdrich*, 530 U.S. 211,

26   225–26 (2000); *Wright v. Ore. Metallurgical Corp.*, 360 F.3d 1090, 1099 (9th Cir. 2004).

27

28

17

### 1.     Plaintiffs' FAC Amounts to an Improper Shotgun Pleading

Even if Plaintiffs had carried their burden to demonstrate standing, the FAC should be dismissed because it is a shotgun pleading that fails to clear even the low hurdle imposed by Rule 8(a). A plaintiff suing multiple defendants must allege the basis of his claim against each defendant" to satisfy Rule 8 pleading standards. *Flores*, 997 F. Supp. 2d at 1103 (quotation omitted); *see, e.g., IATSE Local 33 Section 401(K) Plan Bd. of Trs. v. Bullock*, No. 08-3949, 2008 WL 4838490, at *3 (C.D. Cal. Nov. 5, 2008) (rejecting ERISA claims that "lump[ed] together the various defendants as if all were culpable for every supposed ERISA violation"); *Bryant v. Tulare Cty.*, No. 16-1542, 2016 WL 6996476, at *2 (E.D. Cal. Nov. 29, 2016) (dismissing claims where the plaintiff failed to allege "the specific wrongful acts that each Defendant performed and how each Defendant either caused Plaintiff harm or is responsible for Plaintiff's harm"); *Caudle v. Life Ins. Co. of N. Am.*, 33 F. Supp. 3d 1288, 1294 (N.D. Ala. 2014) ("[S]imply lumping all the Honda Defendants together as 'Honda entities' in an unacceptable shotgun format does not satisfy her Rule 8 obligation to assert her ERISA-based counts against each defendant[.]"). "Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations. They are unacceptable." *Sollberger v. Wachovia Secs., LLC*, No. 09-766, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010).

Like in the cases cited above, here, the pleading problems with Plaintiffs' FAC are numerous. First, Plaintiffs impermissibly merge multiple purported violations under each Claim, rendering it impossible to discern what actions or inactions Plaintiffs assert form the basis for any particular cause of action. For example, in Claim Two, Plaintiffs allege violations of both 29 U.S.C. § 1106(a)(1)(A) (precluding the sale or exchange of property between plan and party in interest) and 29 U.S.C. § 1106(a)(1)(D) (regarding the transfer to, or use by or for the benefit of a party in interest, of any assets of the plan) without distinguishment. *See* Dkt. 45 at ¶¶ 170, 175. Similarly, without articulating what each defendant did or failed to do with respect to each purported violation, in Claim Three, Plaintiffs allege violations of 29 U.S.C. § 1106(b)(1) (precluding the dealing with assets of plan in one's own interest), 29 U.S.C. § 1106(b)(2) (prohibiting the acting in a transaction by one whose interests are adverse to the plan), and 29 U.S.C. § 1106(b)(3) (precluding the receipt of consideration on one's own

1    personal account from any party dealing with the plan). *See* Dkt. 45 at ¶¶ 182–84. The same occurs

2    in Claim One where Plaintiffs group together the distinct duties of loyalty under 29 U.S.C. §

3    1104(a)(1)(A) and the duty of care and prudence under 29 U.S.C. § 1104(a)(l)(B) but fail to specify

4    which allegations resulted in a violation of which duties/sections of ERISA. *See* Dkt. 45 at ¶ 161–62;

5    *Anderson*, 2021 WL 229235 at *13 (the duty of loyalty is distinct from the duty of prudence).

6           In addition, Plaintiffs fail to comply with Rule 8(a) because the FAC does not put the Sortwells

7    (distinct from the other defendants) on notice of the claims against them. To satisfy Rule 8(a), a

8    complaint must "give the defendant fair notice of what the claim is and the grounds upon which it

9    rests." *Twombly*, 550 U.S. at 555; *see also Vargas v. JP Morgan Chase Bank, NA.*, No. 14-859, 2014

10   WL 3435628, at *5 (C.D. Cal. July 11, 2014) (dismissing complaint that "is rife with examples of

11   'lump' or 'group' pleading, ... fails to identify a single defendant specifically whose actions violate [the

12   statute, and] does no more than state legal conclusions in the form of factual allegations"). In violation

13   of Rule 8(a), Plaintiffs lump the Sortwells, along with LaVelle, Woolner, and Alerus together in

14   Claims One through Three. *See* Dkt. 45 at ¶¶ 161–65, 167–68, 175–77, 180–86, 188. This is especially

15   egregious here, because as discussed immediately below, Alerus, as independent trustee, was the only

16   entity acting on behalf of the Plan for the 2020 Sale.

