1

**BROWN GEE & WENGER LLP**

2
David M. Marchiano (SBN 264809)
dmarchiano@bgwcounsel.com

3
Brandon V. Stracener (SBN 314032)
bstracener@bgwcounsel.com

4
200 Pringle Ave., Suite 400

5
Walnut Creek, CA 94596
Phone: 925-943-5000

6

*Remaining Counsel on the following page*

7

8
**UNITED STATES DISTRICT COURT**

9
**NORTHERN DISTRICT OF CALIFORNIA**

10
**OAKLAND DIVISION**

11

| | |
|---|---|
| ARBORWELL, LLC, a California limited liability company; CI QUERCUS CORPORATION, INC., a Delaware corporation, and SAVATREE, LLC, a Delaware limited liability company | Case No. 4:23-cv-02770-HSG |

12

13

14

                Plaintiffs,

15
vs.

16

ALERUS FINANCIAL, N.A., ANDREW G.

17
LAVELLE, an individual; NEIL WOOLNER, an individual; MATT DICKINSON, an

18
individual; KRIS YAMAGUCHI, an individual; DOUG HAGGE, an individual;

19
ARBOR MD TREE CARE INC., a California corporation; ALVIN F. SORTWELL and

20
ANNE B. SORTWELL as Co-Trustees of the A&A SORTWELL FAMILY TRUST; and

21
DOES 1through 10, inclusive,

22

                Defendants,

23
   and

24

ARBORWELL, INC. EMPLOYEE STOCK

25
OWNERSHIP PLAN,

26
                Nominal Defendant.

**DEFENDANTS MATT DICKINSON, KRIS YAMAGUCHI, DOUG HAGGE, AND ARBOR MD TREE CARE, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**[Request for Judicial Notice filed Concurrently Herewith]**

Hearing Date: December 14, 2023
Time:   2:00 P.M.
Place:  Courtroom 2, Oakland Courthouse
Judge: Hon. Haywood S. Gilliam, Jr.

27

28

---

MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT - CASE NO. 4:23-CV-02770-HSG

1

**BAKER BOTTS L.L.P.**
Christopher J. Rillo (SBN 112009)

2

Christopher.rillo@bakerbotts.com
Raerani Reddy (SBN 340475)

3

rani.reddy@bakerbotts.com
Christina A. Romak (SBN 341472)

4

christina.romak@bakerbotts.com
101 California Street, Suite 3600

5

San Francisco, CA 94111

6

Phone: 415-291-6200

7

*Attorneys for Defendants*

8

*Andrew G. LaVelle, Neil Woolner, Matt Dickinson, Kris Yamaguchi, Doug Hagge, and Arbor MD Tree Care, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### NOTICE OF MOTION AND MOTION

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on December 14, 2023, at 2:00 p.m., or as soon thereafter

4
as the matter may be heard, in the courtroom of the Honorable Haywood S. Gilliam, Jr., United

5
States District Judge, Northern District of California, located at 1301 Clay Street, Oakland,

6
California 94612, in Courtroom 2 – Fourth Floor, Defendants Matt Dickinson, Kris Yamaguchi,

7
Doug Hagge, and Arbor MD Tree Care, Inc. ("Defendants") will jointly and severally move to

8
dismiss with prejudice all of Plaintiffs CI Quercus Corporation, Inc.'s, Arborwell, LLC's, and

9
SavATree, LLC's causes of action against them (causes of action 9-10, 22-27, 29-30, and 32-33)

10
in the First Amended Complaint (Dkt. 45) under Federal Rules of Civil Procedure 12(b)(1) and

11
(6).[1]

12

Defendants' motion is based on this Notice of Motion, the Memorandum of Points and

13
Authorities in support thereof, Defendants Andrew G. LaVelle and Neil Woolner's Memorandum

14
of Points and Authorities in support of their Motion to Dismiss filed on the same date; all pleadings,

15
records and documents on file in this case, the accompanying request for judicial notice and exhibit

16
to it, the proposed orders filed herewith; any arguments the Court may accept at any hearing on

17
this motion, and such other further matters of which this Court may take judicial notice.

18

19
Dated: October 11, 2023

Respectfully submitted,

20
*/s/ David M. Marchiano*

David M. Marchiano (SBN 264809)

21
dmarchiano@bgwcounsel.com

**BROWN GEE & WENGER LLP**

22
200 Pringle Ave., Suite 400

Walnut Creek, CA 94596

23
Phone: 925-269-4132

24

25
*Attorneys for Defendants Andrew G. LaVelle, Neil Woolner, Matt Dickinson, Kris Yamaguchi, Doug Hagge, and Arbor MD Tree Care, Inc.*

26

27
---

[1] The First Amended Complaint does not include a 28th or 31st cause of action. Dkt 45.

28

i

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................. 1

II. ALLEGED FACTS......................................................................................... 3

    A. The Individual Defendants provided excellent customer service in the highly competitive treecare industry.......................................................... 3

    B. CI Quercus acquires Arborwell. .............................................................. 3

    C. Arborwell relies on standard industry knowledge. .................................. 4

    D. Arborwell freely shares site maps and other information with customers............. 5

    E. The Individual Defendants leave Arborwell for Arbor MD. .................... 5

    F. Customers reach out to Individual Defendants after their departure from Arborwell. .............................................................................................. 5

    G. Knowing that talented employees left the company, Plaintiffs concocted specious trade secret misappropriation claims....................................... 6

III. LEGAL STANDARD...................................................................................... 6

IV. ARGUMENT ................................................................................................. 7

    A. Plaintiffs fail to state a claim under the Defend Trade Secrets Act ("DTSA") because Plaintiffs fail to satisfy the interstate nexus prong. ................. 7

        1. Plaintiffs fail to describe with particularity their trade secret claims, and they seek protection for general knowhow that is common knowledge in the treecare industry. ............................. 9

        2. Plaintiffs freely shared their alleged trade secrets with customers with no confidentiality restraints. ........................................... 13

        3. There are no plausible facts establishing misappropriation..................... 14

    C. Causes of Action 22-25 are preempted by CUTSA, and any allegations not preempted fail to establish an unlawful act....................................... 16

        1. Plaintiffs' twenty-second cause of action fails to allege breach of fiduciary duty because there are no plausible facts to establish pre-termination solicitation. .................................................... 16

        2. Plaintiffs fail to plead intentional interference with contract under cause of action twenty-three. ................................................. 18

        3. Plaintiffs' twenty-fourth cause of action fails to plead intentional interference with prospective economic relations..................................... 19

ii

4.    Plaintiffs twenty-fifth cause of action fails to state a claim for violation of California's unfair competition law. .................................... 20

D.    COAs 26-27, 29-30, and 32-33 fail because the confidentiality provision does not require the employee to keep certain information confidential. ............. 22

E.    If the Court dismisses Plaintiffs' federal claims, it can decline jurisdiction of the pendent California claims. ......................................................................... 22

V.    CONCLUSION ............................................... **ERROR! BOOKMARK NOT DEFINED.**

iii

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

*Acorn Bay v. CamelBak Products, LLC*
   (N.D. Cal. 2020) 2020 WL 7664450 ......................................................................21

*Aetna Bldg. Maintenance Co. v. West,*
   39 Cal. 2d 198 (1952) ...........................................................................................17

*Agency Solutions.com, LLC v. TriZetto Grp., Inc.,*
   819 F. Supp. 2d 1001 (E.D. Cal. 2011)...................................................................9

*Am. Credit Indem. Co. v. Sacks*
   (1989) 213 Cal.App 3d 622 ..................................................................................17

*American Title Ins. Co. v. Lacelaw Corp.,*
   861 F.2d 224 (9th Cir.1988) ...................................................................................4

*AMN Healthcare Inc. v. Aya Healthcare Servs., Inc.,*
   28 Cal.App.5th 923 (2018) ....................................................................................11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).............................................................................................6, 7

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)................................................................................................6

*Benihana of Tokoyo, Inc. v. Benihana, Inc.,*
   828 F. Supp. 2d 720 (D. Del. 2011).......................................................................22

*Berryman v. Merit Prop. Mgmt., Inc.,*
   152 Cal.App.4th 1544 (2007) ................................................................................17

