1  Christopher J. Rillo (SBN 112009)
   Christopher.rillo@bakerbotts.com
2  Raerani Reddy (SBN 340475)
   rani.reddy@bakerbotts.com
3  Christina A. Romak (SBN 341472)
   christina.romak@bakerbotts.com
4  **BAKER BOTTS L.L.P.**
   101 California Street, Suite 3600
5  San Francisco, CA 94111
   Phone: 415-291-6200
6
   David M. Marchiano (SBN 264809)
7  dmarchiano@bgwcounsel.com
   Brandon V. Stracener (SBN 314032)
8  bstracener@bgwcounsel.com
   **BROWN GEE & WENGER LLP**
9  200 Pringle Ave., Suite 400
   Walnut Creek, CA 94596
10 Phone: 925-943-5000

11 *Attorneys for Defendants Andrew G. Lavelle, Neil*
   *Woolner, Matt Dickinson, Kris Yamaguchi, Doug*
12 *Hagge, and Arbor MD Tree Care, Inc.*

13            **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
14                  **OAKLAND DIVISION**

15 ARBORWELL, LLC, a California limited        Case No.: 4:23-cv-02770-HSG
   liability company; CI QUERCUS
16 CORPORATION, INC., a Delaware corporation,
   and SAVATREE, LLC, a Delaware limited
17 liability company,                          **DEFENDANTS ANDREW LAVELLE**
                                               **AND NEIL WOOLNER'S MOTION**
18            Plaintiff,                        **TO DISMISS PLAINTIFFS' FIRST**
                                               **AMENDED COMPLAINT**
19    v.
                                               **Hearing Date:** December 14, 2023
20 ALERUS FINANCIAL, N.A., ANDREW G.           **Time:** 2:00 P.M.
   LAVELLE, an individual; NEIL WOOLNER, an    **Place**: Courtroom 2, Oakland Courthouse
21 individual; MATT DICKINSON, an individual;  **Judge:** Haywood S. Gilliam, Jr.
   KRIS YAMAGUCHI, an individual; DOUG
22 HAGGE, an individual; ARBOR MD TREE
   CARE INC., a California corporation; ALVIN F.
23 SORTWELL and ANNE B. SORTWELL as Co-
   Trustees of the A&A SORTWELL FAMILY
24 TRUST; and DOES 1 through 10, inclusive,

25            Defendants.

26            and

27 ARBORWELL, INC. EMPLOYEE STOCK
   OWNERSHIP PLAN,
28            Nominal Defendant.

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on December 14, 2023, at 2:00 P.M., or as soon thereafter as the matter may be heard, in Courtroom 2 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, 94612, in Courtroom 2 – Fourth Floor, before the Honorable Haywood S. Gilliam, Jr., defendants Neil Woolner ("Woolner") and Andrew G. LaVelle ("LaVelle") will and hereby do move to dismiss with prejudice Plaintiffs CI Quercus Corporation, Inc.'s, Arborwell, LLC's, and SavATree, LLC's causes of action against them in the First Amended Complaint (Dkt. No. 45) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Woolner and LaVelle's motion is based on this Notice of Motion, the Memorandum and Points of Authorities in support thereof, Defendants Matt Dickinson, Kris Yamaguchi, Doug Hagge, and Arbor MD Tree Care, Inc.'s Memorandum of Points and Authorities in support of their Motion to Dismiss filed on the same date; the proposed order filed herewith; all pleadings, declaration of Christopher J. Rillo, the accompanying request for judicial notice, exhibits, any arguments the Court may accept at any hearing on this motion, and such other further matters of which this Court may take judicial notice.

Dated: October 11, 2023                    BAKER BOTTS L.L.P.


                                           */s/ Christopher J. Rillo*
                                           Christopher J. Rillo


                                           *Attorneys for Defendants Neil Woolner, Andrew
                                           LaVelle, Matt Dickinson, Kris Yamaguchi, Doug
                                           Hagge, and Arbor MD Tree Care, Inc.*

## <u>**TABLE OF CONTENTS**</u>

I.      INTRODUCTION ................................................................................................1
II.     ALLEGED FACTS...........................................................................................2

    A.      Arborwell, Inc. establishes an ESOP in 2017 and the three shareholders sell their entire interests in Arborwell, Inc. to the ESOP that same year. ....................2

    B.      The ESOP Trust sells 100% of Arborwell, Inc. stock to CI Quercus in 2020........3

III.    LEGAL STANDARD........................................................................................4
IV.     ARGUMENT ....................................................................................................4

    A.      Plaintiffs lack Article III standing............................................................................4

        1.      Neither Arborwell, LLC nor SavATree are enumerated parties endowed with standing under the statute.................................................4

        2.      Plaintiffs have not suffered a concrete and particularized injury. .............7

        3.      Plaintiff CI Quercus does not have standing because the non-compete is not governed by ERISA. ........................................................................8

    B.      Even if Plaintiffs have standing under ERISA, Plaintiffs fail to state a claim against LaVelle and Woolner...............................................................................10

        1.      Woolner is not a Fiduciary.........................................................................10

        2.      Benefitting financially is not an automatic breach of fiduciary duty.........11

        3.      Plaintiffs' second and third COAs alleging prohibited transactions under ERISA § 406(a) and (b) should be dismissed for failure to state a claim. ..................................................................................................12

        4.      Plaintiffs' fourth COA seeking injunctive and other equitable relief under ERISA § 502(a)(3) should be dismissed for failure to state a claim. ..................................................................................................14

    C.      The Court should decline jurisdiction of the pendent California claims. ..............14

    D.      Even if this Court exercises supplemental jurisdiction, Plaintiffs' California state law claims fail........................................................................................15

        1.      ERISA does not preempt Plaintiffs' state law claims against LaVelle and Woolner............................................................................................15

        2.      COAs 5–7 fail to state a claim because the noncompete agreements are void and unenforceable under § 16600......................................................15

        3.      Section 16601 does not apply because neither LaVelle nor Woolner owned stock in Arborwell at the time of the 2020 Sale............................17

        4.      Were the Court to accept Plaintiffs' arguments, a company could wield employee's participation in employer retirement plans against them to render § 16600 a dead letter. ......................................................................18

    E.      COAs 11–21 are barred because they rely on contracts that are void and unenforceable under Business and Professions Code § 16600. ............................19

        1.      COAs 11 and 12 are barred by § 16600 because the confidentiality and nondisclosure provisions serve as de facto non-competes.........................19

        2.      COAs 13 and 14 are also barred under § 16600. ......................................21

        3.      COAs 15 and 16 fail because LaVelle's Employment Agreement did

i

not require LaVelle to keep Arborwell's information confidential. ..........23

4.    COAs 17 and 18 fail because the Confidentiality and Inventions Assignment Agreement imposes unlawful post-employment restrictions on LaVelle's right to work. .....................................................23

5.    COAs 19–21 fail because the non-compete and confidentiality provisions in the LaVelle Employment Agreement are void under § 16600.........................................................................................................24

V.    CONCLUSION.............................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanced Women's Health Ctr., Inc. v. Anthem Blue Cross Life & Health Ins. Co.*,
    2014 WL 3689284 (E.D. Cal. 2014)................................................................6

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004)...........................................................................15

*Akers v. Palmer*,
    71 F.3d 226 (6th Cir. 1995) ..................................................................7

*American Credit Indemnity Co. v. Sacks*
    (1989) 213 Cal.App.3d 622 ...................................................................20

*AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*
    (2018) 28 Cal.App.5th 923 ..................................................20, 21, 22, 25

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*,
    630 F. Supp. 2d 1084 (N.D. Cal. 2009) .......................................................20

*Arbaugh v. Y & H Corp.*,
    546 U.S. 500 (2006)...........................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................4, 13

*Aspen Advisors LLC v. United Artists Theatre Co.*,
    861 A.2d 1251 (Del. 2004) ...................................................................18

*Barker v. Insight Glob., LLC*,
    2019 WL 176260 (N.D. Cal. 2019) .....................................................20, 22, 24

*Bd. of Trustees of S. Nevada Joint Mgmt. & Culinary & Bartenders Training Fund v. Fava*,
    2020 WL 4031767 (D. Nev. 2020) .............................................................9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................4

*Benihana of Tokoyo, Inc. v. Benihana, Inc.*,
    828 F. Supp. 2d 720 (D. Del. 2011).......................................................19, 22

*Bosley Med. Grp. v. Abramson*,
    161 Cal. App. 3d 284 .........................................................................19

*Brown v. TGS Management Company*,
    57 Cal.App.4th at 316–19 .....................................................................21

iii

*Brown v. TGS Mgmt. Co.*, LLC,
    57 Cal.App.5th 303 (2020) ...................................................................................19, 20, 21

*Bugielski v. AT&T Servs., Inc.*,
    No. 21-56196, 2023 WL 4986499 (9th Cir. Aug. 4, 2023) ....................................................12

*Carbajal v. CWPSC, Inc.*
    (2016) 245 Cal.App.4th 227 .....................................................................................................22

*CI Quercus Corporation, Inc., et al. v. Neil Woolner, et al.*,
    Alameda County Superior Court, Case No. RG21104479 ........................................................1

*Crowhurst v. Cal. Inst. of Tech.*,
    1999 WL 1027033 (C.D. Cal. 1999), *aff'd*, 11 F. App'x 827 (9th Cir. 2001).........................11

*D'Sa v. Playhut, Inc.*,
    85 Cal.App.4th 927 (2000) .......................................................................................................20

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*,
    No. 17-CV-07243-BLF, 2019 WL 6841222 (N.D. Cal. Dec. 16, 2019) .................................14

*Delphix Corp. v. Actifo, Inc.*,
    2014 WL 4628490 (N.D. Cal. 2014) ........................................................................................13

*Depot, Inc. v. Caring for Montanans, Inc.*,
    915 F.3d 643 (9th Cir. 2019) ..............................................................................................10, 14

*Dowell v. Biosense Webster, Inc.*,
    179 Cal. App.4th 564 (2009) .......................................................................................19, 20, 22

*DVD Copy Control Assn., Inc. v. Bunner*,
    31 Cal. 4th 864 (2003) ..............................................................................................................21

*Edwards v. Arthur Andersen LLP*,
    44 Cal. 4th 937 (2008) ..............................................................................................................16

*Elliott v. Mitsubishi Cement Corp.*,
    2008 WL 4286985 (C.D. Cal. 2008)........................................................................................10

*Est. of Hirata v. Ida*,
    No. CIV. 10-00084 LEK, 2010 WL 2179812 (D. Haw. 2010) ...............................................14

*Faunce v. Cate*,
    222 Cal. App. 4th 166 (2013) .............................................................................................19, 24

