Christopher J. Rillo (SBN 112009)
christopher.rillo@bakerbotts.com
Raerani Reddy (SBN 340475)
rani.reddy@bakerbotts.com
Christina A. Romak (SBN 341472)
christina.romak@bakerbotts.com
**BAKER BOTTS L.L.P.**
101 California Street, Suite 3600
San Francisco, CA 94111
Phone:  415-291-6200
Fax:  415-291-6300

David M. Marchiano (SBN 264809)
dmarchiano@bgwcounsel.com
**BROWN GEE & WENGER LLP**
200 Pringle Ave., Suite 400
Walnut Creek, CA 94596
Phone:  925-943-5000

*Attorneys for Defendants Andrew G. Lavelle, Neil Woolner, Matt Dickinson, Kris Yamaguchi, Doug Hagge, and Arbor MD Tree Care, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| ARBORWELL, LLC, a California limited liability company; CI QUERCUS CORPORATION, INC., a Delaware corporation, and SAVATREE, LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> ALERUS FINANCIAL, N.A., ANDREW G. LAVELLE, an individual; NEIL WOOLNER, an individual; MATT DICKINSON, an individual; KRIS YAMAGUCHI, an individual; DOUG HAGGE, an individual; ARBOR MD TREE CARE INC., a California corporation; ALVIN F. SORTWELL and ANNE B. SORTWELL as Co-Trustees of the A&A SORTWELL FAMILY TRUST; and DOES 1 through 10, inclusive, <br><br> Defendants. <br> and <br> ARBORWELL, INC. EMPLOYEE STOCK OWNERSHIP PLAN, <br> Nominal Defendant. | Case No.: 3:23-cv-02770-RFL <br><br> **DEFENDANTS ANDREW G. LAVELLE, NEIL WOOLNER, MATT DICKINSON, KRIS YAMAGUCHI, DOUG HAGGE, AND ARBOR MD TREE CARE, INC.'S MOTION FOR ATTORNEYS' FEES AND COSTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **Hearing Date:** October 8, 2024 <br> **Time:** 10:00 A.M. <br> **Place**: Courtroom 15, 18th Floor <br> **Judge:** Honorable Rita F. Lin |

1 **TO ALL INTERESTED PARTIES AND THEIR COUNSEL OF RECORD HEREIN:**

2  PLEASE TAKE NOTICE that on October 8, 2024, at 10:00 A.M., or as soon thereafter as

3 counsel may be heard by the above-entitled court, located on 18th Floor, Courtroom 15 at 450 Golden

4 Gate Ave., San Francisco, CA 94102, Defendants Andrew G. Lavelle, Neil Woolner, Matt Dickinson,

5 Kris Yamaguchi, Doug Hagge, and Arbor MD Tree Care, Inc. (collectively, "Defendants") will, and

6 hereby do, move this Court for an order granting them attorneys' fees and costs of suit pursuant to

7 29 U.S.C. § 1132(g)(1), 18 U.S.C. § 1836(b)(3)(D), Federal Rule of Civil Procedure 54(d), and Local

8 Rule 54–5.

9  Defendants respectfully request that the Court grant Defendants $334,366.05 in attorneys' fees

10 and $5,488.84 in costs.  This Motion is based on this Notice of Motion, the attached Memorandum of

11 Points and Authorities in support of the Motion, the Declarations of Christopher J. Rillo and David M.

12 Marchiano and the exhibits attached thereto, the Proposed Order filed concurrently herewith, all

13 pleadings and papers on file herein, upon such further oral and documentary evidence as may be

14 presented at or before the hearing on this Motion, and any other matters the Court deems proper.

15 Pursuant to Local Rule 54–5, on August 21, 2024, counsel for Defendants met and conferred with

16 Plaintiffs' counsel in an attempt to resolve all disputed issues relating to this Motion.  However, the

17 parties were unable to reach an agreement.

18

19

20  Date:  August 29, 2024   Respectfully submitted,

21

22   _____/s/ Christopher J. Rillo_____
     Christopher J. Rillo (SBN 112009)
23   christopher.rillo@bakerbotts.com
     Raerani Reddy (SBN 340475)
24   rani.reddy@bakerbotts.com
     Christina A. Romak (SBN 341472)
25   christina.romak@bakerbotts.com
     **BAKER BOTTS L.L.P.**
26   101 California Street, Suite 3600
     San Francisco, CA 94111
27   Phone:  415-291-6200
     Fax:  415-291-6300
28   christopher.rillo@bakerbotts.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

David M. Marchiano (SBN 264809)
dmarchiano@bgwcounsel.com
**BROWN GEE & WENGER LLP**
200 Pringle Ave., Suite 400
Walnut Creek, CA 94596
Phone:  925-269-4132

*Attorneys for Defendants Andrew G. Lavelle,
Neil Woolner, Matt Dickinson, Kris Yamaguchi,
Doug Hagge, and Arbor MD Tree Care, Inc.*

DEFENDANTS' NOTICE OF MOTION FOR ATTORNEY'S FEES AND COSTS
CASE NO. 3:23-CV-02770-RFL

## **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................1
II.  FACTUAL BACKGROUND .................................................................................1

    **A.**   Procedural History .......................................................................................1

          **1.**   The State Court Action. ....................................................................2
          **2.**   The Federal Action. .........................................................................2

    **B.**   Defendants' Attorneys' Fees ........................................................................3

III. LEGAL STANDARD ............................................................................................4
IV.  ARGUMENT .........................................................................................................5

    **A.**   Defendants Are Entitled to Fees Under the Defend Trade Secrets Act as the Prevailing Party Because Plaintiffs Brought This Lawsuit in Bad Faith. ...............5

    **B.**   Defendants are Entitled to Fees Under ERISA. ...........................................7

          **1.**   Defendants have achieved success on the merits. ...........................7
          **2.**   The *Hummell* factors weigh in favor of an award of fees to Defendants. .....................................................................................................8

                **a.**   Plaintiffs acted in bad faith and unreasonably to prolong litigation and increase Defendants' fees and costs. ....................8
                **b.**   Plaintiffs have the ability to satisfy an award of fees. ...........10
                **c.**   Awarding fees to Defendants would deter similar unmeritorious claims. .........................................................................................10
                **d.**   Defendants sought to benefit other plan participants. ...................11
                **e.**   Defendants were meritorious in defending against Plaintiffs' claims. .........................................................................................11

          **3.**   Under *Hensley*, Defendants' requested fees are reasonable. .....................11

                **a.**   The rates are reasonable. ..............................................................12
                **b.**   The hours expended were necessary. ............................................14