17          Claims One through Three should be dismissed against the Sortwells.

18                  **2.      The FAC Fails to Properly Allege that the Sortwells were**

19                          **Fiduciaries to the ESOP**

20          Claims One through Three also fail against the Sortwells because they were not fiduciaries to

21   the Plan with regard to the 2020 Sale. Plaintiffs' conclusory allegations regarding the fiduciary status

22   of the Sortwells are insufficient to survive a motion to dismiss.

23          "As a threshold matter, to state a claim for breach of fiduciary duty, co-fiduciary liability, or

24   participation in a prohibited transaction in violation of ERISA, the plaintiff must first allege that the

25   defendant was acting as an ERISA fiduciary when committing the alleged ERISA violation." *Carter*

26   *v. San Pasqual Fiduciary Tr. Co.*, No. 15-1507, 2016 WL 6803768, at *3 (C.D. Cal. Apr. 18, 2016)

27   (citing *Pegram*, 530 U.S. at 226). "An individual can become an ERISA fiduciary in two ways. First,

28   the individual may be named as a fiduciary under the terms of an ERISA plan." *Id.* (citing 29 U.S.C.

19

§ 1102(a)(2)). "If so, the scope of the individual's responsibilities as a named fiduciary may be limited by the plan instrument." *Id*. "Second, the individual can acquire functional fiduciary status by (1) exercising discretionary authority or control over management of an ERISA plan or disposition of its assets; (2) rendering investment advice for a fee or other compensation; or (3) exercising discretionary authority in the administration of the plan." *Id*. (citing 29 U.S.C. § 1002(21)(A)).

Even if a party is an ERISA fiduciary in one respect does not mean they are fiduciaries to all possible conduct. "Whether an ERISA fiduciary acts in its fiduciary or business capacity 'depends upon the nature of the function performed.'" *Id*. at *4 (quoting *Beck v. Pace Int'l Union*, 551 U.S. 96, 101 (2007)). A person is a functional fiduciary "only 'to the extent' the person engages in the listed conduct, [meaning] a person may be a fiduciary with respect to some actions but not others." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 654 (9th Cir. 2019) (quoting *Pegram*, 530 U.S. at 225–26). "[C]ourts must examine the conduct at issue to determine whether it constitutes management or administration of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary duties." *Acosta v. Brain*, 910 F.3d 502, 518 (9th Cir. 2018) (internal quotation marks and citation omitted); *In re JDS Uniphase Corp. ERISA Litig.*, No. 03-4743, 2005 WL 1662131, at *2 (N.D. Cal. July 14, 2005) ("Fiduciary status under ERISA is not an all-or-nothing concept, and a court must ask whether a person is a fiduciary **with respect to the particular activity at issue**.") (internal quotation marks omitted; emphasis in original).

"Typically, an individual that has both fiduciary and business functions does not act as an ERISA fiduciary just because its business decisions affect the value of an ERISA plan's assets." *Carter*, 2016 WL 6803768, at *4. Further, a company's officers or directors are not fiduciaries for ERISA purposes "merely because the corporation is a fiduciary." *In re JDS Uniphase Corp. ERISA Litig.*, 2005 WL 1662131, at *3; *see also Confer v. Custom Eng'g Co*., 952 F.2d 34, 35 (3d Cir. 1991) ("We hold that individual officers of an ERISA plan's fiduciary are not fiduciaries by virtue of their offices[.]"); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 02-8853, 2005 WL 563166, at *4 (S.D.N.Y. Mar. 10, 2005) (noting that an individual's executive role "is, standing alone, insufficient to confer fiduciary status").