*Brescia v. Angelin*
   172 Cal.App.4th 133 (2009) .............................................................................13, 16

*Brown v. Allstate Ins. Co.*
   (S.D. Cal. 1980 17 F. Supp. 2d 1134, 1140 ..........................................................20

*Bryan v. Mattel, Inc.*
   2010 WL 1143864 (C.D. Cal. 2010).......................................................................17

*Calendar Rsch. LLC v. StubHub, Inc.,*
   2017 WL 10378336 (C.D. Cal. 2017).......................................................................9

iv

*Castillo v. Barrera*
    (2007) 146 Cal.App.4th 1317 .................................................................................................4

*Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*
    (1999) 20 Cal.4th 163 ...............................................................................................20, 21

*CI Quercus Corporation, Inc., et al. v. Neil Woolner, et al.*,
    Alameda County Superior Court, Case No. RG21104479 .............................. 2, i, 1

*CleanFish, LLC v. Sims*,
    2020 WL 1274991 (N.D. Cal. 2020) ..............................................................11, 15

*Conrad v. SavATree, LLC*
    and related counterclaim, Case No. 1:22-cv-01653; Doc. 10, Filed: 05/06/22 (N.D. Ill.
    2022) ...........................................................................................................................2

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
    479 F.3d 1099 (9th Cir. 2007) .........................................................................19

*Diodes, Inc. v. Franzen*,
    260 Cal.App.2d 244 (1968) .............................................................................13

*DLMC, Inc. v. Flores*,
    2019 WL 309754 (D. Haw. 2019) .....................................................................7

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ...........................................................................14

*Gamble v. GMAC Mortg. Corp.*,
    2009 WL 400359 (N.D. Cal. 2009) ("Where an exhibit to a pleading is inconsistent with the
    pleading, the exhibit controls.")....................................................................22

*Genasys Inc. v. Vector Acoustics, LLC*
    (S.D. Cal. 2022) 638 F.Supp.3d 1135................................................................9

*Gov't Employees Ins. Co., v. Nealey*,
    262 F.Supp.3d 153 (E.D. Pa. 2017) ...................................................................7

*Green Valley Landowners Ass'n v. City of Vallejo*,
    241 Cal.App.4th 425 (2015) ...........................................................................22

*Hydrogen Master Rights, Ltd. v. Weston*,
    228 F.Supp.3d 320 (D. Del. 2017)......................................................................7

*In re Providian Credit Card Cases*
    (2002) 96 Cal.App.4th 292 .........................................................................12, 13

v

*Ingrid & Isabel, LLC v. Baby Be Mine, LLC*,
  70 F. Supp. 3d 1105 (N.D. Cal. 2014) ................................................................20

*Ixchel Pharma, LLC v. Biogen, Inc.*
  (2020) 9 Cal.5th 1130 ........................................................................................18

*Lakeland Tours, LLC v. Bauman*
  (S.D. Cal. 2014) 2014 WL 12570970 ................................................................17

*Livewirecyber, Inc. v. Lee*,
  2017 WL 4786087 (C.D. Cal. 2017) ....................................................................7

*Mattel, Inc. v. MGA Entm't, Inc.*
  (C.D. Cal. 2011) 782 F. Supp. 2d 911 ................................................................18

*McKell v. Wash. Mut., Inc.*
  142 Cal.App.4th 1457 (2006) ............................................................................21

*Navigation Holdings, LLC v. Molavi*,
  445 F. Supp. 3d 69 (N.D. Cal. 2020) ....................................................................9

*Physician's Surrogacy, Inc. v. German*,
  2018 WL 638229 (S.D. Cal. Jan. 31, 2018) ........................................................14

*Pollara v. Radiant Logistics Inc.*
  (C.D. Cal., Aug. 5, 2014) 2014 WL 12584445, *aff'd* (9th Cir. 2016) 650 Fed.Appx. 372 .....12

*Puentes v. Wells Fargo Home Mortgage, Inc.*
  (2008) 160 Cal.App.4th 638 ..............................................................................21

*Ret. Grp. v. Galante*
  (2009) 176 Cal.App.4th 1226 ............................................................................15

*Robert Half Intern., Inc. v. Ainsworth*
  (S.D. Cal. 2014) 68 F.Supp.3d 1178 ..................................................................19

*SavATree, LLC v. Shawnee Mission Tree Service, Inc.*
  Case No. 3:22-cv-02052-K, Doc. 14 ....................................................................2

*Scott v. Snelling and Snelling, Inc.*
  (N.D.Cal.1990) 732 F.Supp. 1034 ......................................................................11

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  622 F.3d 1035 (9th Cir. 2010) ............................................................................21

*Soil Retention Products, Inc. v. Brentwood Industries, Inc.*,
  2021 WL 689914 (S.D. Cal. 2021) ................................................................13, 16

vi

*Song v. Drenberg*
  (N.D. Cal. 2019) 2019 WL 1998944 .......................................................................20

*Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.,*
  138 Cal.App.4th 1215 (2006) ...............................................................................21

*SunPower Corp. v. SolarCity Corp.*
  (N.D. Cal. 2012) 2012 WL 6160472 .....................................................................19

*Techno Lite, Inc. v. Emcod, LLC*
  (2020) 44 Cal.App.5th 462 ...................................................................................17

*Van Hook v. Curry,*
  2009 WL 773361 (N.D. Cal. 2009) .......................................................................22

*Vendavo, Inc. v. Price*
  *f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. 2018).................................................9

*Veronica Foods Co. v. Ecklin*,
  2017 WL 2806706 (N.D. Cal. June 29, 2017) .......................................................14

*Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.*
  (C.D. Cal. 2001) 178 F.Supp.2d 1099 ..............................................................21, 22

*Weintraub Fin. Servs., Inc. v. Boeing Co*.
  (C.D. Cal. 2020) 2020 WL 6162801.......................................................................20

*Whiteslate, LLP v. Dahlin*
  2021 WL 2826088 (S.D. Cal. 2021).................................................................18, 19

*Whyte v. Schalage Lock Co*.
  (2002) 101 Cal.App.4th 1443 ......................................................................12, 14, 16

*Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.,*
  2021 WL 4895977 (S.D. Cal. 2021) ........................................................................9

**STATUTES**

18 U.S.C. § 1836(b)(1) .................................................................................................7

18 U.S.C. § 1839(5) ...................................................................................................14

28 U.S.C. § 1367(c) ...................................................................................................23

Cal. Civ. Code § 3426.1(b) ........................................................................................14

Cal. Civ. Code § 3426.1(d) ..................................................................................10, 14

vii

**OTHER AUTHORITIES**

*Alta Devices, Inc.*, 343 F. Supp. 3d at 877 ..................................................................................14

*InteliClear*, 978 F.3d at 657 .............................................................................................................9

*K.C. Multimedia, Inc.*, 171 Cal.App.4th at 956-59, 962 ............................................................18

viii

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This lawsuit is a continuation of Plaintiffs' two-year vengeance campaign in state court. In July 2021, CI Quercus Corporation, Inc. ("CI Quercus"), Arborwell, LLC ("Arborwell"), and SavATree, LLC ("SavATree") (collectively, "Plaintiffs") sought revenge after five employees of Arborwell, Inc. left the tree service company for a small competitor.  Plaintiffs expanded a discrete noncompete dispute with a former employee (Neil Woolner) by suing Woolner and four other former employees and their new employer in Alameda County Superior Court (the "State Court Action").[2] Any suit should have been limited to claims between CI Quercus, on the one hand, and Neil Woolner and another former employee (Andy LaVelle) on the other, about the enforceability of a noncompete agreement.

But California law is clear: noncompete agreements are generally unenforceable. And employees may freely move companies and compete with their former employers, even for the same customers, as long as trade secrets are not used. Because Plaintiffs knew their noncompete claims were unlikely to succeed in California state court, they concocted trade-secret claims based on information that is public as an alternative, devious way to stop Defendants from competing.

Plaintiffs knew that the trade-secret claims were specious, but they filed the claims in the State Court Action anyway to harass Defendants, increase their costs, and thwart competition— objectives contrary to California law and public policy. After failing at every turn, Plaintiffs abandoned the State Court Action in July 2023. Plaintiffs first dismissed their non-compete claims instead of opposing a summary adjudication motion. They dismissed their remaining claims about two months later instead of testing their evidence at trial.