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)..................................................................................................................18

*Fillpoint, LLC v. Maas*,
    208 Cal. App. 4th 1170 (2012) .................................................................................................25

*Fossen v. Blue Cross & Blue Shield of Mont., Inc.*,
  660 F.3d 1102 (9th Cir. 2011) ............................................................................15

*Gamble v. GMAC Mortg. Corp.*,
  2009 WL 400359 (N.D. Cal. 2009) ("Where an exhibit to a pleading is inconsistent with the
  pleading, the exhibit controls.")............................................................................23

*Gobeille v. Liberty Mut. Ins. Co.*,
  577 U.S. 312 (2016).............................................................................................15

*Golden State Linen Service, Inc. v. Vidalin*,
  69 Cal.App.3d 1 (1977) ......................................................................................17

*Green Valley Landowners Ass'n v. City of Vallejo*,
  241 Cal. App. 4th 425 (2015) .......................................................................19, 22

*Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*,
  530 U.S. 238 (2000)...............................................................................................4

*Hill Medical Corp. v. Wycoff*,
  86 Cal. App. 4th 895 (2001) ..........................................................................17, 18

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013)...............................................................................................8

*Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Program*,
  997 F.3d 848 (9th Cir. 2021) ..............................................................................15

*Ixchel Pharma, LLC v. Biogen, Inc.*,
  9 Cal. 5th 1130 (2020) ........................................................................................16

*Jones v. Humanscale Corp.*,
  130 Cal.App.4th 401 (2005) ..........................................................................20, 23

*Khoja v. Orexigen Therapeutics*,
  899 F.3d 988 (9th Cir. 2018) ................................................................................2

*Lange v. Monster Energy Co.*
  (2020) 46 Cal.App.5th 436 .................................................................................22

*Life Ins. Co. v. Russell*,
  473 U.S. (1985)......................................................................................................6

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...............................................................................................7

*McLeod v. Oregon Lithoprint, Inc.*,
  102 F.3d 376 (9th Cir. 1996) ..............................................................................14

*Metro Traffic Control, Inc. v. Shadow Traffic Network*,
   22 Cal. App. 4th 853 (1994) ........................................................................16, 20

*Metropolitan Life Ins. Co. v. Parker*,
   436 F.3d 1109 (9th Cir. 2006) .................................................................................15

*Off. Comm. of Bond Holders of Metricom, Inc. v. Derrickson*,
   No. C 02–04756 JF, 2004 WL 2151336 (N.D. Cal. 2004) .......................................7

*Pacificare Inc. v. Martin*,
   34 F.3d 834 (9th Cir. 1994) .....................................................................................11

*Pilkington PLC v. Perelman*,
   72 F.3d 1396 (9th Cir. 1995) .....................................................................................6

*Robinson v. Jardine Ins. Brokers Int'l Ltd.*,
   856 F. Supp. 554 (N.D. Cal. 1994) ....................................................................16, 24

*Santomenno v. Transamerica Life Ins. Co.*,
   883 F.3d 833 (9th Cir. 2018) ...................................................................................11

*SavATree, LLC v. Shawnee Mission Tree Service, Inc.*
   Case No. 3:22-cv-02052-K, Doc. 14 .........................................................................1

*South Gate Ambulatory Surgery Ctr. LLC v. Int'l Longshore & Warehouse Union Pacific Maritime
   Ass'n Coastwise*,
   2011 WL 672539 (C.D. Cal. 2011).............................................................................6

*Speirs v. BlueFire Ethanol Fuels, Inc.*,
   243 Cal. App. 4th 969 (2015) ..................................................................................18

*Thole v. U.S. Bank N.A*,
   140 S.Ct. 1615 (2020)............................................................................................7, 8

*Trenton v. Scott Paper Co.*,
   832 F.2d 806 (3d Cir. 1987), cert. denied, 485 U.S. 1022 (1988) ..........................11

*Trujillo v. American Bar Association*,
   706 Fed.App'x. 868 (7th Cir. 2017) ...........................................................................1

*United States v. Ritchie*,
   342 F.3d 903, 908 (9th Cir. 2003) .............................................................................2

*Van Hook v. Curry*,
   2009 WL 773361 (N.D. Cal. 2009) ("When an attached exhibit contradicts the allegations in the
   pleadings, the contents of the exhibits trump the pleadings.") ................................23

*Walsh v. Bowers*,
   561 F. Supp. 3d 973 (D. Haw. 2021) .........................................................................8

vi

*Warmenhoven v. NetApp, Inc.*,
   13 F.4th 717 (9th Cir. 2021) ..................................................................................14

*WeRide Corp. v. Kun Huang*
   (N.D. Cal. 2019) 379 F.Supp.3d 834, modified in part (N.D. Cal 2019) 2019 WL 5722620 .24

*Wool v. Sitrick*,
   2010 WL 11448099 (C.D. Cal. 2010).........................................................................9

*Woznicki v. Raydon Corporation Corp.*,
   2019 WL 5702728 (M.D. Fla. 2019) ..........................................................................9

*Wright v. Oregon Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) ...................................................................................10

*Zavala v. Kruse-W., Inc.*,
   398 F. Supp. 3d 731 (E.D. Cal. 2019)........................................................................13

**STATUTES**

18 U.S.C. § 1367(c) .........................................................................................................14

29 U.S.C. § 1002(14) .......................................................................................................12

29 U.S.C. § 1002(18)(B) ..................................................................................................12

29 U.S.C. § 1002(21)(A).............................................................................................10, 11

29 U.S.C. § 1102(a)(2) .....................................................................................................10

29 U.S.C. § 1104 ..............................................................................................................10

29 U.S.C. § 1105 ..............................................................................................................10

29 U.S.C. § 1106 ................................................................................................................8

29 U.S.C. § 1106(a) ..........................................................................................................12

29 U.S.C. § 1106(b) ..........................................................................................................12

29 U.S.C. § 1108(e)(1).....................................................................................................8, 11

29 U.S.C. § 1109(b) ............................................................................................................9

29 U.S.C. § 1132(a) .......................................................................................................5, 15

29 U.S.C. § 1132(a)(3)......................................................................................................14

29 U.S.C. §1132(e)(2).........................................................................................................5

29 U.S.C. § 1144(a) ..........................................................................................................15

29 USC § 1106(a)(1) ................................................................................................................14

Cal. Bus. & Prof. Code § 16000 ............................................................15, 16, 19, 20, 21, 22, 24

Cal. Bus. & Prof. Code § 16601 ...........................................................................12, 17, 18, 25

ERISA § 406(a) ..........................................................................................................................12

ERISA § 406(a)(1) ......................................................................................................................14

ERISA § 406(b) ..........................................................................................................................12

ERISA § 408I(1) .........................................................................................................................11

ERISA § 502(a) ..................................................................................................................4, 6, 15

ERISA § 502(a)(3) ......................................................................................................................14

ERISA §502(e)(2) .........................................................................................................................5

ERISA § 514(a) ..........................................................................................................................15

Section 4975(e)(7) ........................................................................................................................5

**OTHER AUTHORITIES**

29 C.F.R. § 2510.3–101(h)(3) ......................................................................................................9

Fed. R. Civ. P. 12(b)(1) ................................................................................................................4

Fed. R. Civ. P. 12(b)(6) ................................................................................................................4

Senate Bill 699 ...........................................................................................................................16

MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT - CASE NO. 4:23-CV-02770-HSG

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

This federal action is a flagrant attempt by three wealthy companies—CI Quercus Corporation, Inc. ("CI Quercus"), Arborwell, LLC ("Arborwell"), and SavATree, LLC ("SavATree") (collectively, "Plaintiffs")—to improperly leverage their previous state court lawsuit into federal court by asserting ill-founded ERISA claims. Although ERISA is intended to protect individual participants in retirement and health plans, Plaintiffs have sued to vindicate their *own* interests under the guise of helping plan participants.[1] Plaintiffs assert ERISA claims based on an ESOP plan which was liquidated (and terminated) when CI Quercus purchased Arborwell, Inc. in 2020. Plaintiffs now claim that the ESOP was the predecessor plan to "the Arborwell/SavATree 401k Plan" (FAC ¶ 16), though a plan by that name does not exist, and SavATree's 401k plan existed long before the ESOP. Plaintiffs have no Article III standing or statutory standing under ERISA. Neither do they have standing under the Defend Trade Secrets Act ("DTSA"), and even if they did, Plaintiffs still fail to state a claim under ERISA, DTSA, and all the remaining state-law claims.

Plaintiffs filed this action on the eve of trial, immediately following hard-fought state court litigation for over two years on the *same* claims they now include in the First Amended Complaint ("FAC").[2] Plaintiffs abandoned their state court action and now seek to restart the case in federal court in an egregious attempt to drain Defendants of their resources and thereby eliminate competition in the treecare industry.[3] This Court should not reward Plaintiffs' blatant misuse and abuse of the court

---

[1] Not one employee has complained about mismanagement, abuse, or anything for that matter—likely because those 200+ Arborwell employees benefitted significantly from the Arborwell, Inc. ESOP sale, which resulted in those employees collectively walking away with over $10 million in retirement wealth. *See also Trujillo v. American Bar Association*, 706 Fed.App'x. 868, 869 (7th Cir. 2017) (bringing suit for individual interests rather than in the interests of the plan or its participants is not permitted under ERISA).

[2] Plaintiffs originally filed suit in state Court in 2021 against five former employees (including defendants here Andrew LaVelle ("LaVelle") and Neil Woolner ("Woolner")) for the same state law claims raised here: breach of non-compete agreements, trade secret misappropriation, unfair competition, and related claims (the "State Court Action"). *CI Quercus Corporation, Inc., et al. v. Neil Woolner, et al.*, Alameda County Superior Court, Case No. RG21104479 (Hon. Tara DeSautels).

[3] SavATree has filed similar lawsuits in courts throughout the country as anticompetitive schemes designed to block employees from going to competitors. *See, e.g., SavATree, LLC v. Shawnee Mission Tree Service, Inc.* Case No. 3:22-cv-02052-K, Doc. 14, Filed 10/21/22 (N.D. Tex. 2022); *Conrad v. SavATree, LLC* and related counterclaim, Case No. 1:22-cv-01653; Doc. 10, Filed: 05/06/22 (N.D. Ill. 2022).

system and should GRANT this motion in its entirety and dismiss all claims against LaVelle and Woolner with prejudice.

## II.    ALLEGED FACTS

### A.    Arborwell, Inc. establishes an ESOP in 2017 and the three shareholders sell their entire interests in Arborwell, Inc. to the ESOP that same year.