    **C.**   The Court Should Award the Requested Non-Taxable Costs. ............................14
    **D.**   Alternatively, this Court Can and Should Award Fees Under its Inherent Authority to Sanction a Party for Bad-Faith Conduct. .........................................15

V.   CONCLUSION .....................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

CASES

3

*Am. Unites for Kids v. Rousseau,*

4
   985 F.3d 1075 (9th Cir. 2021) ........................................................................16

5

*Andrews v. Equinox Holdings, Inc.,*

6
   570 F. Supp. 3d 803 (N.D. Cal. 2021) .............................................................13

*Barnes v. AT&T Pension Benefit Plan-Nonbargained Program,*

7
   963 F. Supp. 2d 950 (N.D. Cal. 2013) ...........................................................4, 5

8

*Blum v. Stenson,*

9
   465 U.S. 886 (1984).............................................................................................5

10

*Carlotti v. ASUS Computer Int'l,*
   No. 18-cv-03369-DMR, 2020 WL 3414653 (N.D. Cal. June 22, 2020) ...............13

11

*Carpenters S. Cal. Admin. Corp. v. Russell,*

12
   726 F.2d 1410 (9th Cir.1984) ............................................................................8

13

*Carson v. Billings Police Dep't,*

14
   470 F.3d 889 (9th Cir. 2006) ......................................................................13, 14

15

*Chalmers v. City of Los Angeles,*
   796 F.2d 1205 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir.

16
   1987)

17
   ....................................................................................................................12

18

*Chellino v. Kaiser Found. Health Plan,*
   2010 WL 583970 (N.D. Cal. Feb. 16, 2010) ....................................................11

19

*Cherokee Chem. Co. v. Frazier,*

20
   No. CV 20-1757-MWF (ASX), 2022 WL 2036305 (C.D. Cal. Apr. 27, 2022) ........4

21

*Chess v. Volkswagen Grp. of Am., Inc.,*
   No. 17-CV-07287-HSG, 2022 WL 4133300 (N.D. Cal. Sept. 12, 2022)..............13

22

*Christian v. Honeywell Ret. Ben. Plan,*

23
   No. CIV.A. 13-4144, 2014 WL 1652222 (E.D. Pa. Apr. 24, 2014) ......................8

24

*CI Quercus Corporation, Inc., et al. v. Neil Woolner, et al.,*

25
   Case No. RG21104479 (Alameda County Super. Ct. July 9, 2021)................2, 2, 17

26

*Conrad v. SavATree, LLC,*
   Case No. 1:22-cv-01653 (N.D. Ill. May 6, 2022) ................................................7

27

*Corder v. Howard Johnson & Co.,*

28
   53 F.3d 225 (9th Cir. 1994) ...............................................................................7

ii

*Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*,
25 F.3d 743 (9th Cir. 1994) ............................................................................10

*Cypress Semiconductor Corp. v. Maxim Integrated Products*,
236 Cal. App. 4th 243 ......................................................................................7

*D'Emanuele v. Montgomery Ward*,
904 F.2d 1379 (9th Cir. 1990) ........................................................................12

*Foster v. Adams & Assocs., Inc.*,
No. 18-CV-02723-JSC, 2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ..................13

*Gates v. Gomez*,
60 F.3d 525 (9th Cir. 1995) ............................................................................12

*Goodyear Tire & Rubber Co. v. Haeger*,
581 U.S. 101 (2017) ........................................................................................16

*Grove v. Wells Fargo Fin. Cal., Inc.*,
606 F.3d 577 (9th Cir. 2010) ..........................................................................15

*Hardt v. Reliance Standard Life Ins. Co.*,
560 U.S. 242 (2010)................................................................................4, 5, 8

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)..........................................................................4, 5, 12

*Hoffman v. Am. Soc'y of Technion-Israel Inst. of Tech., Inc.*,
No. 09CV2482 BEN (KSC), 2015 WL 13310055 (S.D. Cal. Dec. 11, 2015)..........8

*Hummell v. S.E. Rykoff & Co.*,
634 F.2d 446 (9th Cir. 1980) ..........................................................4, 5, 8, 10, 11

*In re Knight*,
207 F.3d 1115 (9th Cir. 2000) ..........................................................................7

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. March 17, 2017)................13

*Iron Workers Loc. No. 272 v. Bowen*,
624 F.2d 1255 (5th Cir. 1980) ..........................................................................8

*IV Sols., Inc. v. Office Depot Employee Welfare Ben. Plan*,
2009 WL 10314357 (C.D. Cal. Aug. 20, 2009)..................................................11

*Janvey v. GMAG LLC*,
No. 3:15-CV-401-N-BQ, 2021 WL 4059951 (N.D. Tex. Aug. 4, 2021), *aff'd sub nom. Janvey v. GMAG, L.L.C.*, No. 21-10483, 2022 WL 4102067 (5th Cir. Sept. 7, 2022) ............................14

*Louisiana Generating LLC v. Illinois Union Ins. Co.*,
  No. CIV.A. 10-516-JJB, 2014 WL 1270049 (M.D. La. Mar. 27, 2014) ...............................14

*Metaxas v. Gateway Bank F.S.B.*,
  No. 20-CV-01184-EMC, 2022 WL 16949939 (N.D. Cal. Nov. 15, 2022) ...........................13

*Nat'l Ass'n for Specialty Food Trade, Inc. v. Construct Data Verlag AG*,
  No. 04 CIV. 2983 DLC (KNF), 2006 WL 5804603 (S.D.N.Y. Dec. 11, 2006), *report and
  recommendation adopted sub nom. Nat'l Ass'n for the Specialty Food Trade, Inc. v. Construct
  Data Verlag AG*, No. 04 CIV. 2983 (DLC), 2007 WL 656274 (S.D.N.Y. Feb. 23, 2007)  ....14

*Old Dominion Freight Line Inc. v. Bowman*,
  No. CV-20-01292-PHX-DLR, 2022 WL 901412 (D. Ariz. Mar. 28, 2022) ..........................10

*Perris Valley*, 2014 WL 12687444, at *5 ..................................................................................11

*Raff v. Belstock*,
  933 F. Supp. 909 (N.D. Cal. 1996) ...........................................................................................10

*Reddick v. Metro. Life Ins. Co.*,
  2018 WL 637938 (S.D. Cal. Jan. 31, 2018)...............................................................................15

*Saks v. Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Benefit Plans*,
  No. LACV0902885JAKEX, 2013 WL 12170494 (C.D. Cal. Nov. 15, 2013) ........................10

*Sanai v. Sanai*,
  No. C02-2165Z, 2007 WL 896043 (W.D. Wash. Mar. 21, 2007)...............................................8