1    Here, Plaintiffs do not even cite to 29 U.S.C. § 1002(21)(A) in Claims One through Three let

2  alone plead specifically how the Sortwells met the statutory definition with respect to the alleged

3  duties and transactions alleged. *See* Dkt. 45 at ¶¶ 161, 172, 180. Generalized conclusory allegations

4  sprinkled throughout the FAC merely parroting statutory language are not enough to state a claim

5  under Rule 12(b)(6). *Hawaii Masons' Pension Tr. Fund v. Glob. Stone Hawaii, Inc.*, 292 F. Supp. 3d

6  1063, 1076–77 (D. Haw. 2017) (dismissing as conclusory plaintiffs' allegation that the individual

7  defendant was "a fiduciary under ERISA because s/he exercised authority or control respecting

8  management or disposition of plan assets"); *Scalia v. Fla. Bankers Health Consortium Inc.*, No. 20-

9  1283, 2021 WL 7629394, at *2 (M.D. Fla. Jan. 12, 2021) (dismissing individual defendants because

10 the plaintiff did not allege how "[they] had 'discretionary authority and control' or state anything

11 other than conclusory allegations regarding the Defendants' alleged fiduciary status").

12    Plaintiffs' failure to sufficiently plead any fiduciary status of the Sortwells as to the

13 transactions at issue in the Claims One through Three is not accidental, but clearly consequential as

14 only one party was acting as a fiduciary to the Plan with regard to the 2020 Sale: Alerus, the

15 independent trustee. Alerus was hired "for the purpose of reviewing, analyzing, and making a

16 determination as to whether the ESOP should approve, consent to, and/or otherwise engage in certain

17 proposed transactions that may include: (i) a sale of the Company's common stock to a third party…"

18 *See* Dkt. 45-12 at 2. Alerus, in its role as independent trustee, agreed to "act independently to perform

19 all actions and execute all documents necessary or required to negotiate transaction terms and

20 conditions that are in the 'best interests of Plan participants' and consistent with the requirements of

21 the Plan document and applicable law." *Id.* Further, Alerus acknowledged that it was "a fiduciary as

22 that term is defined in Section 3(21)(A) of [ERISA]…" *Id* at 3. The FAC itself acknowledges the

23 independent discretionary role played by Alerus and that it had sole decision making authority

24 whether to approve the 2020 Sale. *See* Dkt. 45 at ¶ 7 ("Defendant Alerus was the ESOP's independent

25 trustee and a named ERISA fiduciary. **Alerus was responsible for determining whether the ESOP**

26

27

28

**SORTWELL DEFENDANTS' MOTION TO DISMISS - CASE NO. 4:23-CV-02770-HSG**

1  **should approve, consent to, and engage in the 2020 Sale**, and ensuring that the price the ESOP

2  received during the 2020 Sale was for no less than adequate consideration.") (emphasis added).[11]

3       The documents attached to the FAC by Plaintiffs undermine their unsupported allegations.

4  The only party that signed the SPA on behalf of the Plan was Alerus as independent trustee. *See* Dkt.

5  45-1 at 68. LaVelle signed on behalf of Arborwell, Inc. *Id*. at 69. The Sortwells only signed the SPA

6  as warrant holders on behalf of the Sortwell Family Trust, and not in their individual or corporate

7  capacities, and certainly not in any fiduciary capacity at all that would satisfy 29 U.S.C. §

8  1002(21)(A). *Id*. at 70.

9       No matter the alleged corporate roles (or alleged self-interested roles on behalf of the Sortwell

10  Family Trust) played by the Sortwells,[12] each of the statutory provisions that Plaintiffs allege the

11  Sortwells violated require that they be fiduciaries. *See* 29 U.S.C. § 1104(a)(1) ("a fiduciary shall…");

12  29 U.S.C. § 1106(a)(1) ("A fiduciary with respect to a plan shall not cause…"); 29 U.S.C. § 1106(b)

13  ("A fiduciary with respect to a plan shall not…"). Because only Alerus was a fiduciary to the Plan for

14  the purposes of the 2020 Sale and Plaintiffs have not and cannot plead that the Sortwells met the

15  statutory definition found in 29 U.S.C. § 1002(21)(A), Claims One through Three must be dismissed

16  with prejudice against the Sortwells.

17          **3.**     **The Sortwells Did Not Knowingly Participate in Any Breach or**

18                 **Prohibited Transaction**

19       As noted above, Plaintiffs' FAC is a poorly drafted shotgun pleading which fails to put the

20  Sortwells on notice as to the claims alleged against them. One such example is the Plaintiffs' use of

21  the phrase "knowingly participated" in Claims Two and Three. *See* Dkt. 45 at ¶¶ 167–68, 176–77,

22  186–88. These conclusory allegations fail as a matter of law and must be dismissed with prejudice.