Plaintiffs dismissed their claims piecemeal to avoid adverse determinations on the merits only to revive the same claims here in federal court by tacking on an outlandish Employee Retirement Income Security Act of 1974 ("ERISA") theory they had known about for over 18

---

[2] *CI Quercus Corporation, Inc., et al. v. Neil Woolner, et al.*, Alameda County Superior Court, Case No. RG21104479 (Hon. Tara DeSautels), Request for Judicial Notice ("RJN") Ex. A ("State FAC").

months.[3] Instead of filing in federal court in 2021, Plaintiffs heavily litigated the dispute in state court for two years to drain Defendants' resources as much as possible before dismissing their claims and refiling the same claims in federal court. Plaintiffs perfectly timed the filing of the state and federal actions to inflict maximum financial pain on Defendants. The Court should not bless this blatant and egregious abuse of process.

Plaintiffs' amended federal complaint is a clone of their earlier state court complaint. The only material difference is they added claims under ERISA and the Defend Trade Secrets Act ("DTSA"). Here, as in state court, the point of this lawsuit is not to win, but to make it as costly and burdensome as possible so Defendants will surrender or go bankrupt. Plaintiffs have used the same playbook in other courts across the country to pursue their anti-competitive agenda of stopping former employees from moving to a competitor.[4]

Plaintiffs had more than two years to uncover evidence of misappropriation or improper solicitation through discovery in the State Court Action and their own forensic investigation; that they are still pleading alleged trade secret theft on "information and belief" is absurd.[5] Plaintiffs' litigation violates California public policy. It has and will continue to have a chilling effect on employee mobility. The Court should grant this motion and dismiss all of Plaintiffs' claims against Defendants Matt Dickinson, Kris Yamaguchi, Doug Hagge, and Arbor MD Tree Care, Inc. in the First Amended Complaint (Dkt. No. 45) ("FAC") with prejudice. Alternatively, once and when the Court dismisses the ERISA and DTSA claims with prejudice, the Court can dismiss the remaining 29 pendent state law claims without prejudice for lack of jurisdiction.

---

[3] Dkt. 1 (Complaint) at 21, ¶ 65 (acknowledging that Plaintiffs determined the ERISA issue as early as November 2021 in the course of briefing the issue for a demurrer opposition).

[4] *See, e.g.*, *SavATree, LLC v. Shawnee Mission Tree Service, Inc.* Case No. 3:22-cv-02052-K, Doc. 14, Filed 10/21/22 (N.D. Tex. 2022); *Conrad v. SavATree, LLC* and related counterclaim, Case No. 1:22-cv-01653; Doc. 10, Filed: 05/06/22 (N.D. Ill. 2022).

[5] FAC ¶¶ 114-17, 119, 120, 121, 124, 125, 128, 129, 130, 132-133, 137-139, 143, 146-147, 151, 154, 219, 232, 319.

## II.    ALLEGED FACTS

### A.    The Individual Defendants provided excellent customer service in the highly competitive treecare industry.

The treecare industry is a "highly competitive market" in which competing companies, as part of "general pricing practice in the tree care industry," provide "a fixed quote for the scope of the contracted services," estimating "the required labor hours at fixed labor rates" that are based on the geographic region. FAC ¶¶ 84, 109, 118. This quote accounts for "overhead, labor, equipment, and materials cost." *Id.* ¶ 84. These bids are subject to the customers' "price sensitivity," "local competition," a client's "industry," and "service volume," all of which can affect how a treecare company bids for a customer to win its business. *Id.* ¶ 85. As Plaintiffs themselves acknowledge, "Many customers do not have 'evergreen' contracts with Arborwell and instead enter into a contract each time they need service"—assuming Arborwell has the winning bid for service. *Id.* ¶ 146.

Defendants Neil Woolner, Andrew LaVelle, Matt Dickinson, Doug Hagge, and Kris Yamaguchi (the "Individual Defendants") were "instrumental" in Arborwell's success during their tenure there, including in "bidding for large, institutional clients" and "expanding Arborwell's business into new markets." *Id.* ¶ 109; *see id.* ¶¶ 95, 98, 102, 104, 106 (joining Arborwell from 2001 through 2011). The Individual Defendants' excellent customer services assisted Arborwell in "cultivating long-term, mutually beneficial relationships with customers . . . ." *Id.* ¶ 33. For example, in 2020, Dickinson "individually generated approximately 6% of Arborwell's sales." *Id.* ¶ 102. Yamaguchi generated 7% of Arborwell's sales, and Hagge generated 10% of Arborwell's sales during that same year. *Id.* ¶¶ 104, 106. Woolner "was the highest grossing sales executive" throughout "most of his career at Arborwell." *Id.* ¶ 108.

### B.    CI Quercus acquires Arborwell.

In December 2020, CI Quercus, a holding company for tree care businesses, acquired Arborwell, Inc., a tree care company based in Hayward, California. *Id.* ¶ 20. Arborwell, Inc. required two key employees, Defendants Neil Woolner and Andy LaVelle, to sign covenants not

1    to compete as part of the acquisition, even though neither was an owner.[6] FAC Ex. A at 7 (Woolner

2    and LaVelle not identified as "Seller").

3         **C.    Arborwell relies on standard industry knowledge.**

4         Plaintiffs rely on several terms in their FAC that are standard industry terms, including

5    "General Tree Care" or "GTC" and Plant Health Care or "PHC." *Compare* FAC ¶¶ 66-67, 73-80,

6    *with* Request for Judicial Notice ("RJN") Ex. A ("State FAC") ¶¶ 36-43 (alleging that GTC and

7    PHC are each "an industry term").[7] Plaintiffs do not identify anything unique about Arborwell's

8    GTC and PHC. FAC ¶¶ 73-80. Although Plaintiffs mention fertilizer, fungicide and pesticide

9    blends, Plaintiffs do not identify any ingredients in any such product or the process of creating

10   such a blend. *Id.* ¶¶ 76, 77.

11        Arborwell, like many businesses, maintains "information related to its existing and

12   prospective customers," including "contacts,' "sales history, estimates, job orders and invoices,"

13   and customer "preferences"—broad categories of information that would be applicable to any

14   business operating in the tree care industry. *See* FAC ¶ 82; *see also* RJN Ex. A ¶ 45. As part of

15   Arborwell's service, it provides quotes "based on an estimate of the required labor hours at fixed

16   labor rates that are specific to geographic region." FAC ¶ 84; RJN Ex. A ¶ 48 (verbatim

17   allegations).

18

19

20

21   _____

22   [6] CI Quercus converted Arborwell, Inc. to Arborwell, LLC after the sale. *Id.* ¶ 20. Arborwell, LLC
     is owned by SavATree, LLC, a national tree-care company in New York. *Id.* ¶¶ 20, 21.

23   [7] Plaintiffs' allegations in their First Amended Complaint in the State Court Action and in their
     original Complaint in this action constitute judicial admissions. *American Title Ins. Co. v. Lacelaw*
24   *Corp.,* 861 F.2d 224, 226 (9th Cir.1988) ("Judicial admissions are formal admissions in the
     pleadings which have the effect of withdrawing a fact from issue and dispensing with the need for
25   proof of the fact.") (quotation omitted). *See also Castillo v. Barrera* (2007) 146 Cal.App.4th 1317,
     1324 ("[A] pleader cannot blow hot and cold as to the facts positively stated.") (citation omitted).
26   Plaintiffs' removal of these previous, sworn allegations is notable when much of the two
     complaints is recycled verbatim. *Compare, e.g.*, FAC ¶ 74-75, 77-78, 84, *with* RJN Ex. A ¶ 37-38,
27   40-41, 48.

28                                                                                              4

**D.      Arborwell freely shares site maps and other information with customers.**

Although Plaintiffs allege certain security measures and restricted access to information such as GTC, PHC, watering plans, customer information, and site maps, Plaintiffs admit that customers have access to Site Maps, which themselves purportedly include PHC Plans, Watering Plans, and GTC Information. FAC ¶¶ 67, 69-71, 88. "Pricing Information" is set forth "in estimates, sales orders and purchase orders" sent to customers. *Id.* ¶ 83, 109, 118. Plaintiffs do not allege that their customers are unable—contractually or otherwise—to provide this information to other potential competitors in the industry. Customers may "request a PHC Plan" that Plaintiffs develop for customers in consultation with the client and account manager. *Id.* ¶ 42. Nor do Plaintiffs allege that any bids, pricing agreements, or other customer information are subject to an agreement with that customer to keep that information confidential. *See id.* ¶¶ 45-49.