Before 2017, Arborwell, Inc. had three shareholders: the Sortwells, Andrew LaVelle, and Neil Woolner. FAC ¶ 34.[4] In 2017, Arborwell, Inc. formed an ESOP ("the ESOP" or "the Plan"). *Id*. ¶ 35. On November 1, 2017, the Sortwells, LaVelle, and Woolner sold 100% of Arborwell, Inc.'s stock to the ESOP for $17,270,450 (the "2017 Stock Purchase") *Id*.; Declaration of Christopher J. Rillo ("Rillo Decl."), Ex. 1 (2017 Stock Purchase Agreement ("2017 SPA")), §1(d).[5] Following the 2017 Stock Purchase, the Arborwell, Inc. Employee Stock Ownership Trust ("ESOP Trust") owned 100% of Arborwell, Inc. stock. FAC ¶ 35. In connection with the 2017 Stock Purchase, the Sortwells, LaVelle, and Woolner received a small cash payout but loaned the vast majority of the sales proceeds to the ESOP (the "ESOP Loan"). In exchange, they received subordinated notes and warrants. *Id.*

The ESOP was administered by the ESOP Committee composed of Sortwell, Lavelle, Brad Carson, and another Arborwell, Inc. director. *Id.* ¶ 37. The ESOP Committee had three separate powers and fiduciary responsibilities: (1) to invest trust assets unless otherwise delegated to the ESOP trustee; (2) to perform and manage Plan's administrative functions; and (3) to direct the Trustee with respect to certain actions—including the sale of Arborwell, Inc. stock held in the ESOP trust. *Id.* ¶ 42. Woolner was not a member of the ESOP Committee or the Arborwell, Inc. Board, nor do Plaintiffs allege he was. LaVelle and Woolner's ownership of Arborwell stock ended in November 2017, when they sold

---

[4] All page numbers in the ECF citations are to the ECF page numbers provided in the ECF header.
[5] The 2017 Stock Purchase is extensively and explicitly referenced in the First Amended Complaint at ¶¶ 35, 43, 51(b)–(d), and 56, and may therefore be considered incorporated into the pleadings by reference. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (explaining that "[e]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). The 2017 Stock Purchase is central to Plaintiff's claims, as they use it to show that the Sortwells, LaVelle, and Woolner received notes, warrants, and SARs that were paid out during the 2020 Sale, and Plaintiffs allege the repayment of this debt was "self-dealing" in an attempt to invoke ERISA. Further, the purpose of the incorporation by reference doctrine is to prevent plaintiffs from "selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 1002 (9th Cir. 2018). That is what Plaintiffs have done here by omitting the sale price of Arborwell Inc.'s stock purchased by the ESOP, which doubled by the time of the 2020 sale.

their entire interests in Arborwell to the ESOP. *Id.* ¶ 3; FAC Ex. A at 7. The ESOP Trust then owned all shares of Arborwell stock. *Id.* ¶ 3.

**B.     The ESOP Trust sells 100% of Arborwell, Inc. stock to CI Quercus in 2020.**

On December 9, 2020, the ESOP Trust sold 100% of Arborwell, Inc. stock to CI Quercus (the "2020 Sale"). *Id.* ¶ 49; ECF 45-1 (FAC Ex. A, (Stock Purchase Agreement ("SPA")) at 7, 9-10 (defining the ESOP Trust as the "Seller" and noting the ESOP Trust was "the shareholder of record of 1,111,100 shares of Company common stock," defined as "Shares"), §§ 1.1, 1.4-1.5 (explaining sale of "Shares" by Seller). The SPA does not identify LaVelle or Woolner as a "Seller" or owner of Shares. *See id.* However, CI Quercus required LaVelle and Woolner, despite their lack of ownership, to sign onto the SPA as "Warrant Holders." FAC Ex. A at 7. The SPA contained: (1) a covenant not to compete with Arborwell and a covenant not to solicit former Arborwell customers for three years after closing, and (2) a covenant not to solicit former Arborwell employees for five years after closing (the "non-compete agreement" or "non-compete"). FAC ¶ 58; FAC Ex. A, SPA at 36-37, § 5.1(a). Sortwell, Woolner, and LaVelle loaned the vast majority of the sales proceeds from the 2017 sale to the ESOP to purchase Arborwell Inc.'s stock and finance the transaction; in exchange, Arborwell issued each former owner subordinated notes and warrants. *Id.* ¶ 5.

CI Quercus paid $34,000,000 for Arborwell, Inc. FAC ¶¶ 50, 52. As a result of the sale, the ESOP participants received an alleged total of $10,267,810[6] (including $730,076 for both Woolner's and LaVelle's ESOP interests). *Id.* ¶¶ 50, 52. At the time of the sale, most of the ESOP's holdings of Arborwell, Inc. stock had not been released to the ESOP participants' accounts; Arborwell, Inc.'s senior bank debt was substantially unpaid, and its subordinated debt to the Sortwells, LaVelle, and Woolner for the ESOP Loan was wholly unpaid. *Id.* ¶¶ 6, 52. The Sortwells, LaVelle and Woolner received an alleged combined total of $13,589,662 in payments for allocated and unallocated ESOP shares, stock warrants, subordinated notes, and stock appreciation rights.[7] *Id.* ¶ 5. Arborwell, Inc. used

---

[6] All of the dollar amounts contained in this Motion have been rounded, where appropriate, to eliminate fractions of a dollar.

[7] While Plaintiffs attempt to lump LaVelle and Woolner together with the Sortwells, the allegations show that Sortwell received the vast majority of the alleged combined total of approximately $13.6 million with LaVelle and Woolner receiving about 6% and 4%, respectively, of that total as payment. FAC ¶ 50. Arborwell, Inc. paid LaVelle $613,136 as debt repayment for the ESOP Loan and exercised its right upon acquisition to purchase LaVelle's warrant in exchange for SavATree Class B stock.

1    the balance of the purchase price to pay off transaction costs for the acquisition and Arborwell, Inc.'s

2    senior bank debt. *Id.*

3          Upon closing of the 2020 Sale on December 9, 2020, the ESOP terminated. *See* FAC ¶ 48;

4    FAC Ex. A at 7 ("upon the Closing, . . . the ESOP Plan shall no longer be an "employee stock

5    ownership plan" within the meaning of Section 4975(e)(7) of the Code").

6    **III.   LEGAL STANDARD**

7          Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of subject

8    matter jurisdiction." *See* Fed. R. Civ. P. 12(b)(1). "[W]hen a federal court concludes that it lacks

9    subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *See Arbaugh v. Y &*

10   *H Corp.*, 546 U.S. 500, 514 (2006) (citation omitted). The Court can dismiss an action under Rule

11   12(b)(6) for "failure to state a claim upon which relief can be granted." "To survive a motion to

12   dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

13   that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.*

14   *v. Twombly*, 550 U.S. 544, 570 (2007)).

15   **IV.   ARGUMENT**

16         Plaintiffs have no Article III standing—there is no cognizable injury and no statutory standing.

17   Furthermore, the claims against LaVelle and Woolner (1–4, 5–7, 9–10, 11–21, and 22–25) must be

18   dismissed for failure to state a claim for which relief can be granted.[8] Alternatively, once the federal

19   claims are dismissed, the Court should decline jurisdiction of the pendent California state claims.

20         **A.   Plaintiffs lack Article III standing.**

21              **1.   Neither Arborwell, LLC nor SavATree are enumerated parties endowed
                       with standing under the statute.**

22         Section 502(a) of ERISA expressly articulates—and limits—the parties who have standing to

23   file a civil action. *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 247 (2000).

24   Only a participant, beneficiary, fiduciary, or the Secretary of Labor may bring a civil action under

25   ERISA. *See* 29 U.S.C. § 1132(a). Plaintiffs fit none of these categories but attempt to plead standing

26   _____

27   Similarly, Arborwell, Inc. paid Woolner $463,787 in repayment of its debt to him for the ESOP Loan
     and exercised its right to purchase his warrant for $78,304. *Id.* ¶ 50.

28   [8] Defendants' arguments moving to dismiss Causes of Action 9–10 and 22–25 are contained within
     Defendants Dickinson, Yamaguchi, Hagge, and Arbor MD Tree Care, Inc.'s Memorandum of Points
     and Authorities in support of their Motion to Dismiss.

under various fiduciary theories, none of which are successful. Arborwell, LLC claims it has standing under ERISA §502(e)(2), 29 U.S.C. §1132(e)(2)[9] because it is purportedly the "same entity" as Arborwell, Inc., the alleged named fiduciary to the ESOP. SavATree claims it has standing because it is the named fiduciary of its own 401k plan, and alleges that the 401k plan is the "successor plan" to the ESOP. Neither of these theories grants Plaintiffs Article III standing.

First, the ESOP ceased to be a stock plan upon closing of the 2020 Sale, so there was no fiduciary status to confer to Plaintiff Arborwell. Upon closing of the 2020 Sale, the ESOP terminated. *See* FAC ¶¶ 5, 48; FAC Ex. A at 7 ("upon the Closing, . . . the ESOP Plan shall no longer be an "employee stock ownership plan" within the meaning of Section 4975(e)(7) of the Code"). Any alleged fiduciary responsibilities and duties towards the Plan terminated upon the 2020 sale, *before* the alleged wrongful conduct occurred. *See* FAC ¶¶ 122–123. Arborwell was not a fiduciary during the time: (1) after the closing of the sale in December 2020, (2) during alleged conduct violating non-compete in 2021, (3) initiating litigation in state court, and (4) initiating this federal action. Simply put, Arborwell cannot and could not be the fiduciary of an ERISA Plan that has long since ceased to exist.

Second, Arborwell Inc. itself was never a named or functional fiduciary of the Plan. Even if Arborwell's fiduciary pass-along theory were viable, Arborwell, Inc. had no fiduciary status to confer. Arborwell argues it is the "same entity" as Arborwell, Inc., "the named fiduciary of the ESOP, its sponsor and its administrator." FAC ¶ 15. But Arborwell, Inc. only "selected and monitored the Trustee and the ESOP [] Committee." *Id.* As explained above, Arborwell, Inc. is not an enumerated party under ERISA. Plaintiffs admit that the Plan was administered by the ESOP Committee and not Arborwell, Inc. *See id.* ¶¶ 37–42. While Plaintiffs allege that the Plan states that Arborwell, Inc. would act as a named fiduciary "except where the Plan otherwise delegates such responsibility to the Committee," the Plan made a full delegation of authority to the fiduciary committee. *Id.* ¶ 38.