*SavATree, LLC v. Shawnee Mission Tree Service, Inc.*,
  Case No. 3:22-cv-02052-K (N.D. Tex. Oct. 21, 2022)...............................................................7

*Simonia v. Glendale Nissan/Infiniti Disability Plan*,
  608 F.3d 1118 (9th Cir. 2010) ....................................................................................................5

*Teetex LLC v. Zeetex, LLC, et al.*,
  No. 20-cv-07092-JSW, 2022 WL 2439176 (N.D. Cal. July 5, 2022) ....................................4, 6

*Teutscher v. Riverside Sheriffs' Ass'n*,
  2010 WL 11507390 (C.D. Cal. July 29, 2010)..........................................................................10

*Trustee of Const. Ind. And Labor Health & Welfare Tr. V. Redland Ins. Co.*,
  460 F.3d 1253 (9th Cir. 2006) ..................................................................................................15

*United Steelworkers v. Phelps Dodge*,
  896 F.2d 403 (9th Cir. 1980) .................................................................................................5, 12

*Welch v. Metro. Life Ins. Co.*,
  480 F.3d 942 (9th Cir. 2007) ....................................................................................................12

iv

**STATUTES**

18 U.S.C. § 1836(b)(3)(D)...............................................................................1, 4

28 U.S.C. § 1920.............................................................................................15

29 U.S.C. § 1132(a)(2)–(3)...............................................................................7

29 U.S.C. § 1132(g)(1) ...........................................................................1, 4, 7

BPC § 16600......................................................................................................2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 54(d) ........................................................................................1

Local Rule 54–5 ...............................................................................................1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Under both the Employee Retirement Income Securities Act of 1974 ("ERISA") and the Defend Trade Secrets Act ("DTSA"), prevailing Defendants Andrew G. Lavelle ("Lavelle"), Neil Woolner ("Woolner"), Matt Dickinson ("Dickinson"), Kris Yamaguchi ("Yamaguchi"), Doug Hagge ("Hagge"), and Arbor MD Tree Care, Inc. ("Arbor MD") (collectively, "Defendants") can recover their attorneys' fees if Plaintiffs CI Quercus Corporation, Inc. ("CI Quercus"), Arborwell, LLC ("Arborwell"), and SavATree, LLC ("SavATree") (collectively, "Plaintiffs") bring claims in bad faith. Here, Plaintiffs litigated over 25 claims against Defendants in state court for *two years* to drain Defendants' resources before dismissing these claims to avoid an adverse determination on the merits. They immediately refiled the same state-law claims in federal court by tacking on outlandish ERISA and DTSA claims.

Plaintiffs knew their ERISA and DTSA claims lacked merit (and knew the risk of fees), but they filed the claims anyway to harass Defendants, increase the cost of litigation, and thwart competition. Plaintiffs' entire federal court litigation has been a workaround to harass Defendants which began in 2021 when Plaintiffs filed their first anticompetitive lawsuit in California Superior Court with designs to bankrupt Defendants through a war of attrition. This second anticompetitive lawsuit was a flagrant attempt by three wealthy companies—CI Quercus, Arborwell, and SavATree—to improperly leverage their previous state court lawsuit into federal court by asserting ill-founded ERISA and DTSA claims with the goal of prolonging the litigation and financial harm to Defendants.

Defendants achieved success on the merits by successfully moving to dismiss these ERISA and DTSA claims. Based on this success and Plaintiffs' palpable bad faith, this Court should award Defendants their attorneys' fees and deter Plaintiffs and companies like Plaintiffs from abusing ERISA and the court system.

## II.     FACTUAL BACKGROUND

### A.     Procedural History

This dispute between Plaintiffs and Defendants spans over three years.  Plaintiffs filed this

federal suit on the eve of trial in state court, immediately following hard-fought litigation for over two years on the same claims included in this litigation.

### 1. The State Court Action.

Plaintiffs originally filed suit in Alameda County Superior Court in 2021 against five former employees (LaVelle, Woolner, Dickinson, Yamaguchi, and Hagge), the same Defendants here, for the same state-law claims raised in this instant federal action: breach of non-compete agreements, trade secret misappropriation, breach of duty of loyalty, unfair competition, and related claims (the "State Court Action"). *See* Declaration of David M. Marchiano ("Marchiano Decl."), Ex. 8, Complaint[1].

The parties were litigating their dispute in state court for two years with a trial that was set to begin September 25, 2023. Extensive discovery took place, including nearly a quarter-million pages produced by the litigants and third parties. Marchiano Decl. ¶ 4. On April 5, 2023, Woolner and LaVelle moved for summary adjudication of all causes of action and issues based on certain non-compete provisions. *Id.* ¶ 7. Plaintiffs were facing dismissal of these non-compete claims based on California Business and Professions Code section 16600. Instead of reaching the merits of summary judgment—two days before their opposition to this motion was due—Plaintiffs filed this action in federal court, (Dkt. No. 1), immediately dismissing their non-compete claims in the State Court Action without prejudice. *Id.*

### 2. The Federal Action.

In June 2023, CI Quercus and Arborwell filed the instant action in federal court, (Dkt. No. 1), asserting eight causes of action arising under ERISA and state law. All Defendants filed motions to dismiss (Dkt. Nos. 37, 39, 40), after which Plaintiffs filed their First Amended Complaint ("FAC") on August 28, 2023 (Dkt. No. 45). The FAC was eighty pages long and included twenty-three new causes of action not asserted in the original complaint, for a total of thirty-one causes of action.[2] The twenty-three new causes of action and the allegations underpinning these causes of action were cut and pasted nearly verbatim from Plaintiffs' complaint in the State Court Action, which they abandoned in July

---

[1] *CI Quercus Corporation, Inc., et al. v. Neil Woolner, et al.*, Case No. RG21104479 (Alameda County Super. Ct. July 9, 2021).

[2] The FAC says it has thirty-three claims, but there is no 28th or 31st cause of action. Plaintiffs cut and pasted nearly verbatim from their state court complaint, but they left out the causes of action that were dismissed in response to defendants' demurrer and failed to renumber the FAC accordingly.

2023 after two years of litigation. *Compare* Dkt. No. 45, *with* Marchiano Decl., Ex. 8, Complaint.  The FAC significantly expanded the litigation, adding twenty-two California state law claims and several parties (Plaintiff SavATree and Defendants Dickinson, Yamaguchi, Hagge, and Arbor MD). All Defendants filed motions to dismiss the FAC (Dkt. Nos. 56, 58, 60, 63), which this Court subsequently granted, finding it lacked jurisdiction over the state law claims once it dismissed the ERISA and DTSA claims.  *See* Order Granting Motions to Dismiss; Denying Requests For Judicial Notice as Moot, Dkt. No. 93 ("Order") at 1 ("Defendants' motions to dismiss the federal claims are GRANTED . . . [t]he Court declines to exercise supplemental jurisdiction over the state law claims").