23       Generally speaking, ERISA only authorizes suits against plan fiduciaries. *See Harris Tr. &*

24  *Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 246 (2000). In *Harris Trust*, however, the

25

26  [11] Plaintiff Arborwell also acknowledged in the SPA Alerus' singular role in acting on behalf of the Plan. *See* Dkt. 45-1 at 33–34 (where Arborwell's representations and warranties in the SPA make clear Alerus was the sole party acting on behalf of the Plan).

27  [12] Given Alerus' singular role acting on behalf of the Plan, any corporate role played by the Sortwells

28  was not fiduciary in nature. Termination of any employee benefit plan, including an ESOP, is a settlor decision made by the ESOP's sponsor in its capacity as employer. *Spink*, 517 U.S. at 890.

Supreme Court held that under limited circumstances a plaintiff may sue a nonfiduciary party-in-interest who knowingly participates in a prohibited transaction and seek appropriate equitable relief under 29 U.S.C. § 1132(a)(3). *Id.* at 250. To bring a knowing participation claim against a nonfiduciary under 29 U.S.C. § 1132(a)(3), Plaintiffs must show: "(1) funds rightfully belonging to a plan were wrongfully transferred to the non-fiduciary; (2) the non-fiduciary had 'actual or constructive knowledge' of the circumstances that rendered the transfer wrongful; and (3) the plan seeks appropriate equitable relief." *Kalan v. Farmers & Merchs. Tr. Co. of Chambersburg*, No. 15-1435, 2016 WL 3087360, at *1 (E.D. Pa., June 2, 2016) (internal quotation marks and citation omitted).

At minimum, Plaintiffs have failed to allege that the Sortwells received funds rightfully belonging to the Plan. *See Harris Trust*, 530 U.S. at 253 (referencing "tainted plan assets"); *A&I Transp. Inc. v. KG Admin. Servs., Inc.*, No. 19-1992, 2021 WL 2792327, at *3 (C.D. Cal. Mar. 26, 2021) (referencing "ill-gotten trust assets").

Here, Plaintiffs allege the money received by the Sortwell Family Trust was for the payoff of the subordinated note (entered into as part of the 2017 Transaction) and warrants held in Arborwell, Inc. stock. *See* Dkt. 45 at ¶ 50. However, as noted above, (1) the subordinated note and warrants were between the Sortwell Family Trust and Arborwell, Inc., not the Plan,[13] and (2) the money received by the Sortwell Family Trust as part of the 2020 Sale came directly from CI Quercus' subsidiary SavATree, not the Plan.[14] The money alleged to be received by the Sortwells thus were not plan assets. 29 C.F.R. § 2510.3-101(a)(2). As such, Plaintiff cannot properly allege that the Sortwells received tainted plan assets of any kind and thus any knowing participation claim fails as a matter of law and must be dismissed with prejudice. *Thomas v. Bostwick*, No. 13-2544, 2014 WL 6386806, at

---

[13] *See* Dkt. 45 at ¶ 3 (the "Sortwells…received subordinated notes for their stock."), ¶ 6 ("Arborwell, Inc.'s senior bank debt was substantially unpaid and its subordinated debt was wholly unpaid."), ¶ 50(b) ("their warrants in the Company [which was defined as Arborwell, Inc. in ¶ 1]); *see also id.* at ¶¶ 35–36.

[14] *See* Dkt. 45-1 at 74 ((a) SavATree, LLC as Sender paid $145,024.47 to the Sortwell Family Trust for "Warrant Payment to Sortwell (Net of Reinvestment)" and (b) SavATree, LLC as Sender paid $10,380,977.72 to the Sortwell Family Trust for "Repayment of Indebtedness – Sortwell Note"); *see also* Dkt. 45 at ¶ 20.

*5 (N.D. Cal. Nov. 14, 2014) (noting that a necessary element of a 29 U.S.C. § 1132(a)(3) claim requires that the "party-in-interest" receive "funds transferred from an ERISA plan").