**E.      The Individual Defendants leave Arborwell for Arbor MD.**

A few months into the transition after Arborwell's acquisition, several employees, including the Individual Defendants, left the company to pursue employment at Arbor MD Tree Care, Inc. ("Arbor MD"). FAC ¶¶ 122-127, 110. The Individual Defendants resigned on different dates from April through June 2021 without coordinating with each other. *Id.* ¶ 129. In June 2021, after resigning, Woolner, LaVelle, and Dickinson purchased a small, existing tree care company, Arbor MD. *Id.* ¶ 115. Yamaguchi and Hagge joined about a month later. *Id.* ¶¶ 125, 126, 129.

**F.      Customers reach out to Individual Defendants after their departure from Arborwell.**

After the Individual Defendants left, customers contacted them on their own volition based on their appreciation of the decades of excellent customer service they received from the Individual Defendants. Plaintiffs mischaracterize emails sent to Woolner's Arborwell email account nearly two weeks after Woolner departed Arborwell. FAC ¶ 138. The email's statement that "nothing else changes" indicates that at that moment, Apple was intending to continue its existing contracts with both Arborwell and Arbor MD. An email from Apple the day after Woolner left Arborwell reflects little more than Apple wanting information about a company with which it was already

5

1   working (Arbor MD). *See id.* ¶ 116. Over two weeks later—nearly a month after Woolner left

2   Arborwell—Apple, apparently having been more satisfied with Arbor MD's tree pruning than

3   Arborwell's work at the same site, was interested in hiring Arbor MD for more work. *Id.* ¶ 138.

4   As Arborwell itself concedes, "[m]any customers do not have 'evergreen' contracts with

5   Arborwell and instead enter into a contract each time they need service, . . ." FAC ¶ 146.

6          Plaintiffs refer to other occurrences such as meetings that took place after an employee left

7   the company. *See* FAC ¶ 117. But Plaintiffs alleged no purported loss of business tied to such a

8   meeting or tied to Common Interest Management Services. Plaintiffs offer only conclusory

9   allegations without any supporting facts showing misuse of trade secrets to acquire another

10  customer's account. *Id.* ¶ 137.

11         **G.    Knowing that talented employees left the company, Plaintiffs concocted**
12                 **specious trade secret misappropriation claims.**

13         Arborwell lost customers and employees to different companies after the acquisition. *Id.*

14  ¶ 147. Arborwell and its parents, CI Quercus and SavATree, shifted blame to others, especially

15  Woolner and LaVelle. Arborwell has claimed it lost business primarily because Woolner and

16  LaVelle breached non-compete agreements with CI Quercus when they went to work for Arbor

17  MD. *See* FAC ¶¶ 2, 8-9, 11, 18, 57-65. But when Plaintiffs realized they could not enforce the

18  non-compete agreements under California law, Plaintiffs sought to bankrupt Defendants through

19  this action and the related State Court Action. Plaintiffs asserted 31 causes of action against

20  Defendants, including claiming without evidence that the Defendants misappropriated several

21  alleged trade secrets. FAC ¶¶ 66-85.

22  **III.    LEGAL STANDARD**

23         "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

24  accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

25  662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative

26  level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), which requires alleging "more than

27  a sheer possibility that a defendant has acted unlawfully" or "facts that are merely consistent with

28                                                                                                              6

1    a defendant's liability." *Iqbal*, 556 U.S. at 678.

2    **IV.   ARGUMENT**

3        **A.    Plaintiffs fail to state a claim under the Defend Trade Secrets Act ("DTSA")**
             **because Plaintiffs fail to satisfy the interstate nexus prong.**
4

5            An owner of a trade secret that is misappropriated can bring a claim under the DTSA only

6    "if the trade secret is related to a product or service used in, or intended for use in, interstate or

7    foreign commerce." 18 U.S.C. § 1836(b)(1); *Livewirecyber, Inc. v. Lee*, 2017 WL 4786087, at *5

8    (C.D. Cal. 2017). A cause of action ("COA") under the DTSA that fails to allege the connection

9    between interstate commerce and the alleged trade secrets is subject to dismissal. *See e.g.*, *DLMC,*

10   *Inc. v. Flores*, 2019 WL 309754, at *1 (D. Haw. 2019) (granting motion to dismiss where

11   complaint failed to allege facts to support the existence of a protected trade secret in interstate

12   commerce under the DTSA). *See also Gov't Employees Ins. Co., v. Nealey*, 262 F.Supp.3d 153,

13   172 (E.D. Pa. 2017) (stating that plaintiff's complaint which did not allege any nexus between

14   interstate or foreign commerce and the alleged trade secrets alone warrants dismissal of plaintiff's

15   DTSA claim); *Hydrogen Master Rights, Ltd. v. Weston*, 228 F.Supp.3d 320, 338 (D. Del. 2017)

16   (dismissing a DTSA claim for failure to allege any nexus between interstate or foreign commerce

17   and the alleged trade secrets).

18           Here, as in these cases, the FAC does not allege a connection between interstate or foreign

19   commerce and the alleged trade secrets. All of Plaintiffs' purported trade secrets relate to providing

20   treecare to customers with properties in the Bay Area or Northern California, none of which

21   involves interstate or foreign commerce as required to state a claim under DTSA..

22           For example, Plaintiffs allege, "Plaintiff Arborwell, LLC is a California limited liability

23   company with its principal place of business in Hayward, California." FAC ¶ 20. Arborwell, LLC

24   is the successor-in-interest to Arborwell, Inc., which was a California corporation formed in 2001.

25   *Id.* ¶¶ 20, 33. Plaintiffs allege that Arborwell's arborists use the alleged trade secrets in California

26   only: "Arborwell's arborists have access to field data from Arborwell's numerous sites and

27   microclimates throughout the *Bay Area and elsewhere in California*, allowing for testing in diverse

28                                                                                                      7

1   environments." *Id*. ¶ 78 (italics added).

2       All the customers that Defendants allegedly used trade secrets to solicit are located in the

3   Bay Area or California. *See, e.g.*, FAC ¶ 112 ("Arborwell's biggest customers like Equity

4   Residential have many properties throughout the Bay Area); ¶ 115 (providing tree services to

5   Apple's "Spaceship" campus in Cupertino, California): ¶ 131 (listing over 30 Arborwell customers

6   and properties in the Bay Area): ¶ 135 (Equity Residential, a large operator of apartment

7   complexes in the Bay Area): ¶ 140 (listing apartment buildings at nine locations, all in California);

8   ¶ 143 (providing tree services to CBRE "one of Arborwell's largest and longstanding customers"

9   at "CBRE's corporate center in Mountain View, California): ¶ 145 (emailing about tree removal

10  with customers in Los Gatos and San Jose).

11      The FAC also alleges that the Individual Defendants live and work in California. FAC ¶ 25

12  (LaVelle: Orinda, California); ¶ 26 (Woolner: San Jose, California); ¶ 27 (Dickinson: Boulder

13  Creek, California); ¶ 28 (Yamaguchi: Manteca, California); ¶ 29 (Hagge: Concord, California).

14  Yamaguchi was Regional Vice President for the South Bay Region for Arborwell. FAC ¶ 28.

15  Dickinson and Hagge worked in the Oakland and East Bay regions for Arborwell. *Id*. ¶¶ 27, 29,

16  102, 106. Defendant Arbor MD's office is also in San Jose, California. *Id.* ¶ 30. The "other low-

17  level" employees who allegedly moved from Arborwell to Arbor MD because of access to trade

18  secrets are also in California. *Id*. ¶ 147.

19      Additionally, the noncompete bans competition by Woolner and LaVelle and protects trade

20  secrets "within the California counties in which Arborwell does business." *Id*. ¶ 58, Ex. A (Dkt.