Apparently recognizing the above-described deficiencies, SavATree asserts it has standing as

---

[9] 29 U.S.C. §1132(e)(2) provides for an ERISA action to be brought in a district court "where the plan is administrated, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found." This provision does not confer standing on the basis of being a successor-in-interest. Plaintiffs' reference to this provision in the FAC does not support their claim for standing. *See* FAC ¶ 15.

the named fiduciary of the alleged "successor" 401k Plan to the ESOP. FAC ¶ 16. Plaintiffs further allege that, as Arborwell, LLC is a subsidiary of SavATree, it has standing too. *Id.* There are several flaws with this approach.

First, Plaintiffs purposefully misstate the name of the Plan as the "Arborwell/SavATree 401k Plan" to merge the two entities together for the sake of pleading. *Id.* However, the Form 5500s show that only SavATree manages the 401k Plan. Rillo Decl., Ex. 2, at p. 1 (listing "SavATree, LLC Employee Benefits Plan" as the correct name of the plan and listing only "SaveATree, LLC" as the plan sponsor). Second, the 401k Plan is plainly not a "successor plan" to the ESOP. The 401k Plan was established in 2015, two years before the ESOP was established and over five years before the ESOP sale. *Id.* The 401k Plan *already existed* when the ESOP terminated, not to mention before the ESOP was even formed, and cannot be a "successor plan" to the ESOP. When certain Arborwell employees joined SavATree, they simply rolled their ESOP interests over to their new employer's 401k plan. The 401k did not replace the ESOP. Moreover, the two separate plans are structured entirely differently and provide different types of benefits. Plaintiffs' weak attempt at asserting standing on this basis is not well-founded.[10]

As explained above, the categories of persons who can bring claims under ERISA is limited by ERISA § 502(a). Plan sponsors and administrators (as Arborwell alleges Arborwell, Inc. was) are not included in the list of parties who can bring claims under ERISA. Remedies created by ERISA and the parties expressly authorized to seek them are exclusive.[11] Even if Arborwell could somehow show it was a fiduciary, there is no authority supporting the concept that a new company, even the corporate successor of a predecessor company, can file suit for ERISA-based claims *after* the plan has

---

[10] Plaintiff's citation to *Pilkington PLC v. Perelman*, 72 F.3d 1396, 1401 (9th Cir. 1995) is inapposite because the fiduciary plaintiffs in *Pilkington PLC* succeeded to all of the assets and liabilities of the prior plan. 72 F.3d at 1398. Here, the 401k Plan was already in existence before the termination of the ESOP, and explained above, upon termination of the ESOP, the ESOP participants received an immediate payout or an option to roll over their interests into the 401k.

[11] *See* Massachusetts Mutual *Life Ins. Co. v. Russell*, 473 U.S. at 134, 146 (1985). Courts in the Ninth Circuit permit only enumerated parties to bring claims under ERISA. *See, e.g.*, *South Gate Ambulatory Surgery Ctr. LLC v. Int'l Longshore & Warehouse Union Pacific Maritime Ass'n Coastwise*, 2011 WL 672539, at *3 (C.D. Cal. 2011) (finding plaintiffs could not bring claim under ERISA because they were not an enumerated party); *Advanced Women's Health Ctr., Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 2014 WL 3689284, at *3 (E.D. Cal. 2014) (determining plaintiff lacked standing because health care providers are not enumerated parties).

been terminated. Moreover, there is no support for Plaintiffs' outlandish theory that SavATree's preexisting 401k plan is a successor plan to the ESOP.

### 2. Plaintiffs have not suffered a concrete and particularized injury.

To establish Article III standing, "a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A*, 140 S.Ct. 1615, 1618 (2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Neither Plaintiffs nor the ESOP participants suffered a concrete and particularized injury flowing from LaVelle's or Woolner's conduct. Plaintiffs inaccurately allege that the Plan has suffered "actual harm" due to "diminution in value of the ESOP and its assets" and because the 2020 Sale was "premature." FAC ¶¶ 17, 52. However, these allegations fail for two reasons.

First, there is no diminution in value of the Plan because the ESOP terminated upon closing of the 2020 Sale. *See* FAC ¶¶ 5, 48 (describing December 9, 2020 as the closing date of the 2020 Sale), FAC Ex. A at 7. Simply put, there was no "diminution" because the Plan was no longer in existence. The "diminution" Plaintiffs actually complain about is the value of the business—Arborwell—which is not an ERISA plan. [12]

Second, there was no harm to the ESOP or its participants because the 2020 Sale was *double* the ESOP's original investment. On November 1, 2017, the ESOP purchased 100% of Arborwell's shares for $17,270,450. Ex. 1, 2017 SPA, § 1(d). On December 9, 2020, CI Quercus paid $34,000,000 to acquire Arborwell, and upon closing of the sale, the ESOP terminated. FAC ¶¶ 49–50. The ESOP participants' share valuations doubled in only three years. And in any event, the terms of the transaction *required* that the company debt, which was used to buy the Arborwell stock and finance the ESOP, be paid off. FAC Ex. A at 7.

---

[12] Plaintiffs' true gripe with the 2020 ESOP sale is that they disagree with the corporate business decision to sell at the time. Such a claim is more properly analyzed under the business judgement rule, which is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Off. Comm. of Bond Holders of Metricom, Inc. v. Derrickson*, No. C 02–04756 JF, 2004 WL 2151336, at *2 (N.D. Cal. 2004) (quotations omitted). Plaintiffs offer no facts to rebut this presumption. Plaintiffs' allegations at most evidence a disagreement with Lavelle's and Woolner's corporate judgment and *not* a transaction investing the ESOP's assets or administering the Plan as required to state a claim under § 404. *See also Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir. 1995) (holding decision to terminate an ESOP was a "pure business decision").

To the extent Plaintiffs allege harm occurred after the 2020 Sale, ERISA does not govern these disputes because the Plan had terminated. *See supra* sections (IV)(A)(1)–(2). Upon CI Quercus's acquisition of Arborwell in December 2020, the ESOP ceased to exist.[13] The ESOP participants received their money in a lump sum to be rolled over to another plan or distributed to them. *See* FAC Ex. A, at 32, § 2.27(e) ("There are no pending elections by any participant in the ESOP Plan to receive distributions from the ESOP Plan in the form of securities of the Company."). Moreover, Plaintiffs' claims under 29 U.S.C. § 1106 are barred when a sale to an ESOP involves "adequate consideration." *See* 29 U.S.C. § 1108(e)(1). Here, Plaintiffs do not allege that the 2020 Sale was not for adequate consideration, and defendants are not in violation of § 1106. *See Walsh v. Bowers*, 561 F. Supp. 3d 973, 1005 (D. Haw. 2021) (holding defendants cannot be said to have violated § 1106 when the ESOP sale was for adequate consideration for purposes of § 1108(e)(1)).

There is simply no harm to the ESOP or its participants, much less to Plaintiffs. And to assert standing based on "'the interests of others, the litigants themselves still must have suffered an injury in fact, thus giving' them 'a sufficiently concrete interest in the outcome of the issue in dispute.'" *Thole*, 140 S.Ct. at 1620 (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013). Plaintiffs have failed to show any concrete and particularized injury themselves, and thus cannot bring ERISA claims.

### 3. Plaintiff CI Quercus does not have standing because the non-compete is not governed by ERISA.

Plaintiff CI Quercus confusingly claims both that it is "not asserting ERISA or fiduciary claims in this action," and that it "has standing to assert contract claims against LaVelle and Woolner" because the noncompete agreement "is governed by ERISA." FAC ¶ 18. Plaintiffs' only basis to get the non-compete claims into federal court by virtue of ERISA jurisdiction is to claim that the non-compete is somehow governed by ERISA rather than by state law. However, the non-compete is not governed by ERISA because (1) the ESOP was not a party to the non-compete agreement, (2) ERISA

---

[13] Plaintiffs' allegations regarding the breach of the non-compete occurred *after* the acquisition and *after* the termination of the Plan. *See* FAC ¶¶ 59–60 (alleging LaVelle and Woolner retained a broker in January 2021 and purchased Arbor MD in May 2021 and alleging Arbor MD hired three management-level employees within a few weeks of Woolner's resignation, or in or about May or June 2021). Plaintiffs do not have standing to assert claims related to any alleged diminution in value under ERISA for conduct *after* termination of the Plan. To the extent Plaintiffs have attempted to amend their claims to assert conduct occurring prior to the ESOP sale, these allegations are insufficient to state a claim for breach of a non-compete agreement. *See* FAC ¶ 114.

limits liability to the time in which a defendant served as a fiduciary, and (3) the non-compete agreements and its employee relationships are not plan assets nor a plan document.

First, the ESOP was not a party to the non-compete. As Plaintiffs allege, CI Quercus was the party to the SPA. *See* FAC ¶ 18; FAC Ex A at 7. Since the non-compete is not governed by ERISA, Plaintiffs' ERISA claims based on the non-compete should be dismissed. *See Woznicki v. Raydon Corporation Corp.*, 2019 WL 5702728, at *3 (M.D. Fla. 2019) (dismissing claim arising out of non-compete agreements signed with an ESOP transaction because plaintiff did not allege that the ESOP was party to the non-compete agreements transaction).

Second, even if ERISA were to apply, ERISA limits liability to the time in which a defendant served as a fiduciary: "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary." 29 U.S.C. § 1109(b); *See Bd. of Trustees of S. Nevada Joint Mgmt. & Culinary & Bartenders Training Fund v. Fava,* 2020 WL 4031767, at *10 (D. Nev. 2020) (holding defendants' status as fiduciaries terminated upon plan termination recovery was available only for losses which were sustained while defendants were fiduciaries). Plaintiffs allege that LaVelle's and Woolner's purported status as fiduciaries arose primarily out of their duties in relation to the ESOP Committee. FAC ¶¶ 4, 5, 25, 26. As a result of the 2020 Sale, the ESOP terminated—there was no longer an ESOP Committee—and LaVelle's and Woolner's alleged status as fiduciaries ceased.[14]

Third, employment relationships and an accompanying non-compete are not plan assets where the Plan is an ESOP. *See* 29 C.F.R. § 2510.3–101(h)(3) (establishing that corporate assets are not plan assets where the plan is an ESOP). "Generally, corporate assets are not plan assets." *Wool v. Sitrick*, 2010 WL 11448099, at *7-8 (C.D. Cal. 2010) (dismissing plaintiff's ERISA claim because complaint

---

[14] Plaintiffs' allegations regarding LaVelle and Woolner's conduct prior to the 2020 sale amount to mere unsubstantiated conclusions. *See* FAC ¶ 114 (alleging Woolner and LaVelle were improperly preparing to buy and establish a competing commercial tree care business in the Bay Area while still employed and alleging on information and belief that Woolner and LaVelle purchased part or all of Arbor MD while they were still employees of Arborwell). Plaintiffs' remaining allegations regarding LaVelle's and Woolner's alleged breaches of the non-compete occur entirely after the plan was terminated, or at least after the parties entered into the SPA. *See* FAC ¶¶ 116–129. The alleged breaches of the non-compete by Woolner and LaVelle all occurred *after* the 2020 Sale and after the dissolution of the plan, when their alleged status as fiduciaries had terminated. *Id*. Simply put, the alleged actions by LaVelle and Woolner that form the basis of Plaintiffs' claims and CI Quercus' foundation for standing had *no effect* on the ESOP's proceeds.