Defendants have consistently said that Plaintiffs are inappropriately seeking monetary relief, as opposed to equitable relief, for their own damages, and that Defendants would request their fees upon a victory. *See* Joint Case Management Statement (Dkt. No. 84) at 12. Defendants' request for attorneys' fees should come as no surprise.

## B.     Defendants' Attorneys' Fees

Defendants' law firms Baker Botts L.L.P. ("Baker Botts") and Brown, Gee & Wenger LLP ("BGW") each maintain contemporaneous time records in computer-based timekeeping systems. Declaration of Christopher J. Rillo ("Rillo Decl.") ¶ 27; Marchiano Decl. ¶ 20.  These records contain the following information:  (1) date each timekeeper performed the work; (2) the timekeeper's name; (3) the time worked, recorded in tenths of an hour; and (4) a narrative describing the work each timekeeper performed.  Rillo Decl. ¶ 28; Marchiano Decl. ¶ 21.  BGW was lead counsel in the State Court Action for the nearly two years the case was litigated.  Marchiano Decl. ¶ 14.  After Plaintiffs filed the instant ERISA lawsuit, Defendants were required to retain additional counsel due to the specialized nature of the federal complaint and ERISA claims.  *Id.*  Defendants retained Baker Botts specifically due to Mr. Rillo's extensive experience litigating ERISA disputes.  *Id.*  BGW focused on defending against the DTSA and state-law claims involved in the lawsuit while Baker Botts focused on the ERISA causes of action.  *Id.*  Baker Botts and BGW reviewed and worked together extensively on litigation strategy for all causes of action and reviewing drafts and research for all causes of action. Rillo Decl. ¶ 9; Marchiano Decl. ¶ 14.  Baker Botts' five timekeepers spent a combined total of 351.6 hours on the federal court litigation.  *See* Rillo Decl. ¶¶ 10, 13, 16, 19, 22; Ex. 1 (providing

overview of narrative time entries, billing rate, and hours expended per timekeeper.  BGW's two timekeepers spent a combined total of 270.8 hours on the federal court litigation.  *See* Marchiano Decl. ¶¶ 15, 17; Ex. 4 (providing overview of narrative time entries, billing rate, and hours expended per timekeeper).  Defendants intend to seek fees accrued in connection with this motion from July 2024 onwards which will be submitted on reply.  Rillo Decl. ¶ 32; Marchiano Decl. ¶ 18.

## III.   LEGAL STANDARD

Both ERISA and DTSA enable a prevailing party to recovery fees.  For claims arising under the DTSA, courts have discretion to award fees to a prevailing party defending against a claim of misappropriation that is made in bad faith which "may be established by circumstantial evidence."  *See*  18 U.S.C. § 1836(b)(3)(D).  Courts in this district consider two facts to determine bad faith:  "(1) objective speciousness of the claim, and (2) subjective bad faith in bringing or maintaining the action, *i.e.*, for an improper purpose." *Teetex LLC v. Zeetex, LLC, et al.*, No. 20-cv-07092-JSW, 2022 WL 2439176, at *4 (N.D. Cal. July 5, 2022) (citing *Cherokee Chem. Co. v. Frazier*, No. CV 20-1757-MWF (ASX), 2022 WL 2036305, at *3 (C.D. Cal. Apr. 27, 2022)).

For the ERISA claims, under 29 U.S.C. § 1132(g)(1), "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C.A. § 1132(g)(1).  Courts in this circuit apply a three-step analysis in considering claims for fees under § 1132(g)(1):  a *Hardt* analysis, a *Hummell* analysis, and a *Hensley* analysis.  *See Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 963 F. Supp. 2d 950, 960–61 (N.D. Cal. 2013).  The first step, which is the *Hardt* analysis, considers whether the party seeking fees achieved "some degree of success on the merits."  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010).

After the courts determine whether a litigant has achieved "some degree of success on the merits," the Courts then proceed to the second step of the fee analysis and consider whether the *Hummell* factors weigh in favor of awarding that litigant attorney's fees.  *Simona v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1122 (9th Cir. 2010).  The *Hummell* factors consider:  "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to

benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions." *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980).[3]

The third step is an analysis under *Hensley v. Eckerhart*, 461 U.S. 424 (1983): "If a fee claimant passes both the *Hardt* and *Hummell* requirements, then courts will typically apply a *Hensley* analysis […] to determine the amount of fees that should be awarded." *Barnes*, 963 F. Supp. 2d at 961 (internal citations omitted). The "reasonable hourly rate" is calculated "according to the prevailing market rates in the relevant community […]." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "Affidavits of the […] attorneys regarding prevailing fees in the community […] are satisfactory evidence of the prevailing market rate." *United Steelworkers v. Phelps Dodge*, 896 F.2d 403, 407 (9th Cir. 1980). In the absence of opposing evidence, a moving party's proposed rates are presumed reasonable. *Id.*

## IV.   ARGUMENT

Defendants are entitled to recover attorneys' fees in this case under both the DTSA and ERISA because they obtained success on the merits of both the DTSA and ERISA claims and these claims were brought in bad faith. The Court should award the requested fees because the hours worked by counsel are reasonable and counsels' rates are consistent with the prevailing rates in the Bay Area for federal court practice and ERISA litigation.

### A.   Defendants Are Entitled to Fees Under the Defend Trade Secrets Act as the Prevailing Party Because Plaintiffs Brought This Lawsuit in Bad Faith.

Defendants are entitled to recover their attorneys' fees under the DTSA based on the Court's dismissal with prejudice of the trade secret misappropriation claim. Order at 1. Defendants are entitled to their attorneys' fees because they were forced to defend a claim of misappropriation that was made by Plaintiffs in bad faith. Here, both prongs of the two-prong standard to determine bad faith have been met. *Teetex LLC*, 2022 WL 2439176 at *4.

---

[3] In *Hardt*, the Supreme Court held that "[b]ecause these five factors bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section." *Hardt*, 560 U.S. at 254–55. Thus, analysis of the *Hummell* factors is not a requirement, but it may guide the Court's analysis.

First, the DTSA claim was specious because Plaintiffs knew that their alleged trade secrets were confined to tree care in California, despite the fact that DTSA claims require a connection with interstate commerce.  Plaintiffs added to this federal action a trade secret claim under the DTSA despite knowledge (from two years of prior litigation in state court) that their alleged trade secrets had *no connection* with interstate commerce.  Plaintiffs offered no opposition to dismissal of the DTSA claim on this basis, and in the Order granting Defendants' Motions to Dismiss, the Court noted:

> The FAC nowhere alleges that these trade secrets were used in or intended for use in interstate or foreign commerce.  Nor do the allegations concerning the trade secrets support such an inference.  To the contrary, the FAC describes Arborwell's sites as being "throughout the Bay Area and elsewhere in California," not in other states.