### 4.   Any Claims Related to the 2017 Transaction are Time-Barred

Given the shotgun nature of the FAC, it is unclear whether Plaintiffs are alleging that the 2017 Transaction was improper in any way given that the loan and warrants held by the Sortwell Family Trust were a result of that transaction, and not the 2020 Sale. But to the extent Plaintiffs claim that the 2017 Transaction is at issue in this lawsuit, such claims are time-barred.

ERISA claims must be brought within three years of the "earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113(2); *see Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*, 944 F.2d 509, 520 (9th Cir. 1991) ("The earliest date on which a plaintiff became aware of any breach . . . start[s] the limitation period of § 1113[](2) running."). Courts "follow a two-step test to determine whether a claim is barred by [S]ection 1113(2)." *Sulyma v. Intel Corp. Inv. Policy Comm.*, 909 F.3d 1069, 1072 (9th Cir. 2018). First, courts "isolate and define the underlying violation upon which [the] plaintiff's claim is founded." *Id*. at 1072–73 (quoting *Ziegler v. Conn. Gen. Life Ins. Co.*, 916 F.2d 548, 551 (9th Cir. 1990)). Second, courts "inquire when [the plaintiff] had actual knowledge of the alleged breach or violation." *Id*. (quoting *Ziegler*, 916 F.2d at 552). The Supreme Court has interpreted "actual knowledge" in this context to mean that "the plaintiff must in fact . . . be[came] aware of that information." *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 777 (2020).

Here, it is evident on the face of the FAC that Plaintiff Arborwell has had actual knowledge of the 2017 Transaction more than three years ago. Arborwell is the successor corporate entity to Arborwell, Inc. (Dkt. 45 at ¶ 1), the very corporate entity that was sold to the Plan in 2017. *Id*. at ¶ 3. The counter party to the note with the Sortwell Family Trust was Arborwell, Inc. *Id*. at ¶ 3 (the "Sortwells…received subordinated notes for their stock."), ¶ 6 ("**Arborwell, Inc.'s** senior bank debt was substantially unpaid and **_its subordinated debt_** was wholly unpaid."). The warrants held by the Sortwell Family Trust were in Arborwell, Inc. stock. Dkt. 45 at ¶ 50(b) ("their warrants in the Company [which was defined as Arborwell, Inc. in ¶ 1]).

24

1    Consequently, given Arborwell's actual knowledge more than three years ago, any claims

2 related to the 2017 Transaction are time barred.[15]

3 **VI.    CONCLUSION**

4    For the reasons stated herein, the Court should dismiss Counts One through Three of the FAC

5 against the Sortwells with prejudice.

7    DATED: October 11, 2023

8                                                   */s/ Stephen P. Wilkes*
                                                    STEPHEN P. WILKES (SBN 268637)
9                                                   **THE WAGNER LAW GROUP, P.C.**
                                                    315 Montgomery Street, Suite 900
10                                                  San Francisco, CA 94104
                                                    Phone: 415-625-0002
11                                                  Fax: 415-358-8300
12                                                  Email: swilkes@wagnerlawgroup.com

14                                                  THOMAS E. CLARK, JR. (admitted *pro hac vice*)
                                                    125 High Street, Oliver Street Tower, 5th Floor
15                                                  Boston, MA 02110
                                                    Phone: 314-236-0065
16                                                  Fax: 314-236-5743
                                                    Email: tclark@wagnerlawgroup.com
17
18                                                  LEE T. POLK (admitted *pro hac vice*)
                                                    150 S. Wacker Drive, Suite 2400
19                                                  Chicago, IL 60603
                                                    Phone: 312-925-6070
20                                                  Fax: 847-557-1312
                                                    Email: lpolk@wagnerlawgroup.com
21
22                                                  ***Attorney For Defendants***
                                                    Alvin F. Sortwell and Anne B. Sortwell as
23                                                  Co-Trustees of the A.A. Sortwell Family Trust

---

[15] Plaintiff SavATree's knowledge of the 2017 Transaction is irrelevant given that they do not meet any of the parties with statutory standing to bring claims under 29 U.S.C. § 1132(a). *See* Dkt. 45 at ¶ 16; cf 29 U.S.C. § 1132(a) (listing the Secretary of Labor, a fiduciary, a participant, or a beneficiary as the only parties with standing).

25