21  45-1) at 36, § 5.1(a). In sum, the FAC alleges that Arborwell's trade secrets were used only in

22  California, the persons who allegedly misused the trade secrets all live and work in California, and

23  the customers and employees of Arborwell who were allegedly unlawfully solicited are all in

24  California. Plaintiffs failed to satisfy the interstate commerce prong of the DTSA claim.

25

26

27

28                                                            8

**B.    Plaintiffs fail to state a trade secret misappropriation claim under either the DTSA or the CUTSA.**

"To state a claim for trade secret misappropriation under the DTSA and the CUTSA, a plaintiff must allege that: '(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff.'" *Genasys Inc. v. Vector Acoustics, LLC (*S.D. Cal. 2022) 638 F.Supp.3d 1135, 1150 (internal citations omitted).

A "trade secret" is defined extremely similarly under the DTSA and CUTSA. *Id.*; *see Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc*., 2021 WL 4895977, at *20 (S.D. Cal. 2021). Under both the DTSA or CUTSA, "the definition of trade secret consists of three elements: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *InteliClear*, 978 F.3d at 657. "[I]nsight, knowledge[,] and know-how acquired by an insider to a particular trade does, in and of itself, constitute trade secrets." *Calendar Rsch. LLC v. StubHub, Inc*., 2017 WL 10378336, at *2 (C.D. Cal. 2017) (quoting *Agency Solutions.com, LLC v. TriZetto Grp., Inc*., 819 F. Supp. 2d 1001, 1019 (E.D. Cal. 2011)).

**1.    Plaintiffs fail to describe with particularity their trade secret claims, and they seek protection for general knowhow that is common knowledge in the treecare industry.**

To allege a trade secret, a plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 75 (N.D. Cal. 2020) (quoting *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. 2018)).

Here, Plaintiffs identify several broad categories of alleged "compilations" as trade secrets, *see* FAC ¶¶ 67, 73, 76, 79, 81-84, as well as industry-standard information known throughout the tree care industry, including commonly used methods of caring for trees. Plaintiffs fail to identify with particularity the specific information or combinations within these broad categories that are subject to protection under either the DTSA or CUTSA.

For example, Plaintiffs allege that industry-standard knowledge—like how to care for a

9

certain tree (care known as General Tree Care or "GTC")—qualifies as a trade secret. [8] *See* FAC ¶ 74. Plaintiffs refer vaguely to a "compilation" of trade secrets that were nothing more than the information contained in their customer estimates, work orders, or invoices such as the customer's name and contact information, the number and types of trees to service, the type of service (removal, trim, etc.), the cost of the services, and sometimes, an accompanying Google map of the customer's property showing the number, type, size, and location of trees to service. *See, e.g.*, *id.* ¶ 67, 73. Plaintiffs fail to describe this information with sufficient particularity to separate it from matters of general knowledge in the industry. As Plaintiffs acknowledge, account managers and arborists in the tree care industry "necessarily acquire broad knowledge of PHC Information from their consultations with PHC experts and from reviewing PHC Plans for their accounts." *Id.* ¶ 87.

Plaintiffs broadly identify "General Tree Care" or "GTC" Information as a trade secret category even though GTC Information is a commonly used industry term that could conceivably encompass every document within the possession of a tree care company. *Id.* ¶ 73; Section II.C., *supra*, n. 7 (GTC is an industry term). And Plaintiffs acknowledge that their asserted "strategy" for GTC Information considers such broad factors as a tree's species and size, a strategy facilitated by "continuing education" of "arborists." FAC ¶ 73. These allegations do not identify anything distinct from matters of general knowledge or special knowledge among arborists and account managers in the tree care industry. Similarly, Plaintiffs' identification of Plant Health Care, or "PHC" Information, also an industry term, references information about tree care that is common industry knowledge. *Id.* ¶ 76, Section II.C., *supra*, n. 7.

Plaintiffs' allegations of customer information are likewise deficient. A complaint that merely alleges trade secrets including "detailed customer lists, customer purchasing data, customer sales figures and other related customer purchasing analysis and trends," is not sufficiently

---

[8] Plaintiffs fail to allege how Plaintiffs' knowledge of seasonal pruning is distinct in any way from general tree care industry knowledge about pruning needs (or the ability for anyone to publicly observe the condition of trees on a site). *See* FAC ¶ 74. Thus, Plaintiffs have not alleged facts supporting a conclusion that their marketing based on knowledge of seasonal pruning reflects any economic value derived from any information that is "not being generally known." Cal. Civ. Code § 3426.1(d).

10

pleaded. *CleanFish, LLC v. Sims*, 2020 WL 1274991, at *9 (N.D. Cal. 2020). Such a description of purported trade secrets are "indistinguishable from matters of general knowledge within the parties' industry"—here, the tree care industry. *Id.*

Here, as in *CleanFish*, Plaintiffs' identification of its current and potential customers, including "contacts," "sales history," and customer needs and preferences are merely "broad categories of information that would be applicable to any business" operating in the tree care industry. *See id.*; FAC ¶ 82. These broad allegations are "too high-level to give the Court or Defendants notice of the boundaries of any alleged trade secret, and do not separate the allegations from general knowledge within the industry." *CleanFish*, 2020 WL 1274991, at *10.

Identities of customers who seek tree care are not secret and the information about these customers is general in nature and readily ascertainable.[9] In *AMN Healthcare Inc. v. Aya Healthcare Servs., Inc*., the court held that the identities of plaintiff's customers and contact information were not secret where the information was already known to the defendant, was very general in nature, was readily ascertainable on social media and by word of mouth, and was acquired by individual defendants through direct, professional, or personal relationships without the use of proprietary databases. 28 Cal.App.5th 923, 943-45 (2018). So too here.

An arborist or account manager can readily find general information about potential customers who need tree care on social media (LinkedIn), by word of mouth, and on Google Maps or by physically visiting the commercial properties. Moreover, the information about contacts within each customer's organization, *see* FAC ¶ 82, changes frequently since many of these contacts move to new companies or different positions within the same organization, so the information is not valuable. One can readily ascertain a particular person's current employer and position or an organization's current decision maker on social media, online, or by word of mouth. And as in *AMN*, Defendants acquired contact information through direct, professional, or personal

---

[9] "California courts have repeatedly held that a customer list does not constitute a trade secret for the purposes of enforcing a covenant restraining competition . . . ." *Scott v. Snelling and Snelling, Inc.* (N.D.Cal.1990) 732 F.Supp. 1034, 1044-45.

11

relationships. Plaintiffs admit in their own allegations the relevance of Defendants' longstanding relationships with customers. *See, e.g.*, FAC ¶ 108-112.

Because customers can be determined with such ease, it is the personal and professional relationships with people that earn the business, which Plaintiffs concede in alleging Defendant's strong contributions to the growth of Arborwell. *Id*. Customer relationships are not protected by CUTSA. *Pollara v. Radiant Logistics Inc.* (C.D. Cal., Aug. 5, 2014) 2014 WL 12584445, at *2, *aff'd* (9th Cir. 2016) 650 Fed.Appx. 372.

Arborwell's pricing information is not a trade secret, either, because it uses commonly used methods for pricing that are generally known in the industry and can be replicated using an individual's general knowledge, skills, and experience in the industry. Pricing and bidding methods that are only general methods of doing business, and commonly used formulas for setting prices, are not trade secrets. *Whyte v. Schalage Lock Co*. (2002) 101 Cal.App.4th 1443, 1452-56; *In re Providian Credit Card Cases* (2002) 96 Cal.App.4th 292, 308-09 (explaining that general business "know-how" does not constitute trade secrets). Plaintiffs fail to allege how their price and bidding methods depart from any of the general methods of doing business and how their pricing information does not involve commonly used formulas for setting prices, *e.g*., labor for how much to water a particular tree based on size and species, labor and equipment costs for how and when to prune a particular tree based on size and species, and so on. *See* FAC ¶ 84 (noting quotes provided "based on an estimate of the required labor hours at fixed labor rates that are specific to geographic region").

Nor are "watering plans," which are simply generic directions for watering a particular tree for clients, *see* FAC ¶ 81, reflective of any information that would not be widely known throughout the general treecare industry. Plaintiffs have failed to allege how the process for watering a tree is something beyond the ken of even specialized knowledge of those in the treecare industry.