9

was devoid of facts allowing the Court to infer that ESOP assets were compromised through a transaction). The only ERISA-related assets in the FAC are shares of the corporation which were owned by the ESOP. Upon acquisition by CI Quercus  these shares were no longer property of the ESOP, which terminated. The FAC does not allege that the non-compete provisions or employment relationships are plan assets, nor that the ESOP assets were compromised. Absent such allegations, Plaintiffs' claims should be dismissed.

**B.    Even if Plaintiffs have standing under ERISA, Plaintiffs fail to state a claim against LaVelle and Woolner.**

Even assuming Plaintiffs did have standing to pursue ERISA claims, their claims for breach of fiduciary duty and prohibited transactions fail to state a claim upon which relief can granted. First, Woolner is not a fiduciary nor a party in interest. Plaintiffs' claims against Woolner should be dismissed for this reason alone. Second, Plaintiffs' claim that the 2020 Sale was a prohibited transaction simply because LaVelle and Woolner benefitted holds no weight. Third, Plaintiffs fail to allege that LaVelle and Woolner knew or should have known they were engaging in a prohibited transaction or that they caused the 2020 Sale to occur.

**1.    Woolner is not a Fiduciary.**

"To be found liable under ERISA for breach of the duty of prudence and for participation in a breach of fiduciary duty, an individual or entity must be a 'fiduciary.'" *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) (citing 29 U.S.C. §§ 1104–1105). "ERISA permits suits for breach of fiduciary duty only against ERISA-defined fiduciaries." *Elliott v. Mitsubishi Cement Corp.*, 2008 WL 4286985, at *5 (C.D. Cal. 2008). A defendant must be a fiduciary in a breach of fiduciary duty claim, or a party in interest in a prohibited transaction claim. *See*, *e.g.*, *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 653, 659 (9th Cir. 2019) (explaining that "to breach a fiduciary duty, one must be a fiduciary," and that "a party in interest…may be sued under [§ 1132(a)(3)] for its participation in a prohibited transaction.").

A person or entity can become an ERISA fiduciary if they are a named fiduciary in plan documents or if they function as a fiduciary. 29 U.S.C. § 1102(a)(2); 29 U.S.C. § 1002(21)(A). Functional fiduciary status encompasses anyone who exercises discretionary authority with respect to the management of an employee benefit plan or its assets. *Santomenno v. Transamerica Life Ins. Co.*,

883 F.3d 833, 838 (9th Cir. 2018) (citing 29 U.S.C. § 1002(21)(A)); *Pacificare Inc. v. Martin*, 34 F.3d 834, 837 (9th Cir. 1994).

Woolner is neither named as a fiduciary in the Plan documents, nor do Plaintiffs' conclusory allegations demonstrate that Woolner acted as a functional fiduciary. Woolner is plainly not named in the Plan documents as a fiduciary. The Plan states that the members of the ESOP Committee are the named fiduciaries. FAC ¶ 39. As noted above, Woolner was never part of the ESOP Committee and therefore was not a named fiduciary. Plaintiffs merely allege that Woolner "was a senior Arborwell, Inc. executive who worked closely with LaVelle" and "actively participated in key decisions made by the Board and the ESOP Committee." FAC ¶ 26. Plaintiffs do not allege—nor can they—that Woolner exercised control over the ESOP Committee or Plan assets or was a member of the ESOP Committee. There are no allegations that Woolner handled or was entrusted with plan assets. The sole allegations that he "worked closely" with LaVelle and that participated in "key decisions" made by the Board and ESOP Committee are insufficient to create even a plausible inference that Woolner was a fiduciary.

### 2.     Benefitting financially is not an automatic breach of fiduciary duty.

Next, Plaintiffs allege that, because LaVelle and Woolner purportedly benefitted financially from the 2020 Sale, that this equates to a breach of their fiduciary duties. FAC ¶ 161. However, fiduciary duties are not violated merely because an action designed to promote the interest of plan participants also incidentally benefits a fiduciary or third party. *See Crowhurst v. Cal. Inst. of Tech.*, 1999 WL 1027033 at *18 (C.D. Cal. 1999), *aff'd*, 11 F. App'x 827 (9th Cir. 2001) ("a breach of the duty of loyalty does *not* occur where the fiduciaries act in a manner that merely has an incidental benefit to the trustees") (citing *Trenton v. Scott Paper Co*., 832 F.2d 806, 809 (3d Cir. 1987), cert. denied, 485 U.S. 1022 (1988) (indirect benefit to employer did not violate ERISA duties).

As explained above, the 2020 Sale to CI Quercus resulted in a sale that was twice the value of the what the ESOP paid to acquire the shares originally. *See supra* section (IV)(A)(2). If the assets of a plan are sold to a party in interest, ERISA Section 408I(1) includes an express requirement that the sale may not be for less than adequate consideration (29 U.S.C. § 1108(e)(1)). Adequate consideration means fair market value as determined in good faith by the trustee or the named fiduciary (29 U.S.C. § 1002(18)(B)). Plaintiffs never allege that the 2020 Sale to CI Quercus was not made for fair market

value.[15] And Defendant Alerus was engaged to evaluate the 2020 Sale of Arborwell, Inc. to CI Quercus specifically to ensure the transaction would be for adequate consideration. FAC ¶ 47. Furthermore, the SPA itself states the shares were purchased for no more than adequate consideration, and the transaction was fair to the ESOP participants from a financial point of view. *See* FAC Ex. A at 32, § 2.27(d).

### 3. Plaintiffs' second and third COAs alleging prohibited transactions under ERISA § 406(a) and (b) should be dismissed for failure to state a claim.

Plaintiffs' claims three and four arise under ERISA §§ 406(a) and (b) (29 U.S.C. §§ 1106(a) and (b)), which both implicate an action by a fiduciary. *See* 29 U.S.C. §§ 1106(a) and (b) ("A <u>fiduciary</u> with respect to a plan shall not cause the plan to engage in a transaction . . . A <u>fiduciary</u> with respect to a plan shall not . . .") (emphasis added). ERISA prohibits transactions between the Plan and a "party in interest." 29 U.S.C. § 1106(a). "The term 'party in interest' means, as to an employee benefit plan— (A) any fiduciary . . . of such employee benefit plan [or] (B) a person providing services to such plan . . . " *See* 29 U.S.C. § 1002(14).

The FAC alleges Woolner is a party in interest as a result of "being a fiduciary of the ESOP, and as a result of being an officer and employee of Arborwell, Inc." FAC ¶ 174. As explained above, Woolner is not a fiduciary[16] and cannot be a party in interest on that basis. Additionally, the FAC is devoid of any facts which allege that Woolner provided services for the Plan. In the face of such inadequate pleading, claims for prohibited transactions against Defendant Woolner should be dismissed for this reason alone.

Another threshold question is whether LaVelle and Woolner's actions "cause[d] the plan to engage in a transaction." *See Bugielski v. AT&T Servs., Inc.*, No. 21-56196, 2023 WL 4986499, at *4 (9th Cir. Aug. 4, 2023). Here, Plaintiffs here make the bold, conclusory allegations that LaVelle and Woolner "orchestrat[ed] the ESOP's 2020 Sale of Arborwell, Inc. stock." FAC ¶¶ 182, 183. However, Plaintiffs offer only threadbare facts and allegations on information and belief. *See* FAC ¶ 45 (alleging Arborwell, Inc. was acting at the direction of LaVelle, and, on information and belief, Woolner when

[15] Were Plaintiffs to allege the sale was below fair market value, that fact would doom their alternative argument that goodwill was included in the sale, an absolute requirement to invoke California Business and Professions Code § 16601. *See infra* section (IV)(D)(3).
[16] For the same reasons stated above, Defendant Woolner is also not a fiduciary for Plaintiffs' prohibited transaction claims. *See supra* section (IV)(B)(1).

it entered into negotiations regarding the sale of Arborwell, Inc. to CI Quercus.); *id.* (alleging on information and belief Woolner and LaVelle exercised substantial control and discretion over those negotiations); *id.* ¶ 46 (alleging on information and belief that Arborwell was acting at the direction of the Sortwells, LaVelle and Woolner in signing a letter of intent to proceed with the 2020 Sale).

Most concerning is Plaintiffs' allegation on information and belief that Arborwell was acting at the direction of the Sortwells, LaVelle, and Woolner in signing a letter of intent to proceed with the 2020 Sale. *Id.* It is unclear how Plaintiff Arborwell itself cannot say for certain whether they were acting at the direction of the Sortwells, LaVelle, and Woolner in proceeding with the sale. Alleging on information and belief whose guidance they themselves were operating under is absurd, and further demonstrates that LaVelle and Woolner were not in fact "orchestrating" the sale as alleged in the FAC.

Plaintiffs' conclusory allegations are nothing more than pure speculation, and without additional facts, they are insufficient to state a claim. *Delphix Corp. v. Actifo, Inc.*, 2014 WL 4628490 at *2 (N.D. Cal. 2014) (use of "information and belief" as to some allegations but not others shows "that plaintiff likely lacks knowledge of underlying facts . . . and is instead engaging in speculation to an undue degree"). More importantly, Plaintiffs' conclusory allegation alleging LaVelle and Woolner "orchestrated" the sale is not entitled to a presumption of truth and should be dismissed. *See Zavala v. Kruse-W., Inc.*, 398 F. Supp. 3d 731, 744 (E.D. Cal. 2019) (dismissing prohibited transaction claim because plaintiff's allegation that defendants "orchestrated" the purchase of stock is conclusory and not entitled to a presumption of truth because the language in the complaint does not give any indication of what defendants did to cause the transaction to occur). This Court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

Moreover, as explained above, ERISA contains a statutory exemption to party in interest transactions with respect to ESOPs, permitting "the acquisition or sale by a plan of qualifying employer securities ... (1) if such acquisition [or] sale ... is for adequate consideration." 29 U.S.C. § 1108(e). The 2020 Sale was not a prohibited transaction because, as explained above, the ESOP made money in the 2020 Sale—specifically double what it paid for. *See supra* section (IV)(A)(2). The interests were not adverse to those participants as Plaintiffs allege. FAC ¶ 182.