Order at 5.  Notably, the Court highlights that Arborwell's sites are in California only. The dismissal of the DTSA claim is without leave to amend. As Defendants' motion to dismiss describes in detail (and this Court acknowledges), the alleged trade secrets all relate to providing tree care to customers in the Bay Area or California. Dkt. No. 60 at 17–18; *see also* FAC ¶¶ 20, 23, 25–30, 78, 112, 115, 131, 135, 140, 143, 145; Order at 5 ("Plaintiffs offer no response to the argument that the DTSA claim fails to allege an interstate nexus or that the alleged trade secrets all relate to tree care in California and therefore concede those points."). Plaintiffs failed to counter Defendants' argument that Plaintiffs could not establish subject-matter jurisdiction for its trade secret claim and made a DTSA claim in bad faith.

As to the second prong, from the outset, Plaintiffs possessed an improper motive.  They pursued their trade-secret claims to thwart competition.  *See, infra,* Section II.B.2.  Plaintiffs' own CEO said that Plaintiffs did not expect to win and that they were filing a lawsuit to slow a competitor down.  Marchiano Decl. ¶ 6; Ex. 5, Declaration of Francis Shelton, at ¶¶ 8–9.

In addition to this admission, Plaintiffs' conduct during the state and federal litigation reinforced the reality that Plaintiffs filed the action to harass, intimidate, and stifle a competitor. Plaintiffs' strategy from the outset was to force Defendants to expend as much money in legal costs for as long as possible.[4]  This is exactly the conduct that supports a finding of bad faith.  *See Cypress*

---

[4] Plaintiffs' ERISA claims filed two years after the State Court Action were not based on recently-discovered or new facts.  Plaintiffs admit they knew of the existence of ERISA claims "in the course of briefing" the demurrer back in November 2021.  *See, e.g.*, Complaint (Dkt. No. 1) at ¶ 65 (referring

1    *Semiconductor Corp. v. Maxim Integrated Products*, 236 Cal. App. 4th 243, 270.

2          To make matters worse, this is a well-worn litigation strategy:  Plaintiffs have filed similar

3    actions against other former employees for a similar anticompetitive purpose.[5]

4          **B.    Defendants are Entitled to Fees Under ERISA.**

5               **1.    Defendants have achieved success on the merits.**

6          Judgment in this case was entered in favor of Defendants when Plaintiffs' FAC was dismissed

7    and Plaintiffs did not file a second amended complaint.  *See, generally*, Order.  The Court directed the

8    clerk of court to enter judgment and close the pending cause "[a]s Plaintiffs did not file a second

9    amended complaint by the August 14, 2024 deadline[.]"  Dkt. No. 94.  On August 15, 2024, judgment

10   was entered in favor of Defendants and against Plaintiffs.  Dkt. No. 95.[6]

11         Accordingly, it cannot be disputed that Defendants achieved "some degree of success on the

12   merits."  *Hardt*, 560 U.S. at 245; *see also Hoffman v. Am. Soc'y of Technion-Israel Inst. of Tech., Inc.*,

13   No. 09CV2482 BEN (KSC), 2015 WL 13310055, at *1 (S.D. Cal. Dec. 11, 2015) (finding that a party

14   who prevailed on a motion to dismiss and a motion for partial summary judgment "achieved some

15   success on the merits"); *Christian v. Honeywell Ret. Ben. Plan*, No. CIV.A. 13-4144, 2014 WL

16   1652222, at *8 (E.D. Pa. Apr. 24, 2014) (granting a motion to award attorney's fees after the moving

17   party "achieved 'some success on the merits' by prevailing on its previous motion to dismiss").

18

19

20   to plaintiffs' demurrer oppositions filed Dec. 8, 2021).  Instead of filing an ERISA action in 2021,
     Plaintiffs waited two years, bleeding Defendants of attorneys' fees.

21   [5] *See, e.g., SavATree, LLC v. Shawnee Mission Tree Service, Inc.*, Case No. 3:22-cv-02052-K, (N.D.
     Tex. Oct. 21, 2022); *Conrad v. SavATree, LLC* and related counterclaim, Case No. 1:22-cv-01653

22   (N.D. Ill. May 6, 2022); Marchiano Decl. ¶ 9, Exs. 6, 7.

23   [6] Defendants are aware of caselaw within the Ninth Circuit which appears to limit a prevailing
     Defendants' right to recovery of attorney's fees under 29 U.S.C. § 1132(g)(1); however, these cases
     are meaningfully distinguishable.  In *In re Knight*, 207 F.3d 1115, 1117 (9th Cir. 2000), the Ninth

24   Circuit held that the district court lacked any authority to award fees and costs under ERISA
     section 502(g)(1) after finding that it lacked subject matter jurisdiction over the underlying action.

25   However, here, the Court dismissed the ERISA claims pursuant to a lack of Article III standing; the
     Court did not find that is lacked subject-matter jurisdiction over the ERISA claims.  Order at 1.  In

26   *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 231 (9th Cir. 1994), the Ninth Circuit stated
     "[a]pplying § 1132(g)(1), we have refused to award attorney's fees in ERISA actions not brought by

27   one of the enumerated parties." (citations omitted).  However, here, the Court stated that "Plaintiffs
     should also be aware that the FAC lacks the necessary allegations to establish statutory standing under

28   ERISA."  Order at 4.  The Court did not make a finding that Plaintiffs are not an enumerated party
     under 29 U.S.C. § 1132(a)(2)–(3) and therefore Defendants are still entitled to fees under ERISA.

2.  **The *Hummell* factors weigh in favor of an award of fees to Defendants.**

The five *Hummell* factors used to guide a district court's determination on whether to award fees are:  (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.  *Hummell*, 643 F.2d at 453.  Although the factors provide guidance, no single factor is "necessarily decisive"; various permutations and combinations can support an award of attorney fees.  *Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir.1984) (citing *Iron Workers Loc. No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980)).

a.  **Plaintiffs acted in bad faith and unreasonably to prolong litigation and increase Defendants' fees and costs.**

This federal litigation is the latest example of Plaintiffs' anticompetitive litigation tactics.  Plaintiffs' State Court lasted for two years before Plaintiffs abandoned it to pursue this ill-founded case.  They did so with the purpose of exacting financial retribution on Defendants by prolonging the litigation by adding meritless ERISA and DTSA claims whose only purpose was to smuggle state-law claims into federal court.