Plaintiffs' site maps, which purportedly incorporate GTC information, PHC plan information, and watering plan information, FAC ¶ 67, do not contain trade secrets either. Indeed, Plaintiffs fail to allege that tree locations at a particular site, such as an office parking lot, are

12

somehow secrets not discernible to the naked eye or viewable on publicly available satellite maps (Google maps). *Id.* (noting that Site Maps set forth location of trees and plants in relation to buildings and roads, and onsite visits to identify tree species permit creation of the maps). None of the information contained within a Site Map, or within any of the other general categories identified by Plaintiffs, indicates anything more than the general or common knowledge of those working in the tree care industry.

Plaintiffs' allegation most closely approaching an alleged trade secret would be their vague allegation about some "blends" of a fertilizer, fungicide, or pesticide. *Id.* ¶ 77. But these "blends" are not identified by product or with any data concerning the process to create these alternative blends, thereby failing to give Defendants reasonable notice of what purported trade secret is at issue. *See Diodes, Inc. v. Franzen*, 260 Cal.App.2d 244, 253 (1968). Plaintiffs have not stated "the name of the product," much less "the end product manufactured," its components if asserted as trade secrets, or "the manufacturing process." *See Soil Retention Products, Inc. v. Brentwood Industries, Inc.*, 2021 WL 689914, at *22 (S.D. Cal. 2021); *compare* FAC ¶¶ 76, 77 (various "blends"), *with Brescia v. Angelin* 172 Cal.App.4th 133, 151 (2009) (describing "the details of" a pudding formula, "listing the 15 specific ingredients by common name and the percentage of the total pudding," listing those same ingredients "by their supplier and brand name," and "particularly describe[ing] each step in the mixing, testing, and code marking of the pudding"). Thus, even Plaintiffs' closest allegation to any possible trade secret falls short of the pleading requirements.

### 2. Plaintiffs freely shared their alleged trade secrets with customers with no confidentiality restraints.

Arborwell also fails to show that it made "reasonable" efforts to maintain the secrecy of its trade secret information. *In re Providian Credit Card Cases* 96 Cal.App.4th 292, 304 (2002) (noting in part that "making documents with warnings or reminders of confidentiality" can be part of reasonable efforts). Arborwell knew that its customers freely shared these "compilation" trade secrets by circulating its estimates to other treecare companies to obtain better bids with no confidentiality restraints. Plaintiffs admit that customers have access to Site Maps, which

13

themselves include customer information, pricing information, PHC plans, watering plans, and GTC information. FAC ¶¶ 73, 88. Arborwell fails to allege that its customers are barred from providing this information to other potential competitors in the industry. Nor are any estimates, job orders, invoices, pricing agreements, or other customer information alleged to be subject to a confidentiality agreement. *See id.* ¶¶ 82-85.[10] Plaintiffs' disclosure of their alleged trade secrets to customers undermines any claim of "reasonable efforts to maintain the secrecy" of the information. *Whyte v. Schlage Lock Co*., 101 Cal. App. 4th 1443, 1455 (2002) (concluding no reasonable efforts to maintain secrecy of information disclosed to customers).

### 3.    There are no plausible facts establishing misappropriation.

"Under both the DTSA and the CUTSA, 'misappropriation' means either (1) the [a]cquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means; or (2) the [d]isclosure or use of a trade secret of another without express or implied consent." *Alta Devices, Inc*., 343 F. Supp. 3d at 877 (citing 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b)) (internal quotation omitted). A plaintiff must allege facts that are not "'merely consistent with' both a theory of innocent market entry and the theory that Defendants used [Plaintiff's] confidential customer list, but rather 'tend[ ] to exclude' an innocent explanation." *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017) (holding that "mere fact" that competitor began selling products to stores previously supplied by plaintiff "is to be expected from a new [competitor] entering the market" and was insufficient to exclude "an innocent explanation.") (citing in part *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (holding "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent" with an innocuous explanation).[11]

---

[10]  Because Plaintiffs' own allegations reveal that their purported trade secrets are not secret, Plaintiffs cannot allege that this non-secret information "[d]erives independent economic value" from "not being generally known." Civ. Code § 3426.1(d).

[11]  *See also Physician's Surrogacy, Inc. v. German*, 2018 WL 638229, at *8 (S.D. Cal. Jan. 31, 2018) ("Plaintiff must more specifically connect allegations of misappropriation to specific Defendants' actions.") (citing *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *14 (N.D.

14

1       Because "it is appropriate for plaintiff to be required to allege facts that tend to exclude

2 general knowledge or innocuous (*i.e.*, competitive marketplace) explanations," Plaintiffs here must

3 allege actual facts that suggest something more than Arbor MD and its new employees competing

4 within the marketplace. *See CleanFish*, 2020 WL 1274991, at \*11; *Ret. Grp. v. Galante* (2009)

5 176 Cal.App.4th 1226, 1237 (explaining that under California law, "a former employee may use

6 general knowledge, skill, and experience acquired in his or her former employment in competition

7 with a former employer"). Here, Plaintiffs have failed to allege facts suggesting anything more

8 than former employees competing in the marketplace.

9       Tellingly, after filing the same claims in the State Court Action more than two years ago

10 and exchanging thousands of pages of written discovery including documents, Plaintiffs filed this

11 fourth iteration of a complaint *still* alleging trade secret misappropriation based on "information

12 and belief,"[12] FAC ¶¶ 114-17, 119-21, 124, 125, 128-29, 132-33, 137-39, 143, 146-47, 151, 154,

13 219, 232, 310, 319, 324. In particular, Plaintiffs fail to allege any improper use or retention of any

14 purported trade secrets or confidential information on any company-issued laptops, mobile phones,

15 or other mobile devices, including tablets—or retention of these devices themselves. *See, e.g.*,

16 FAC Ex. G, ¶ 3.4, ECF 45-7 at 3 (noting eligibility "for a Laptop and Smartphone"). Plaintiffs

17 concede that they "moved swiftly to terminate Woolner's access to" purported trade secrets and

18 confidential information, "as well as his email and cellphone accounts," but maintain, with no

19 supporting factual allegations, that "Arborwell is informed and believes, however, that Woolner

20 had by this point already misappropriated Arborwell's Trade Secrets and Confidential Information

21 for the purpose of soliciting Arborwell customers." FAC ¶ 124. These "conclusions of fact" are

22 insufficient to state a claim.[13]

23

24      Cal. June 29, 2017)).

25    [12] *See generally* RJN Ex. A.

26    [13] Despite having two years to uncover evidence of misappropriation in discovery in the State
27 Court Action, Plaintiffs continue to plead on "information and belief." That "Arborwell is
     informed and believes that the Individual Defendants misappropriated Arborwell's Trade Secrets
28 in print or electronically," FAC ¶ 219, is not supported by any plausible factual allegations—did

1   Plaintiffs' failure "to allege any non-conclusory facts" that Defendants used any alleged

2   trade secrets warrants dismissal of their claim. *See Soil Retention Products, Inc. v. Brentwood*

3   *Industries, Inc.* (S.D. Cal. 2021) 2021 WL 689914, at *23; *Brescia*, 172 Cal.App.4th at 151

4   (identifying formula by listing 15 specific ingredients by name, percentage, supplier, and brand

5   name and identifying each step in mixing, testing, and code marking). The plaintiffs' allegations

6   in *Soil Retention Products* that defendant "improperly used and/or disclosed [plaintiff's] trade

7   secrets" mirror the conclusory facts stated in the FAC here, which are insufficient to state a

8   claim. *Compare* 2021 WL 689914, at *23, *with* FAC ¶¶ 124, 128, 137-39.