In addition, there is no ERISA violation unless the fiduciary "knows" or "should know" that

the transaction constituted a prohibited transaction. ERISA § 406(a)(1); 29 USC § 1106(a)(1). Considering that an independent trustee reviewed the transaction, the lack of allegations that the sale price was not market value, and that the ESOP actually made double what it paid for in the 2017 sale, LaVelle and Woolner did not—and could not—have known they were engaging in an alleged prohibited transaction. This claim should be dismissed as to Woolner and LaVelle.

### 4. Plaintiffs' fourth COA seeking injunctive and other equitable relief under ERISA § 502(a)(3) should be dismissed for failure to state a claim.

Plaintiffs attempt to enforce the non-compete agreement under ERISA, although it has nothing to do with the Plan. FAC ¶¶ 191, 192; *see supra* section (IV)(A)(3). To state a claim under Section 502(a)(3), a plaintiff must show both "(1) that there is a remediable wrong, *i.e.*, that the plaintiff seeks relief to redress a violation of ERISA or the terms of a plan" and "(2) that the relief sought is appropriate equitable relief." *Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*, No. 17-CV-07243-BLF, 2019 WL 6841222, at *3 (N.D. Cal. Dec. 16, 2019) (internal citations and quotations omitted); *see also Warmenhoven v. NetApp, Inc.*, 13 F.4th 717, 725 (9th Cir. 2021). The non-fiduciary defendant must also "have 'actual or constructive knowledge' of the circumstances that rendered any prohibited transaction wrongful." *Del Castillo*, 2019 WL 6841222, at *3. As explained above, *see supra* section (IV)(A)(2), Plaintiffs have suffered no wrong remediable by ERISA, nor do they seek to redress any ERISA violations or a violation of plan terms.[17]

### C. The Court should decline jurisdiction of the pendent California claims.

If the Court dismisses the ERISA claims (causes of action ("COAs") 1–4) and the DTSA claim (COA 9),[18] then the Court can decline to exercise supplemental jurisdiction over all remaining pendent state law claims against Defendants (COAs 5–7, 9–27, 29, 30, and 32, 33).[19] *See* 18 U.S.C. § 1367(c).

---

[17] Plaintiffs also seek monetary relief, which they cannot recover under ERISA section 502(a)(3). *See e.g.*, *McLeod v. Oregon Lithoprint, Inc.*, 102 F.3d 376, 378 (9th Cir. 1996) (holding that money damages do not qualify as 'equitable relief' within the meaning of Section 1132(a)(3)); *Est. of Hirata v. Ida*, No. CIV. 10-00084 LEK, 2010 WL 2179812, at *8 (D. Haw. 2010) (granting motion to dismiss claim for "remedial damages" under 29 U.S.C. § 1132(a)(3)). The Ninth Circuit has warned that "[a]lmost invariably suits seeking ... to compel the defendant to pay a sum of money to the plaintiff are suits for money damages—the classic form of legal relief." *Depot, Inc.*, 915 F.3d at 661 (internal citations and quotations omitted).

[18] The DTSA claim is fully briefed in the Arbor MD Memorandum.

[19] The FAC does not include a 28th or 31st cause of action. Because Plaintiffs cut and paste nearly verbatim from their related state court complaint, they omitted causes of action that were dismissed in response to defendants' demurrer, but failed to renumber the federal complaint accordingly.

**D.    Even if this Court exercises supplemental jurisdiction, Plaintiffs' California state law claims fail.**

**1.    ERISA does not preempt Plaintiffs' state law claims against LaVelle and Woolner.**

ERISA does not govern the non-compete. See *supra,* section (IV)(A)(2)(c). ERISA provides for the comprehensive federal regulation of employee benefit plans. *Metropolitan Life Ins. Co. v. Parker*, 436 F.3d 1109, 1111 (9th Cir. 2006). ERISA preempts state law claims by operation of two statutory provisions: "complete preemption" under § 502(a) and "conflict preemption" under § 514(a). *See* 29 U.S.C. §§ 1132(a), 1144(a); *Fossen v. Blue Cross & Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1107 (9th Cir. 2011). Under complete preemption, state law claims are completely preempted if they "could have [been] brought" under § 502(a) and do not "arise independently of ERISA or the plan terms." *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 201 (2004). Under conflict preemption, the Supreme Court identified two categories of state laws that ERISA § 514(a) preempts: (1) state laws that have a "reference to" ERISA plan and (2) state laws that have an impermissible "connection with" ERISA plans. *See Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Program*, 997 F.3d 848, 858 (9th Cir. 2021) (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016)).

Here, Plaintiffs' COAs 5–7 for breach of contract for damages, specific performance, and declaratory relief all arise from non-compete provisions contained in the 2020 SPA. The SPA was not an ERISA Plan document; it is an agreement between Arborwell, Inc. and CI Quercus for the sale of Arborwell, Inc. Plaintiffs cannot bring these claims based on a breach of the SPA's restrictive covenants under ERISA, and these claims do not arise from breach of an ESOP Plan document. Nor does California state law (Cal. Bus. & Prof. Code § 16600) govern a central matter of plan administration or interfere with uniform plan administration. Plaintiffs' complaint does not allege so. Thus, there is no preemption. In any event, even if Plaintiffs' claims were preempted by ERISA, they still fail to state a claim under ERISA. See *supra*, section (IV)(B)–(C).

**2.    COAs 5–7 fail to state a claim because the noncompete agreements are void and unenforceable under § 16600.**

Plaintiffs' fifth through seventh causes of action address LaVelle and Woolner's alleged breaches of the non-compete in the SPA (the "non-compete claims"). FAC ¶¶ 195–209.  Plaintiffs'

15

non-compete claims against LaVelle and Woolner fail because the non-compete is void and unenforceable under California Business and Professions Code § 16000.[20]

California law declares void "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind."[21] § 16600. Section 16600 "protects Californians and ensures 'that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice.' It protects 'the important legal right of persons to engage in businesses and occupations of their choosing.'" *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (2008) (citations omitted). California courts interpret section 16600 broadly in favor of open competition and employee mobility. *See Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, 859–60 (1994).

The California Supreme Court recently confirmed California's strict interpretation of § 16600 to invalidate all postemployment non-competes, including agreements signed with the sale of a business: "[T]he holding and language in *Edwards* simply confirmed our long line of decisions interpreting section 16600 strictly in the context of noncompetition agreements following the termination of employment or the sale of interest in a business." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1159 (2020).

Here, the non-compete falls squarely within § 16600's bar on employment restraints. Numerous courts, including courts in this district, have declared similar noncompetition provisions void under § 16600. *See Robinson v. Jardine Ins. Brokers Int'l Ltd.*, 856 F. Supp. 554, 559 (N.D. Cal. 1994) (Provisions that prohibit a former employee "from doing any business with Defendant's clients, regardless of who initiates contact" are invalid under § 16600). The non-compete here does the same thing, purporting to restrict Woolner and LaVelle from not only working in the industry and competing with Arborwell but also "accept[ing] business" or even "supervis[ing]" a former employee of Arborwell. *See* FAC Ex. A, § 5.1(a)(i)-(iii).

---

[20] Unless otherwise stated, all further statutory references are to the California Business and Professions Code.

[21] A new state law, California Business and Professions Code section 16600.5 (Senate Bill 699; effective January 1, 2024) authorizes employees and former employees to recover damages, injunctive relief, and attorneys' fees and costs against their employers when they prevail in invalidating restrictive covenants.

1
2

     **3.**    **Section 16601 does not apply because neither LaVelle nor Woolner owned stock in Arborwell at the time of the 2020 Sale.**

3
4
5
6

Plaintiffs purport to invoke the narrow exception in § 16601, which applies only where a selling shareholder with a substantial interest in a business relinquishes the right to compete in exchange for a premium. Section 16601 cannot apply here because neither LaVelle nor Woolner had an "ownership interest" as defined by § 16601, when CI Quercus purchased Arborwell, Inc.

7
8
9
10
11
12
13

Section 16601 provides in pertinent part: "Any person who sells the goodwill of a business, or any owner of a business entity selling or otherwise disposing of all of his or her ownership interest in the business entity, . . . may agree with the buyer to refrain from carrying on a similar business . . . ." § 16601. "However, in order to uphold a covenant not to compete [under] section 16601, the contract for sale of the corporate shares may not circumvent California's deeply rooted public policy favoring open competition. The transaction must clearly establish that it falls within this limited exception." *Hill Medical Corp. v. Wycoff*, 86 Cal. App. 4th 895, 903 (2001).

14
15
16
17
18
19
20
21
22
23
24
25
26

Section 16601 does not apply on its face because neither LaVelle nor Woolner had an "ownership interest" as defined by § 16601 when CI Quercus acquired Arborwell, Inc. Section 16601 can apply only where an "owner of a business entity" sells or disposes of his or her "ownership interest" in the business entity. § 16601. The business entity sold here was a corporation (Arborwell, Inc.). Under § 16601, an "owner of a business entity" that is a corporation is "any owner of capital stock," and an "ownership interest" in a corporation is "a capital stockholder." *Id.* Thus, a person possibly subject to an enforceable non-compete must own capital stock in the sold business. If they do not fall within this specific definition, then § 16601 does not apply. *See Golden State Linen Service, Inc. v. Vidalin*, 69 Cal.App.3d 1, 11 (1977) (§ 16601 applies only to a person who owns and sells the business and does not apply to a departing employee.). It is significant that § 16601 does not include an ESOP interest (or any retirement interest, or even a beneficiary of a trust) in its definitions of "owner of business entity" or "ownership interest." The § 16601 exception must be construed narrowly to uphold California's strict ban on employment restraints.

27
28

When CI Quercus purchased Arborwell, Inc., Woolner and LaVelle were employees with no

1    "ownership interest" in Arborwell, Inc. FAC ¶¶ 35, FAC, Ex. A, SPA at 7.[22]  The SPA confirms that

2    the Arborwell, Inc. Employee Stock Ownership Trust was the "Seller" and shareholder of record of

3    all 1,111,100 shares of Arborwell stock. *Id*. LaVelle and Woolner owned zero shares of Arborwell

4    stock because they had sold their entire ownership interests in Arborwell to the ESOP in 2017. 2017

5    SPA at 2 ("The Sortwells, LaVelle, and Woolner together then sold 100% of Arborwell, Inc.'s stock

6    to the ESOP, effective November 1, 2017 (the "2017 Stock Purchase").") As of November 1, 2017,

7    the ESOP Trust owned all shares of Arborwell stock. *Id*. ¶ 3. Because LaVelle and Woolner owned

8    no shares, they had no ownership interest to sell in exchange for an agreement not to compete.