Courts have granted fees to defendants in similar cases.  In *Sanai v. Sanai*, No. C02-2165Z, 2007 WL 896043, at *4 (W.D. Wash. Mar. 21, 2007), the court granted attorneys' fees for a prevailing defendant.  The *Sanai* Court found the plaintiffs' brought the ERISA claim in bad faith without any reasonable basis in law or fact.  *Id.*  Specifically, it found that the plaintiffs' actions were taken solely for their personal benefit and that the "positions taken by [p]laintiffs with regard to their ERISA claims were inventive, but wholly lacking in merit."  *Id.*  The Court also found that the plaintiffs' purpose in bringing the ERISA claims in federal court was to prolong state court proceedings in a different forum, and to punish and harass the defendant, ultimately supporting an award of fees for defendant.  *Id.*

This case is closely analogous to the facts here.  The main purpose of ERISA is to protect an employee's retirement savings from mismanagement or abuse by those in charge of those savings.  Importantly here, not *one* employee has complained about mismanagement, abuse, or anything for that

matter.  This is because those 200+ Arborwell employees *benefitted* significantly from the Arborwell, Inc. ESOP sale, which resulted in those employees collectively walking away with over $10 million in retirement wealth, all of which was contributed by Arborwell, Inc., on their behalves.  Instead, three wealthy companies—CI Quercus, Arborwell, and SavATree—sued to vindicate their own interests and recoup lost revenues for themselves, not because they seek to help any plan participants or beneficiaries.  Similar to the *Sinai* plaintiffs, Plaintiffs here were acting for their own personal benefit.  They asserted their inventive ERISA theories which were wholly lacking in merit.  Indeed, Plaintiffs here attempted to argue that they had standing to sue when the ERISA statute blatantly does not authorize corporations such as themselves to do so.

Like the *Sinai* plaintiffs, Plaintiff's purpose here in bringing the ERISA claims in federal court was to prolong state court proceedings in a different forum and to punish and harass Defendants for breaking their non-compete agreements.  Plaintiffs sought the same remedies in federal court for the alleged state-law unfair competition claims, but through the inapposite legal lens of ERISA.  Based on the procedural history of this case and Plaintiffs' FAC, it is abundantly clear that Plaintiffs filed this federal complaint because they were losing in state court and were unprepared for trial.

The true intent of the overlapping case in federal court was not only to avoid or delay a ruling on the merits of the noncompete issue, but to exacerbate the financial harm they have inflicted on Defendants, who have endured financial distress from this lawsuit since 2021.  The federal litigation wasted court resources and increased the cost of litigation for all parties.  ERISA litigation is costly and requires subject-matter expertise—none of which Plaintiffs' counsel have—which likely explains the abrupt dismissal of the State Court Action and ill-founded ERISA claims.  "Bad faith may arise when a party needlessly prolongs the litigation." *Old Dominion Freight Line Inc. v. Bowman*, No. CV-20-01292-PHX-DLR, 2022 WL 901412, at *3 (D. Ariz. Mar. 28, 2022) (citing *Raff v. Belstock*, 933 F. Supp. 909, 917 (N.D. Cal. 1996)).

As discussed above, the bad faith on the part of Plaintiffs is further evidenced by SavATree's prior similar lawsuits seeking to prevent competition, *see, supra,* n. 4, and the damning admission from Plaintiffs' own CEO who said that Plaintiffs did not expect to win and that they were filing a lawsuit to slow a competitor down.  Ex. 5, Declaration of Francis Shelton, at ¶¶ 8–9.

1    The Ninth Circuit has held that to avoid a finding of bad faith under the *Hummell* factors,

2    plaintiffs must have a reasonable belief that they could prove an actionable ERISA claim.  *Credit*

3    *Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*, 25 F.3d 743, 749 (9th Cir. 1994).  Considering

4    the totality of the circumstances and conduct here, Plaintiffs had no reasonable belief that they could

5    prove an actionable claim because they clearly pursued these claims in bad faith.

**b.    Plaintiffs have the ability to satisfy an award of fees.**

7    As three wealthy corporations, Plaintiffs have the ability to satisfy an award of fees.  In the

8    alternative, Plaintiffs have not submitted any evidence establishing that they would be unable to pay

9    a fee award.  Until such evidence is submitted, this factor is neutral.  *See, e.g., Teutscher v. Riverside*

10   *Sheriffs' Ass'n*, 2010 WL 11507390, at \*2 (C.D. Cal. July 29, 2010) ("The second factor, Plaintiff's

11   ability to pay a fee award, is neutral because the record includes no evidence one way or the other.").

**c.    Awarding fees to Defendants would deter similar unmeritorious claims.**

13   An award of fees here would deter other corporations from bringing claims that lack a

14   reasonable legal basis.  *Saks v. Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Benefit Plans*,

15   No. LACV0902885JAKEX, 2013 WL 12170494, at \*7 (C.D. Cal. Nov. 15, 2013) (where the court

16   found the fact that "all of Plaintiffs' affirmative claims lacked merit or were unsubstantiated by the

17   evidence presented," supported a fee award because "[i]t can reasonably be seen as something that

18   would deter frivolous suits by ERISA providers under circumstances similar to those present in this

19   action.").  Here, Plaintiffs not only brought their initial complaint which was ill-founded and seeking

20   to stretch ERISA well beyond its statutory limitations, Plaintiffs then amended to add their frivolous

21   and specious DTSA claims and to recycle and reallege their state law claims from the State Court

22   Action.  These actions were purely to cause pain to Defendants.  There is simply no other explanation

23   for abruptly halting a case that was so close to resolution in state court to file this baseless lawsuit.

24   The Court should not reward such gamesmanship of both the state and federal court systems

25   and should seek to deter such conduct.  Indeed, if such conduct went unpunished, other corporations

26   would seek to cannibalize ERISA for their own gain, a purpose which is wholly inconsistent with

27   ERISA and protection of participants.  Plaintiffs have a history of utilizing the Court system to tackle

28   competitors, *supra*, n. 4, and awarding attorneys' fees would cause Plaintiffs (and other corporations)

to think twice before seeking to file ill-founded cases.

### d.   Defendants sought to benefit other plan participants.

Defendants' defense of Plaintiffs' unmeritorious claims benefited other Plan participants because it preserved the plan assets and retirement assets for the other participants. *See, e.g., IV Sols., Inc. v. Office Depot Employee Welfare Ben. Plan*, 2009 WL 10314357, at *1 (C.D. Cal. Aug. 20, 2009) (noting that defendant's defense "benefitted all participants and beneficiaries of an ERISA plan because it preserved Plan assets from which beneficiaries could receive distributions."); *Perris Valley*, 2014 WL 12687444, at *5 ("[T]he Court finds that, by defending against Plaintiffs' baseless claims, Defendants prevented the wrongful depletion of the Plan's funds, thus benefitting the other participants. This factor weighs slightly in favor of awarding attorney's fees.").