9   **C.   Causes of Action 22-25 are preempted by CUTSA, and any allegations not preempted fail to establish an unlawful act.**

10

11   **1.   Plaintiffs' twenty-second cause of action fails to allege breach of fiduciary duty because there are no plausible facts to establish pre-termination solicitation.**

12

13   Plaintiffs allege six possible breaches by the Individual Defendants, FAC ¶ 310, but not

14   one shows any unlawful conduct. Plaintiffs have not properly alleged pre-termination solicitation

15   of employees or customers under the *Twombly/Iqbal* plausibility standard, merely stating

16   conclusions that solicitation must have occurred and that Defendants therefore breached their duty

17   of loyalty. *See* FAC ¶ 143 ("The Individual Defendants could not have solicited this work [from

18   CBRE] without misappropriating Arborwell's Trade Secrets and Confidential Information,

19   because they would not have known what prior work had been done and what follow-up work was

20   necessary.") *See also* FAC ¶¶ 116-121, 124, 129, 137-141.[14]

21   Plaintiffs allege that Arborwell customers sent e-mails to the Individual Defendants

22   relating to Arbor MD *after* those Defendants had left Arborwell. *See, e.g.*, FAC ¶¶ 116, 118. Such

23

24

---

25   Defendants copy files onto different storage accounts, or print trade secret documents in large
    quantities before departing from Arborwell? The FAC contains no such allegations.

26   [14] Plaintiffs allege that the Individual Defendants and Arbor MD could not have competed without
    using Arborwell's trade secrets. FAC ¶¶ 114. This argument is based on the "inevitable disclosure"

27   doctrine, which is not the law in California. *see*, *e.g*., *Whyte*, 101 Cal.App.4th at 1464.

28

16

MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT - CASE NO. 4:23-CV-02770-HSG

conduct alone does not establish any unlawful acts by Defendants,[15] and Defendants do not breach their duty of loyalty by accepting business where they "had been previously requested personally by note or by telephone to call and get [customers'] work." *Am. Credit Indem. Co. v. Sacks* (1989) 213 Cal.App 3d 622, 635 (citation omitted). The "willingness to discuss business upon invitation of another party" does not "constitute solicitation on the part of the invitee." *Aetna Bldg. Maintenance Co. v. West*, 39 Cal. 2d 198, 204 (1952).

Similarly, threadbare assertions that "Arborwell is informed and believes that Woolner solicited Urban Embellishment Design for Arbor MD while he was still employed by Arborwell," FAC ¶ 120, or that "Defendants solicited other customers and engaged in other improper preparations to compete," FAC ¶ 121, are "conclusions of fact or law" insufficient to state a claim. *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal.App.4th 1544, 1550 (2007).

Plaintiffs "ignored the distinction between action and planning" when accusing Individual Defendants of "preparing to compete" with Arborwell while still employed by Arborwell. FAC ¶ 310; *Bryan v. Mattel, Inc*. 2010 WL 1143864, at *12 (C.D. Cal. 2010). Thus, Plaintiffs' allegation that "Woolner and LaVelle were improperly preparing to buy and establish a competing commercial tree care business," FAC ¶ 114, is nothing more than a legal conclusion that fails to state a claim.[16] Further, Plaintiffs allege that the Individual Defendants failed to tell Arborwell that they were preparing to compete (FAC ¶ 310), but that omission is not actionable either.

CUTSA preempts Plaintiffs' breach of duty of loyalty claim. Where "claims for breach of duty of loyalty, interference with economic advantage, and unfair competition" all "involve the same nucleus of facts as the misappropriation claim," the misappropriation claim supersedes the others. *Lakeland Tours, LLC v. Bauman* (S.D. Cal. 2014) 2014 WL 12570970, at *8 (dismissing

---

[15] An employee can prepare to compete as long as the employee does not transfer their loyalty to the competitor. *Techno Lite, Inc. v. Emcod, LLC* (2020) 44 Cal.App.5th 462, 471.

[16] To justify repeating the same allegations with no actual support for their claims—including repeated allegations that "Arborwell is informed and believes that LaVelle and Woolner solicited Dickinson, Yamaguchi and Hagge" while LaVelle and Woolner were still employed at Arborwell (FAC ¶ 129)—Plaintiffs represented to this Court that the State Court Action was still "in the early stages of discovery" despite over two years of litigation. Complaint (Dkt. 1) at 21, ¶ 63.

cause of action for breach of duty of loyalty and other claims). In *K.C. Multimedia*, *supra*, the court found an alleged breach of a "duty of confidence as to confidential information accessed during the course and scope of [defendant's] employment . . . by disclosing trade secrets in connection with proprietary technology" to be superseded because "the conduct at the heart of this claim is the asserted disclosure of trade secrets . . . ." 171 Cal.App.4th at 960; *see also Mattel, Inc. v. MGA Entm't, Inc*. (C.D. Cal. 2011) 782 F. Supp. 2d 911, 987–88, 997 (CUTSA supersedes claims based on the misappropriation of confidential information, whether or not that information met statutory definition of trade secret).

Similarly, here, if the Court disregards the lawful pre-termination preparations to compete, the remaining conduct that forms the basis for the breach of fiduciary duty claim is based on Defendants allegedly using Arborwell's "Confidential Information" and "copying and retaining Confidential Information." See FAC ¶¶ 114-148, 310. CUTSA therefore supersedes the breach of fiduciary duty claim.

### 2. Plaintiffs fail to plead intentional interference with contract under cause of action twenty-three.

CUTSA also supersedes Plaintiffs' interference with contract claim. FAC ¶¶ 314-320. As Plaintiffs allege in the FAC, any purported interference with contracts with Arborwell's customers, including Apple and Equity Residential, *see* FAC ¶¶ 114, 318, 319, is based on Defendants allegedly using Arborwell's Trade Secrets and Confidential Information to solicit and service Arborwell's customers for Arbor MD. *See* FAC ¶¶ 114-148. CUTSA therefore supersedes this cause of action. *K.C. Multimedia, Inc.*, 171 Cal.App.4th at 956-59, 962; *Whiteslate, LLP v. Dahlin* 2021 WL 2826088, at \*10 (S.D. Cal. 2021) (dismissing intentional interference with contractual relations claim based on CUTSA preemption).

Even if CUTSA did not supersede this cause of action, Plaintiffs still fail to state a claim for intentional interference with contract. A plaintiff must allege that the defendant engaged in an independently wrongful act. *Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1148. Here, as explained in Section IV.C.1, Plaintiffs have not alleged any unlawful act that caused a

18

customer of Arborwell to terminate an existing contract. Plaintiffs acknowledge a pre-existing relationship between Apple and Arborwell's competitor Arbor MD, and Plaintiffs themselves concede that customers do not have "evergreen" contracts with them—customers remain free to consider competitors for new contracts. FAC ¶¶ 115, 146.

### 3. Plaintiffs' twenty-fourth cause of action fails to plead intentional interference with prospective economic relations.

Plaintiffs' cause of action for intentional interference with prospective economic advantage suffers from the same defects as their cause of action for intentional interference with contract. *See Whiteslate*, 2021 WL 2826088 at *11 (concluding that "the analysis" for intentional interference with prospective economic relationship mirrored the intentional interference with contractual relations claim where acts to disrupt the relationship were use of trade secrets and confidential business and proprietary information, dismissing the cause of action). CUTSA supersedes the intentional interference with prospective economic advantage cause of action because Plaintiffs base the claim on Defendants "using Arborwell's Confidential Information to solicit [Arborwell customers]." FAC ¶ 324; *SunPower Corp. v. SolarCity Corp.* (N.D. Cal. 2012) 2012 WL 6160472, at *1, 9-12 (CUTSA supersedes interference with prospective economic advantage claim and other claims). Plaintiffs vaguely refer to breaches of unidentified written contracts and their duty of loyalty (FAC ¶ 324), but those are deficiently pleaded. See Section IV.Plaintiffs cannot save this cause of action by alleging that it "is not based on the misappropriation of 'trade secrets' as defined under CUTSA." *Compare* FAC ¶ 322, *with Robert Half Intern., Inc. v. Ainsworth* (S.D. Cal. 2014) 68 F.Supp.3d 1178, 1191 (interference with prospective economic advantage claim superseded by CUTSA despite plaintiff not labeling "confidential information" as a trade secret).

Additionally, Plaintiffs failed "to allege an act that is wrongful independent of the interference itself." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007). "California courts have held that independently wrongful conduct includes actions which are independently actionable, violations of federal or state law or unethical business practices, e.g., violence, misrepresentation, unfounded litigation, defamation, trade libel or trade

19

mark infringement." *Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, 70 F. Supp. 3d 1105, 1120 (N.D. Cal. 2014) (internal quotations omitted). As explained above, there is no independently wrongful conduct to support this cause of action. *See* Section IV.C.1, *supra*.