9         The SPA from 2020 reflects this reality: it designates LaVelle and Woolner as "Warrant

10   Holders," rather than "Sellers." Rillo Decl. Ex. 1, SPA at 7. "A warrantholder is not a stockholder"

11   and shall not be deemed a holder of common stock. *Speirs v. BlueFire Ethanol Fuels, Inc.*, 243 Cal.

12   App. 4th 969, 982 (2015) (quoting *Aspen Advisors LLC v. United Artists Theatre Co.*, 861 A.2d 1251,

13   1262-63 (Del. 2004)). "The United States Supreme Court has recognized that warrantholder's 'rights

14   are wholly contractual' and that a warrantholder '"does not become a stockholder, by his contract, in

15   equity any more than at law."'" *Aspen Advisors*, 861 A.2d at 1262-63 (citation omitted). Thus, any

16   warrants held by LaVelle or Woolner do not qualify them as "a capital stockholder" as required to

17   have an "ownership interest" in Arborwell under § 16601. Nor does LaVelle or Woolner's

18   participation in the ESOP qualify them as capital stockholders. An ESOP is "a type of pension plan

19   that invests primarily in the stock of the company that employs the plan participants." *Fifth Third*

20   *Bancorp v. Dudenhoeffer*, 573 U.S. 409, 412 (2014). Plaintiffs concede that the ESOP is a "type of

21   pension plan." FAC ¶ 3. An ESOP interest is not an "ownership interest" as defined by section 16601.

22   *Fifth Third Bancorp*, 573 U.S. at 412.

        **4.**      **Were the Court to accept Plaintiffs' arguments, a company could wield**
                   **employee's participation in employer retirement plans against them to**
                   **render § 16600 a dead letter.**

25   California's strong public policy favoring employee mobility would be turned on its head if

---

[22] Section 16601 requires ownership of capital stock, sale of that capital stock, and an interest in the company substantial enough so that the owner, in transferring all of the owner's shares, can be said to transfer the goodwill of the corporation. *Hill Medical* at 903–04. "To hold otherwise would result in the enforceability of all covenants not to compete involving the sale of all of the vendors['] shares, in violation of the purposes behind sections 16600 and 16601." *Id*. at 904.

Plaintiffs' position were tenable. Were the Court to find LaVelle and Woolner's interest in the ESOP qualifies as a capital stockholder, then Plaintiffs could have banned all Arborwell employees (from top to bottom) from competing as participants in a required company pension plan. That would be the "mischievous and absurd result" warned of in *Bosley Med. Grp. v. Abramson*, 161 Cal. App. 3d 284, 291—that an acquiring company or any company paying out ESOP interests could then wield employees' interest in the company retirement plan against them to force agreements not to compete.[23] The Court should not allow Plaintiffs to wield the ESOP as a weapon against LaVelle and Woolner (or any Arborwell employee).[24]

### E. COAs 11–21 are barred because they rely on contracts that are void and unenforceable under Business and Professions Code § 16600.

#### 1. COAs 11 and 12 are barred by § 16600 because the confidentiality and nondisclosure provisions serve as de facto non-competes.

In the 11th and 12th causes of action, Plaintiffs allege Woolner breached an April 18, 2001 employment agreement ("Woolner Employment Agreement") by violating the confidentiality and non-disclosure provisions. FAC ¶¶ 63-64. However, the Woolner Employment Agreement is void because it illegally restrains employee mobility. It is invalid as a matter of law because it contains numerous provisions that are void and unenforceable under § 16600, including sections 9, 10, 11, 12, and 14. ECF 45-3 at 3-5. These provisions illegally restrain Woolner from working in the treecare business after leaving Arborwell. See *Brown v. TGS Mgmt. Co.*, LLC, 57 Cal.App.5th 303, 316 (2020); *Dowell v. Biosense Webster, Inc.*, 179 Cal. App.4th564, 575 (2009).

Section 10 is a broad non-competition provision that prevents Woolner, for a period of 2 years after termination of employment with Arborwell, from carrying on, engaging in, being concerned with, interested in, or advising any competitor in the industry. ECF 45-3 at 4. Similarly, section 11 is a broad

---

[23] Arborwell's required enrollment of its employees in the ESOP would mirror "a major public corporation" requiring "any employee to purchase one of several million shares and to enter into an agreement not to work for a competitor—an absurd result, and contrary to this states' policy prohibiting such agreements." *Id.* at 291.

[24] Moreover, Plaintiffs' sixth and seventh COAs are remedies, not causes of action. The Court should dismiss the sixth claim for specific performance of the SPA because "[s]pecific performance is a remedy sought for breach of contract, and not a cause of action in and of itself." *Benihana of Tokoyo, Inc. v. Benihana, Inc*., 828 F. Supp. 2d 720, 727 (D. Del. 2011); *see also Green Valley Landowners Ass'n v. City of Vallejo*, 241 Cal. App. 4th 425, 433, n.8 (2015) ("There are no separate causes of action for specific performance or injunctive relief, which are instead remedies.") The Court should also dismiss the seventh claim because declaratory relief is an equitable remedy, not a cause of action. *Faunce v. Cate*, 222 Cal. App. 4th 166, 173 (2013).

19

non-solicitation provision that prevents Woolner from, for a period of 2 years after termination of employment with Arborwell, soliciting, directly or indirectly, any client of Arborwell at the time of the termination. *Id*. These provisions effectively restrain Woolner from practicing his chosen profession and are thus void under § 16600. *See, e.g., Dowell*, 179 Cal.App.4th at 575; *D'Sa v. Playhut, Inc*., 85 Cal.App.4th 927, 931 (2000); *Metro Traffic Control, Inc. v. Shadow Traffic Network* (1994) 22 Cal.App.4th 853, 860. Section 12, a broad non-solicitation of employees provision, is similarly void under § 16600. *See AMN Healthcare, Inc. v. Aya Healthcare Services, Inc*. (2018) 28 Cal.App.5th 923, 936-939; *Barker v. Insight Glob., LLC*, 2019 WL 176260, at *2 (N.D. Cal. 2019). Section 14 is a broad assignment provision that serves to restrain Woolner from competing and therefore functions as a non-compete, which is also void under § 16600. *Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.,* 630 F. Supp. 2d 1084, 1088-91 (N.D. Cal. 2009).

Finally, section 9 is a confidentiality and non-disclosure provision that is so broad it too functions as a de facto non-compete. Courts determined similar provisions void under § 16600. *Brown v. TGS*, 57 Cal.App.5th at 316-19; *AMN Healthcare*, 28 Cal.App.5th at 940. Section 9 prohibits Woolner from using Arborwell's confidential information during or "at any time" after his employment ends. This type of perpetual restraint severely restricts Woolner's right to work, in violation of § 16600. *See Brown* at 320. As stated by the court in *AMN Healthcare*, "section 16600 precludes an employer from restraining an employee from engaging in his or her 'profession, trade, or business,' even if such an employee uses information that is confidential but not a trade secret. Thus, the court held that to the extent such confidentiality provisions are broader than necessary to protect trade secrets, they are illegal under § 16600. *Id*. at p. 940; *see also American Credit Indemnity Co. v. Sacks* (1989) 213 Cal.App.3d 622, 634.

The entire Woolner Employment Agreement cannot be enforced because of these numerous illegal provisions intended to violate his right to work after Arborwell. *Jones v. Humanscale Corp.,* 130 Cal.App.4th 401, 416 (2005) (Because "the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced.") For these reasons, the 11th and 12th causes of action fail as a matter of law.[25]

---

[25] COAs 11 and 12 additionally fail because a claim for alleged taking of confidential information is

## 2.     COAs 13 and 14 are also barred under § 16600.

Plaintiffs allege Woolner signed another confidentiality agreement on or about January 1, 2008 styled the Arborwell Confidentiality and Inventions Assignment Agreement ("Woolner Confidentiality Agreement"). FAC ¶ 96, FAC Ex. D. Several provisions in the Woolner Confidentiality Agreement are void and unenforceable under § 16600 because they impose unlawful restrictive covenants on employment and competition. *See Brown v. TGS,* Cal.App.5th 303, 313-318 (holding that broad confidentiality provisions in employment agreements are void under § 16600); *AMN Healthcare*, 28 Cal.App.5th at 940.

The Woolner Confidentiality Agreement incorporates a broad definition of "Confidential Information" at section 1.2 that was designed to prevent Woolner and other Arborwell employees from working in the treecare industry for anyone except for Arborwell. *See AMN Healthcare*, 28 Cal. App. 5th at 940, 948 (finding confidentiality provisions illegal under § 16600 where confidential information defined in way that interferes with employee's right to compete). Section 1.9 requires that Woolner "protect the confidentiality of the Company's confidential information, even after [employee] stop[s] performing services for the Company, for as long as the information remains confidential." ECF 45-4, § 1.9.

This provision is similar to the confidentiality provision in *Brown v. TGS Management Company,* 57 Cal.App.4th at 316–19, requiring the employee to "keep all Confidential Information in strictest confidence and trust" during and after employment that "patently" violated § 16600 since it was a "de facto noncompete provision," and "void ab initio and unenforceable." Similarly, here, Woolner is required to keep all confidential information confidential after his employment ends, which functions as a de facto non-compete. California law does not allow such de facto non-compete agreements. *See Brown*, 57 Cal. App. 5th at 319; *Dowell*, 179 Cal. App. 4th at 578 (overbroad confidentiality provision void; "confidential information" –  defined as including such "information

derivative of the claim of misappropriation of trade secrets. Because the trade-secret claim fails, COAs 11 and 12 fail as well. *See* Defendant Arbor MD, et al.'s Memorandum in Support of Motion to Dismiss filed on this same date, section IV(B). Because Plaintiffs seek to protect information that does not qualify as a trade secret, contractual protection of non-trade-secret information reflecting any value is not plausible. *See DVD Copy Control Assn., Inc. v. Bunner*, 31 Cal. 4th 864, 881 (2003) ([Trade secrets'] only value consists in their being kept private.")

1   as the number or location of sales representatives, the names of customers, customer preferences,

2   needs, requirements, purchasing histories or other customer-specific information" was so "inclusive

3   and broad" that it was de facto non-compete clause, as "it seems nearly impossible that employees like

4   [plaintiffs], who worked directly with customers, would not have possession of such information");

5   *Strategix*, 142 Cal. App. 4th at 1071 (invalidating overbroad restrictive covenant and holding court

6   will not "rewrite overbroad covenants" into narrow ones). Section 1.8 of the Woolner Confidentiality

7   Agreement prohibiting Woolner from soliciting employees for one year after termination is also void

8   and unenforceable. *See AMN Healthcare,* 28 Cal.App.5th at 936-939; *Barker*, 2019 WL 176260, at

9   *2.