### e.   Defendants were meritorious in defending against Plaintiffs' claims.

The final *Hummell* factor "assess[es] the *relative* merits of the parties' positions." *Chellino v. Kaiser Found. Health Plan*, 2010 WL 583970, at *3 (N.D. Cal. Feb. 16, 2010) (emphasis in original). Defendants have achieved "some degree of success on the merits" and Plaintiffs' ERISA and DTSA action as pled failed to state a claim. Order at 1. The *Hummell* factors support an award of fees.

### 3.   Under *Hensley*, Defendants' requested fees are reasonable.

Under ERISA, the attorneys' fees awarded to a prevailing party are determined by a lodestar analysis, multiplying the number of hours reasonably expended on the matter by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *D'Emanuele v. Montgomery Ward*, 904 F.2d 1379, 1383 (9th Cir. 1990). The fee applicant bears the burden of documenting the hours spent and submitting evidence as to those hours; the party opposing the application bears the rebuttal burden of challenging the reasonableness of the hours. *Gates v. Gomez*, 60 F.3d 525, 534–35 (9th Cir. 1995) (internal citations omitted).

The hours expended by Defendants' attorneys in this litigation were reasonable, Baker Botts requested rates have been approved as reasonable by multiple courts and are the prevailing market rates for ERISA specialists and complex litigators in the San Francisco Bay Area considering counsel's extensive experience and record of accomplishments. Rillo Decl. ¶ 24. BGW's requested rates are reasonable and are the prevailing market rates for mid-sized firms in the San Francisco Bay

1  Area handling federal litigation considering counsel's extensive experience and record of

2  accomplishments. Marchiano Decl. ¶ 19.

3  ### a.      The rates are reasonable.

4  "In determining a reasonable hourly rate, the district court should be guided by the rate

5  prevailing in the community for similar work performed by attorneys of comparable skill, experience,

6  and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *opinion*

7  *amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987). "[R]ate determinations in other cases […]

8  are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge*

9  *Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The Ninth Circuit has stated that "billing rates 'should be

10  established by reference to the fees that private attorneys of an ability and reputation comparable to

11  that of prevailing counsel charge their paying clients for legal work of similar complexity.'" *Welch v.*

12  *Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (citation omitted). In the Northern District of

13  California, hourly rates for federal litigation cover a broad range of acceptable rates for partners,

14  associates, and paralegals.[7] In *Foster v. Adams & Assocs., Inc.*, No. 18-CV-02723-JSC, 2022 WL

15  425559, at *9 (N.D. Cal. Feb. 11, 2022), the Court approved an hourly rate of $975 for partners stating

16  that this was "in line with the rates charged by other ERISA litigators in the San Francisco Bay Area."

17  "That a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the

18  market rate is, because the lawyer and his clients are part of the market." *Carson v. Billings Police*

19  *Dep't*, 470 F.3d 889, 892 (9th Cir. 2006); *Metaxas v. Gateway Bank F.S.B.*, No. 20-CV-01184-EMC,

20  2022 WL 16949939, at *4 (N.D. Cal. Nov. 15, 2022) (citing *Carson* for the same proposition). Here,

21  the discounted rates charged by Baker Botts and standard hourly rates charged by BGW are reasonable,

22

23  ---

[7] *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 2672 CRB
24  (JSC), 2017 WL 1047834, at *5 (N.D. Cal. March 17, 2017) (finding rates ranging from $275–$1,600
for partners, $150–$790 for associates, and $80–$490 for paralegals to be reasonable); *Andrews v.*
25  *Equinox Holdings, Inc.*, 570 F. Supp. 3d 803, 807–08 (N.D. Cal. 2021) (finding that counsel
"demonstrated that their requested rates [$875–$1,250 for partners, $350 for an associate, and $240–
26  $275 for paralegals] are within the range of prevailing rates for attorneys in the Bay Area of
comparable skill, qualifications, reputation, and experience paid hourly in non-contingent cases");
27  *Chess v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-07287-HSG, 2022 WL 4133300, at *9 (N.D. Cal.
Sept. 12, 2022) (finding hourly rates of $1,100 for partners, $550–$800 for associates, and $150–$250
28  for paralegals to be reasonable); *Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369-DMR, 2020 WL
3414653, at *5 (N.D. Cal. June 22, 2020) (finding hourly rates of $950–$1,025 for partners, $450–
$900 for other attorneys, and $225–$275 for legal assistants to be reasonable).

and Defendants are seeking to recover the actual hourly rates they paid.

<u>Baker Botts' rates are reasonable.</u> Based on the prevailing market rate, Baker Botts' and BGW's hourly rates for this matter are reasonable. Baker Botts is an international law firm with twelve offices across the world. Rillo Decl. ¶ 4. Baker Botts attorneys advise domestic and international clients on a wide range of issues relating to transactions, regulatory compliance, intellectual property, litigation, and criminal enforcement. *Id.* The litigation department at Baker Botts in particular provides tailored legal strategies that advance our clients' interests and objectives, and the litigation team's experience spans the full range of commercial disputes, including employment law and ERISA. *Id.* ¶ 5. Due to its expertise, Baker Botts is able to command a rate for its attorneys commensurate to its peers. *Id.* ¶ 23. Baker Botts sets its hourly rates based on the prevailing market rates of its peers and competitor firms, subject to a discount. *Id.* Baker Botts provided Defendants with a 30% discount on its fees. *Id.*

For Baker Botts, the discounted billing rate for the five timekeeping attorneys on this matter ranged from $885.50 to $949 for partners, $438 to $627 for associates, and $287 for paralegals. *Id.* These rates are consistent with experienced commercial litigation attorneys in California. *Id.* Defendants are not seeking reimbursement of any fees for work done by Baker Botts' legal secretaries. *Id.* ¶ 31.