Alleging the existence of an economic relationship requires alleging "a 'particular relationship or opportunity with which the defendant's conduct is alleged to have interfered' rather than vague allegations regarding a relationship with an 'as yet unidentified' customer." *Weintraub Fin. Servs., Inc. v. Boeing Co*. (C.D. Cal. 2020) 2020 WL 6162801 at *8. Courts have held that a tortious interference claim that rests on "a hope of future transactions" is insufficient to support a claim of tortious interference. *Brown v. Allstate Ins. Co.* (S.D. Cal. 1980 17 F. Supp. 2d 1134, 1140. "To show [such] an economic relationship, the cases generally agree that it must be reasonably probable the prospective economic advantage would have been realized but for defendant's interference." *Song v. Drenberg* (N.D. Cal. 2019) 2019 WL 1998944, at *7-8 (granting the defendant's motion to dismiss a tortious interference with prospective business relations claim because the court found the plaintiff's claim, which revolved around the plaintiff's loss of relationships with two third parties, was "not enough to state a claim for tortious interference with prospective business relationships").

Similarly here, Plaintiffs fail to allege facts to plausibly show it is reasonably probable that it would have obtained a future economic benefit but for Defendants' interference. Plaintiffs concede that Arbor MD had a preexisting contract with Apple and customers do not have evergreen contracts with Arborwell—customers remain free to consider competitors for new contracts, so it is not reasonably probable that Arborwell would have retained the business. FAC ¶¶ 115, 146.

### 4. Plaintiffs twenty-fifth cause of action fails to state a claim for violation of California's unfair competition law.

California's Unfair Competition Law (the UCL) prohibits three distinct types of practices: (1) unlawful; (2) unfair; or (3) fraudulent practices. *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.* (1999) 20 Cal.4th 163, 180. Plaintiffs fail to state a claim under any of these three prongs.

Plaintiffs fail to allege an unlawful prong claim because they fail to allege a violation of an

20

independent law. Even if there were a viable contract or tort claim, that would not be sufficient to state a UCL claim. *See Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1044 (9th Cir. 2010); *see also Puentes v. Wells Fargo Home Mortgage, Inc.* (2008) 160 Cal.App.4th 638, 645 (concluding that breach of contract claim alone "may not be a predicate for a UCL action as a matter of law"). Plaintiffs' breach of contract claims could not support an unlawful prong claim because "contract remedies originate at common law and do not provide the 'positive law' basis that" Plaintiffs need for an unlawful prong UCL claim. *Acorn Bay v. CamelBak Products, LLC* (N.D. Cal. 2020) 2020 WL 7664450, at *2.

The FAC does not state an "unfair" prong claim, either. Because Arborwell and Arbor MD are competitors, Plaintiffs must meet the most demanding "unfair" test: Plaintiffs must allege "conduct that threatens an incipient violation of antitrust law or violates the spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Communications*, 20 Cal.4th at 187. Plaintiff do not allege a violation of antitrust laws. In fact, it is the opposite: Arborwell complains about increased competition from Arbor MD, ruling out the unfair prong claim. As one court aptly stated, "The first amended complaint alleges no conduct even remotely approaching a violation of an antitrust law or the policy or spirit of antitrust laws." *Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.,*138 Cal.App.4th 1215, 1225 (2006).

Last, there is no fraudulent practice claim. The alleged fraudulent business practice must be one that is "likely to deceive the public." *McKell v. Wash. Mut., Inc*. 142 Cal.App.4th 1457, 1471 (2006). The FAC has no factual allegations that Defendants acted to deceive the public. Plaintiffs complain that Defendants, particularly Woolner and LaVelle, misled Plaintiffs about their intentions to work for Arborwell after the sale. FAC ¶ 58. Plaintiffs' allegations of harm by Defendants to a direct competitor do not state a UCL claim. *See Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.* (C.D. Cal. 2001) 178 F.Supp.2d 1099, 1121 (holding that a competitor may not sue under the UCL's fraudulent prong by claiming that the defendant misled the plaintiff). Because Plaintiffs merely allege harm to themselves, "the direct competitor," their fraudulent

21

1  prong claim fails. *Id*.

2      **D.     COAs 26-27, 29-30, and 32-33 fail because the confidentiality provision does
3              not require the employee to keep certain information confidential.**

4          The remaining causes of action for breach of employment agreements against Defendants

5  Dickinson, Yamaguchi, and Hagge (COAs 26-27, 29-30, and 32-33) all involve an alleged breach

6  of the same confidentiality provision, which is the same provision found in LaVelle's employment

7  agreement (the "LaVelle Confidentiality Agreement"). *Compare* FAC Ex. E at 3, *with* FAC Exs.

8  H at 3, G at 3, I at 3. Contrary to Plaintiffs' allegations, this "Non-Disclosure" provision does not

9  prohibit the employee from using or disclosing Arborwell's confidential information. *Id*. All it

10  says is that confidential information will be disclosed to the employee and that unauthorized

11  disclosure could cause extensive harm to Arborwell. *Id*. The agreement does not require the

12  employee to keep certain information confidential. *Id*. Because this attached confidentiality

13  contradicts the allegations in the Complaint, the contents of the exhibit control. *See Van Hook v.*

14  *Curry*, 2009 WL 773361, at *3 (N.D. Cal. 2009) ("When an attached exhibit contradicts the

15  allegations in the pleadings, the contents of the exhibits trump the pleadings."). *See also Gamble*

16  *v. GMAC Mortg. Corp.*, 2009 WL 400359, at *3 (N.D. Cal. 2009) ("Where an exhibit to a pleading

17  is inconsistent with the pleading, the exhibit controls."). Without a relevant contractual duty, there

18  can be no breach. COAs 26-27, 29-30, and 32-33 fail as matter of law.[17]

19      **E.     If the Court dismisses Plaintiffs' federal claims, it can decline jurisdiction of
20              the pendent California claims.**

21          If the Court dismisses all the ERISA claims (COAs 1-4) and the DTSA claim (COA 9),

22  then the Court can decline to exercise supplemental jurisdiction over all remaining state law claims

23

24

25  [17] As a separate basis, the Court can dismiss COAs 27, 30, and 33 because "[s]pecific performance
    is a remedy sought for breach of contract, and not a cause of action in and of itself." *Benihana of*
26  *Tokoyo, Inc. v. Benihana, Inc.*, 828 F. Supp. 2d 720, 727 (D. Del. 2011); *see also Green Valley*
    *Landowners Ass'n v. City of Vallejo*, 241 Cal.App.4th 425, 433, n. 8 (2015) ("There are no separate
27  causes of action for specific performance or injunctive relief, which are instead remedies.")

28

                                                                                                        22

1   against Defendants (COA 5-7, 9-27, 29-30, and 32-33). [18] 28 U.S.C. § 1367(c).

2   **V.      CONCLUSION**

3         For all these reasons, the Court should grant this motion in its entirety and dismiss all of

4   Plaintiffs' causes of action against Defendants Matt Dickinson, Kris Yamaguchi, Doug Hagge,

5   and Arbor MD Tree Care, Inc. in the FAC (causes of action 9-10, 22-27, 29-30, and 32-33) with

6   prejudice.

7

8   Dated:  October 11, 2023                          Respectfully submitted,

9

10                                                    _/s/ David M. Marchiano_____
                                                      David M. Marchiano (SBN 264809)
11                                                    dmarchiano@bgwcounsel.com
                                                      Brandon V. Stracener (SBN 314032)
12                                                    bstracener@bgwcounsel.com
                                                      **BROWN GEE & WENGER LLP**
13                                                    200 Pringle Ave., Suite 400
                                                      Walnut Creek, CA 94596
14                                                    Phone: 925-269-4132

15                                                    *Attorneys for Defendants*
                                                      *Andrew G. LaVelle and Neil Woolner*
16                                                    *Matt Dickinson, Kris Yamaguchi,*
                                                      *Doug Hagge, and Arbor MD Tree Care, Inc.*
17

18

19

20

21

22

23

24

25

26

27   _____

[18] The FAC does not include a 28th or 31st cause of action. Because Plaintiffs cut and paste nearly verbatim from their related state court complaint, they omitted causes of action that were dismissed in response to Defendants' demurrer, but failed to renumber the FAC accordingly.

28                                                                                                   23