10      Finally, the Woolner Confidentiality Agreement also includes a specific performance

11   provision that expressly provides that it may be specifically enforced without posting a bond, which

12   is an unconscionable term. [26] Section 10 states in relevant part: "I therefore agree that a party who is

13   aggrieved under this Agreement shall be entitled to the issuance of an injunction or the enforcement

14   of other equitable remedies against the other, <u>without bond</u> or other security, to compel performance

15   of all of the terms of this Agreement." (emphasis added.) Because such a provision authorizes the

16   stronger party (the employer) to obtain injunctive relief without having to establish all the essential

17   elements for the issuance of an injunction, it is substantively unconscionable. (*Lange v. Monster*

18   *Energy Co*. (2020) 46 Cal.App.5th 436, 451 (unconscionable to waive requirements that bond be

19   posted); *Carbajal v. CWPSC, Inc*. (2016) 245 Cal.App.4th 227, 250 (same).

20      In sum, the Woolner Confidentiality Agreement severely restricts Woolner's right to work in

21   violation of § 16600. And severance of these illegal provisions is not an adequate remedy here since

22   the central purpose of the contract—protecting confidential information—is tainted by illegality.

23   *Jones*, 130 Cal. App. 4th at 416. Because the Woolner Confidentiality Agreement is void and

24

25   [26] Plaintiffs' 12th and 14th causes of action seek specific performance of these agreements. ECF 45 at
    63, 64, 65. Plaintiffs plead specific performance as its own separate cause of action. As a separate

26   basis, the Court can dismiss the 12th and 14th causes of action because "[s]pecific performance is a
    remedy sought for breach of contract, and not a cause of action in and of itself." *Benihana of Tokoyo,*

27   *Inc. v. Benihana, Inc*., 828 F. Supp. 2d 720, 727 (D. Del. 2011); *see also Green Valley Landowners*
    *Ass'n v. City of Vallejo*, 241 Cal. App. 4th 425, 433, n. 8 (2015) ("There are no separate causes of

28   action for specific performance or injunctive relief, which are instead remedies.")

22

unenforceable, the 12th and 14th causes of action are barred.

### 3. COAs 15 and 16 fail because LaVelle's Employment Agreement did not require LaVelle to keep Arborwell's information confidential.

Plaintiffs allege that Andy LaVelle joined Arborwell in 2005. FAC ¶ 98. Plaintiffs further allege that, on or about March 23, 2005, LaVelle entered into an employment agreement with Arborwell (("LaVelle Employment Agreement"); FAC, Ex. D; ECF 45-5), which "contains the same provisions from the Woolner Employment Agreement quoted above." *Id.* However, that is untrue: the two employment contracts are different agreements with different provisions and different language. Importantly, the FAC alleges LaVelle breached a duty not imposed by LaVelle's Employment Agreement. *Compare* section 5 of LaVelle's Employment Agreement, ECF 45-5 *with* section 5 of Woolner's Employment Agreement, ECF 45-3.

LaVelle's Employment Agreement does not require him to not use or disclose Arborwell's confidential information. ECF 45-5, § 5. All it says is that confidential information will be disclosed to him and that unauthorized disclosure could cause extensive harm to Arborwell. There is no additional language requiring him to keep certain information confidential. Because the LaVelle Employment Agreement attached to the FAC contradicts the allegations in the FAC, the contents of the exhibit controls. See *Van Hook v. Curry*, 2009 WL 773361, at *3 (N.D. Cal. 2009) ("When an attached exhibit contradicts the allegations in the pleadings, the contents of the exhibits trump the pleadings."); *see also, e.g., Gamble v. GMAC Mortg. Corp.*, 2009 WL 400359, at *3 (N.D. Cal. 2009) ("Where an exhibit to a pleading is inconsistent with the pleading, the exhibit controls."). Without the relevant duty imposed by the contract, the 15th and 16th causes of action for breach of the non-disclosure provision in the LaVelle Employment Agreement fail as matter of law.[27]

### 4. COAs 17 and 18 fail because the Confidentiality and Inventions Assignment Agreement imposes unlawful post-employment restrictions on LaVelle's right to work.

Plaintiffs allege that, on or about January 1, 2008, LaVelle entered into a further agreement with Arborwell regarding an incentive-based compensation plan, which required him to protect the confidentiality of Arborwell's Trade Secrets and Confidential Information ("LaVelle Confidentiality Agreement"). FAC ¶ 99, Ex. F. The provisions in the LaVelle Confidentiality Agreement are the same

---

[27] As an additional, separate basis, the Court can dismiss the 16th cause of action because specific performance is a remedy sought for breach of contract, not a separate cause of action. *Supra,* n. 26.

ones found in the Woolner Confidentiality Agreement. *Id*. Thus, the LaVelle Confidentiality Agreement is void and unenforceable for the same reasons as the Woolner Confidentiality Agreement. *See supra* section (IV)(E)(2).

### 5. COAs 19–21 fail because the non-compete and confidentiality provisions in the LaVelle Employment Agreement are void under § 16600.

Plaintiffs allege that on or about December 9, 2020, in connection with CI Quercus's acquisition of Arborwell, LaVelle entered into an employment agreement with SavATree ("LaVelle SavATree Employment Agreement"). FAC ¶ 100, Ex. G (ECF 45-7). The LaVelle SavATree Employment Agreement contained a broad covenant not to compete and broad confidentiality provision. *Id*., ¶ 101, ECF 45-7, §§ 6.1, 8.2. Plaintiffs allege that LaVelle breached the LaVelle SavATree Employment Agreement, including but not limited to (1) by violating the confidentiality and non-disclosure provisions contained therein; and (2) the Non-Compete therein. *Id.*, ¶ 298. Plaintiffs do not specifically allege any other provisions were breached. *Id.* Plaintiffs' causes of action for breach of contract (damages), breach of contract (specific performance), and declaratory relief are all barred because both specifically alleged provisions that purport to form the basis for the breach are void and unenforceable under section 16600.[28]

The non-compete provision is void under § 16600. *See supra* section (IV)(D)(2)-(4). *See also WeRide Corp. v. Kun Huang* (N.D. Cal. 2019) 379 F.Supp.3d 834, 851-52, modified in part (N.D. Cal 2019) 2019 WL 5722620; *Robinson v. Jardine Ins. Brokers Int'l* Ltd., (N.D. Cal. 1994) 856 F. Supp. 554, 559 (Provisions that prohibit a former employee "from doing any business with Defendant's clients, regardless of who initiates contact" are invalid under § 16600.) "California law is properly interpreted post-*Edwards* to invalidate employee non-solicitation provisions." *Barker v. Insight Glob., LLC* (N.D. Cal. 2019) 2019 WL 176260, at *3.

Here, the non-compete is unlawful because it restricts LaVelle for <u>two years post-termination</u>, from "directly or indirectly" soliciting or serving on behalf of himself or any other company except for the "Company Group" any of the actual or prospective customers that LaVelle was "in any way

---

[28] The Court also should dismiss COA 20 because specific performance is a remedy for breach of contract, and not a separate cause of action. *Supra* n. 24, 26. Additionally, the Court should dismiss COAs 7 and 21 because declaratory relief is an equitable remedy, not a cause of action. *Faunce v. Cate* (2013) 222 Cal.App.4th 166, 173.

involved with developing, selling to, servicing, or working for the Company Group" during the two years preceding the termination.  *See* 45-7 at 7, § 8.2. *See Conversion Logic* (C.D. Cal. 2019) 2019 WL 6828283, at *3-5 (granting motion to dismiss as to both employee non-solicitation and customer non-solicitation provisions).

Section 16601 does not apply to save the non-competition provision in the LaVelle SavATree Employment Agreement because LaVelle was not an owner of capital stock at the time of the acquisition. *See supra* section (IV)(D)(3) and n. 22.  In addition, even if the Court were to read the LaVelle SavATree Employment Agreement and Stock Purchase Agreement together, the non-solicitation provision in the LaVelle SavATree Employment Agreement is still not enforceable because it broadly targets LaVelle's fundamental right to work after his employment with SavATree ends without targeting goodwill. See *Fillpoint, LLC v. Maas*, 208 Cal. App. 4th 1170, 1181-83 (2012). To be enforceable under § 16601, a covenant not to compete must be narrowly drawn to protect goodwill in connection with a sale of a business and be tied to the date of acquisition instead of the termination date. *Id*. at 1182-83. In addition, this non-solicitation covenant is too broad to satisfy the exception of § 16601. *Id*. Like the non-solicitation covenant found unenforceable in *Fillpoint*, the non-solicitation covenant even bars solicitations and sales to prospective customers. *Id*. at 1183.

The LaVelle SavATree Employment Agreement also contained a broad confidentiality provision prohibiting LaVelle from disclosing SavATree's confidential information while he is employed "and for all time thereafter." *See* 45-7 at 5, § 6.1. This confidentiality provision is void just like the confidentiality provision in the Woolner Confidentiality Agreement is void. *See supra* section (IV)(E)(2).  *See also  AMN Healthcare*, 28 Cal.App.5th at 936 (declaring void provision of confidentiality and non-disclosure agreement that prevented employees from "directly or indirectly" soliciting any employee to leave). The Court should dismiss causes of action 19-21 based on these reasons.

## V.   CONCLUSION

For the reasons stated above, the Court should grant this motion to dismiss in its entirety and dismiss all claims against Defendants LaVelle and Woolner with prejudice.

Date:  October 11, 2023                    Respectfully submitted,


                                    _____/s/ Christopher J. Rillo_____
                                    Christopher J. Rillo (SBN 112009)
                                    christopher.rillo@bakerbotts.com
                                    Raerani Reddy (SBN 340475)
                                    rani.reddy@bakerbotts.com
                                    Christina A. Romak (SBN 341472)
                                    christina.romak@bakerbotts.com
                                    **BAKER BOTTS L.L.P.**
                                    101 California Street, Suite 3600
                                    San Francisco, CA 94111
                                    Phone: 415-291-6200
                                    Fax: 415-291-6300
                                    christopher.rillo@bakerbotts.com

                                    David M. Marchiano (SBN 264809)
                                    dmarchiano@bgwcounsel.com
                                    Brandon V. Stracener (SBN 314032)
                                    bstracener@bgwcounsel.com
                                    **BROWN GEE & WENGER LLP**
                                    200 Pringle Ave., Suite 400
                                    Walnut Creek, CA 94596
                                    Phone: 925-269-4132


                                    *Attorneys for Defendants*
                                    *Andrew G. Lavelle and Neil Woolner*

MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT - CASE NO. 4:23-CV-02770-HSG