As an indicator of Baker Botts' reasonable rates, Defendants have paid, and continue to pay, the invoices reflecting Baker Botts' effective billing rates. Rillo Decl. at ¶ 30; *Carson*, 470 F.3d at 892. During the parties' meet and confer, Plaintiffs stated they would not dispute the reasonableness of rates for Baker Botts' associates and paralegal or BGW's partner and associate. Plaintiffs stated they would dispute Mr. Rillo's hourly fee. However, such an exercise would be a waste of time and hypocritical consider attorney Daniel Feinberg who attended the meet and confer on behalf of Plaintiffs has similarly filed sworn declarations in which he sought to recover an hourly rate of approximately $1,050. Rillo Decl. at ¶ 37; Ex. 3, Declaration of Daniel Feinberg, at ¶ 24. Additionally, courts in other districts have awarded Baker Botts attorneys' fees, finding them to be

1   reasonable in light of the work involved and the attorneys' skills and experience.[8]

2       BGW's rates are reasonable. BGW is a business law firm in Walnut Creek, California.  BGW

3   advises mid-sized and startup businesses on a range of issues, including entity formation, corporate

4   law, real estate transactions, intellectual property, business litigation, and employment.  For BGW, the

5   standard billing rate for the two timekeeping attorneys on this matter was $450 for partners and $375

6   for associates.  *Id.*  These rates are consistent with experienced commercial litigation attorneys in

7   California.  *Id.*

8           **b.    The hours expended were necessary.**

9       Since the initiation of this federal ERISA lawsuit, Baker Botts billed a total of 351.1 hours and

10  BGW billed a total of 275.6 hours, Rillo Decl. ¶¶ 10, 13, 16, 19, 22, Ex. 1 (providing overview of

11  narrative time entries, billing rate, and hours expended per timekeeper for Baker Botts); Marchiano

12  Decl. ¶¶ 15, 17, Ex. 4 (providing overview of narrative time entries, billing rate, and hours expended

13  per timekeeper); all of those hours were both necessary and reasonable.  *See*, *e.g.*, *Reddick v. Metro.*

14  *Life Ins. Co.*, 2018 WL 637938 at *4 (S.D. Cal. Jan. 31, 2018) (concluding that 515.1 hours spent on

15  ERISA case was reasonable).  Here, considering the number of parties, causes of actions, and

16  complexity of the claims, a total of 621.9 hours expended by Defendants' attorneys is reasonable.

17  Accordingly, the Court should recognize that the rates and hours billed by Baker Botts and BGW are

18  reasonable, and award Defendants their attorneys' fees.

19          **C.    The Court Should Award the Requested Non-Taxable Costs.**

20      Defendants request the Court award its non-taxable out-of-pocket expenses which primarily

21  constitute legal research charges.  The Ninth Circuit allows "prevailing plaintiffs to recover non-

---

[8] *See, e.g., Janvey v. GMAG LLC*, No. 3:15-CV-401-N-BQ, 2021 WL 4059951, at *3 (N.D. Tex. Aug. 4, 2021), *aff'd sub nom. Janvey v. GMAG, L.L.C.*, No. 21-10483, 2022 WL 4102067 (5th Cir. Sept. 7, 2022) (finding Baker Botts' rates reasonable in light of the amount of work involved, including complex factual record and procedural history, and the judgment of nearly $125 million); *Louisiana Generating LLC v. Illinois Union Ins. Co.*, No. CIV.A. 10-516-JJB, 2014 WL 1270049, at *7 (M.D. La. Mar. 27, 2014) (awarding Baker Botts $7,652,367.31 in fees and costs incurred in defending summary judgment and finding that Baker Botts' hourly rates and hours expended were reasonable in light of the time and complexity of the underlying action); *Nat'l Ass'n for Specialty Food Trade, Inc. v. Construct Data Verlag AG*, No. 04 CIV. 2983 DLC (KNF), 2006 WL 5804603, at *6 (S.D.N.Y. Dec. 11, 2006), *report and recommendation adopted sub nom. Nat'l Ass'n for the Specialty Food Trade, Inc. v. Construct Data Verlag AG*, No. 04 CIV. 2983 (DLC), 2007 WL 656274 (S.D.N.Y. Feb. 23, 2007) (finding Baker Botts' hourly attorney rates are not unreasonable).

taxable costs where statutes authorize attorney's fees awards to prevailing parties." *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010).  A prevailing ERISA party may recover non-taxable costs, including computer-based legal research costs, as part of attorney's fees.  *See e.g.*, *Trustee of Const. Ind. And Labor Health & Welfare Tr. V. Redland Ins. Co.*, 460 F.3d 1253, 1258–59 (9th Cir. 2006).  The Lanham Act, DTSA, and CUTSA all authorize the prevailing party can to recover "reasonable out-of-pocket litigation expenses that would normally be charged to a fee paying client, even if the court cannot tax these expenses as 'costs' under 28 U.S.C. § 1920."  *Grove*, 606 F.3d at 581 (internal citation and quotation marks omitted).  Therefore, the Court should award Defendants the $5,488.84 in non-taxable costs they reasonably incurred, and Defendants paid, in this case.  Rillo Decl. ¶ 32, Ex. 2 (providing overview of costs incurred).

### D.     Alternatively, this Court Can and Should Award Fees Under its Inherent Authority to Sanction a Party for Bad-Faith Conduct.

"Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases[;] [this] authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (internal citation and quotation marks omitted).  When exercising its inherent authority to impose a sanction, as opposed to applying a rule or statute, a district court must find either:  (1) a willful violation of a court order; or (2) bad faith. *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021) (citation omitted).  As part of imposing sanctions, "[a] district court may, among other things, dismiss a case in its entirety, bar witnesses, exclude other evidence, **award attorneys' fees**, or assess fines." *Id*. at 1088 (citation omitted) (emphasis added).  Here, for the reasons explained above regarding Plaintiffs' bad faith, *see, supra,* Sections IV.A, IV.B.2.a, the Court should exercise its inherent authority to find bad faith and award Defendants' attorney's fees.

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully requests this Court award Defendants' $334,366.05 in attorneys' fees and $5,488.84 in non-taxable costs, plus any additional attorneys' fees incurred in conjunction with this motion from July 2024 to a final ruling on this motion.

Date:  August 29, 2024

Respectfully submitted,


_____/s/ Christopher J. Rillo_____
Christopher J. Rillo (SBN 112009)
christopher.rillo@bakerbotts.com
Raerani Reddy (SBN 340475)
rani.reddy@bakerbotts.com
Christina A. Romak (SBN 341472)
christina.romak@bakerbotts.com
**BAKER BOTTS L.L.P.**
101 California Street, Suite 3600
San Francisco, CA 94111
Phone:  415-291-6200
Fax:  415-291-6300
christopher.rillo@bakerbotts.com

David M. Marchiano (SBN 264809)
dmarchiano@bgwcounsel.com
**BROWN GEE & WENGER LLP**
200 Pringle Ave., Suite 400
Walnut Creek, CA 94596
Phone:  925-269-4132


*Attorneys for Defendants Andrew G. Lavelle, Neil Woolner, Matt Dickinson, Kris Yamaguchi, Doug Hagge, and Arbor MD Tree Care, Inc.*